UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**20 CV 10575**

-------------------------------------------------------------X

JLM COUTURE, INC,

Case No.:_____   **JUDGE SWAIN**

Plaintiff,

v.

HAYLEY PAIGE GUTMAN,

Defendant.

-------------------------------------------------------------X

**DECLARATION OF JOSEPH MURPHY IN SUPPORT OF PLAINTIFF'S MOTION FOR A T.R.O. AND A PRELIMINARY INJUNCTION**

I, Joseph L. Murphy, in accordance with 28 U.S.C. § 1746, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1.     I am the president and chief executive officer of JLM Couture, Inc. ("JLM"), the Plaintiff in the above action.  I have personal knowledge of the facts set forth herein.

2.     I submit this Declaration in support of JLM's motion for a temporary restraining order and preliminary injunction against Defendant Hayley P. Gutman ("Gutman" or "Defendant") as set for the in the Proposed Order to Show Cause submitted herewith, which includes, but is not limited to JLM regaining control over its Instagram account @misshayleypaige (the "Main IG Account") and stopping Gutman from unauthorized use of JLM's trademarks.  Defendant's actions, including her conversion of the Main IG Account, breach of her employment agreement with JLM, breach of her fiduciary obligations to JLM and infringement of JLM's trademarks, are the basis of JLM's complaint against Defendant.  A true and correct copy of a screen shot taken of the account information page of the Main IG Account, taken on December 14, 2020, is annexed hereto as **Exhibit 1.**

3.     JLM, which was formed in 1988, is a leader in the bridal design and manufacturing industry, owning award-winning brands which include Allison Webb, Ti Adora by Allison Webb, LUCIA by Allison Webb, Lazaro, Tara Keely by Lazaro, Hayley Paige, Blush by Hayley Paige, La Petite Hayley Paige, and Hayley Paige Occasions.  Today, JLM operates 12 fashion collections, nine

of which are bridal collections and three others for a bridesmaid line, a flower girl dress collection and an athleisure collection.  These fashion collections cover a broad spectrum of aspirational, or luxury, price points.  JLM's retail sales since for 2017 through 2020 are approximately $220,000,000.

<u>JLM's Employment Agreement with Gutman</u>

4.      Gutman first came to my attention in 2010/2011, when she was on the design staff of Priscilla of Boston, a subsidiary of David's Bridal.  Gutman had sent JLM several email requests to meet with JLM's senior management to interview for a design position.  In early spring of 2011, I interviewed Gutman for a designer position.  Approximately a month later, I interviewed her again, at which point I asked her to complete a small project in order to demonstrate her abilities.  The project included wedding gown sketches, swatches of fabric, etc.  I was impressed with the results that she showed me, and thought she had talent and potential.

5.      Thinking that it might be time for a new young designer in the marketplace, I called her back in to discuss the possibility of not only hiring her, but also to establish a new brand under her name and/or a derivative of her name.  She was enthusiastic about the opportunity, but also told me that she had no experience doing an entire collection on her own.  I assured her that JLM would help her by surrounding her with the necessary experienced pattern makers and styling consultants that would help her achieve success.  I was providing Gutman with a huge opportunity, given she was a young designer who had not yet designed under her own name, or a derivative thereof.  As explained below, JLM did exactly what I said it would do and built a brand, the equity and good will in which is owned by JLM, not Gutman who is JLM's employee.

6.      Gutman agreed to my proposal and on or about July 13, 2011, JLM hired her as a designer of bridal dresses and accessories, as well as wedding related clothing such as bridesmaid dresses.  A true and correct copy of JLM's employment agreement with Gutman, dated July 13, 2011, is annexed hereto as **Exhibit 2** (the "Employment Agreement").  Attached as **Exhibit 81** is a true and

correct copy of a JLM press release dated September 20, 2011 announcing JLM's hiring of Gutman as a designer.

7.       Gutman was provided a competitive base salary.   JLM also provided Gutman additional compensation based on the sales volume of her clothing.   In exchange, as expressly set forth in the Employment Agreement: (a) JLM would own all right, title and interest in her designs, concepts drawings, sketches, etc.; (b) all intellectual properties therein and related thereto; and (c) Gutman assigned to JLM rights in her name, and derivations thereof (the "Designer's Names"), so that JLM could file trademark applications in the United States and in other countries, which JLM would then own in perpetuity.

8.       As my plan was to create a long-lasting brand under the Hayley Paige name, obtaining the trademark rights in the Designer's Names was critical.   If Gutman performed as I had thought she would, I believed that she would assist JLM in creating a brand, or several brands, that would continue long after Gutman stopped designing for JLM.   For example, famous designers such as Versace, Kate Spade, Channel, Oscar de la Renta, Louis Vuitton, Pierre Jardin and Alexander McQueen, have their names still attached to the brands that they made famous long after they stopped designing or died. In fact, JLM sold bridal wear under the Jim Hjelm label for almost 20 years after Mr. Hjelm stopped designing for JLM.

9.       Additionally, pursuant to the Employment Agreement, Gutman was required to assist in the marketing, manufacture and promotion of the clothing and apparel that she designed.

10.      After three or four seasons of slow progress, Gutman began to design some popular dresses. The success was only made possible by JLM's design and production infrastructure, and long-established marketing and branding campaigns that JLM designed and paid for.   As explained below, JLM's marketing and advertising campaigns not only included print media, but an organic social media presence that tied into traditional print advertising and later reality television.   JLM's

social media campaign also included the use of JLM's most important social media account, the @misshayleypaige Instagram account, on hang tags attached to the goods themselves. Additionally, Gutman's success as a designer was also the result of JLM's distribution channels, which included 700 to 800 stores nationally and internationally.

11.     Since executing the Employment Agreement, Gutman has designed wedding dresses and accessories, bridesmaid dresses and accessories and other clothing and accessories, as requested by JLM pursuant to her contract, such as athleisure and eveningwear. From the beginning of her employment at JLM , which is ongoing, JLM has performed its contractual obligations to Gutman, and in many respects JLM has exceeded them.

<u>JLM's Use of the Hayley Paige Name, the Building of its Social Media Marketing Strategy and the Protection of its Intellectual Property Rights in the Hayley Paige Name</u>

12.     Soon after Gutman was hired, JLM selected the name "Hayley Paige" (the "Hayley Paige Brand") as the main brand under which her designs would be sold. The Hayley Paige Brand is the brand under which JLM sells Gutman's most expensive designs. Much like the "Stella McCartney", "Ralph Lauren" and "Calvin Klein" brands, whose names are derived from the names of the fashion designers, the Hayley Paige Brand is indicative of the high-end bridal fashions designed by Gutman for JLM.

13.     In addition to the Hayley Paige Brand, JLM has also created additional fashion labels based on Gutman's name, called "Blush by Hayley Paige", "La Petite Hayley Paige", and "Hayley Paige Occasions". Each of these brands, including the Hayley Paige Brand, are collectively referred to as the "HP Brands."[1] The HP Brands are owned by JLM, and JLM is the source of the goods sold

---

[1] Blush by Hayley Paige is a more moderately priced collection of wedding dresses, relative to the Hayley Paige Brand, but shares the same styling signatures of the Hayley Paige look. Hayley Paige Athleisure, sold under the Hayley Paige label, sells non-formal clothing and apparel, La Petite Hayley Paige sells flower girl dresses and apparel. Hayley Paige Occasions sells bridesmaid dresses and apparel.

under these brands.   The HP Brands would not have existed without JLM.

14.     In order to protect JLM's rights and investment in each of the HP Brands, JLM began taking the necessary steps to protect its trademark rights in the Designer's Names that it obtained from Gutman in the Employment Agreement.  On or about September 12, 2011, Gutman executed a trademark registration acknowledgement, which acknowledged that she had transferred, sold and assigned all trademark rights in the Designer's Names, i.e., HAYLEY PAIGE and any derivatives thereof, to JLM.  A true and correct copy of said trademark registration acknowledgement, is annexed hereto as **Exhibit 3.**

15.     JLM has successfully filed for 10 trademark registrations containing the Designer's Name with the USPTO (collectively "HP U.S. Trademarks").  JLM first filed for trademark protection for the Designer's Names on October 24, 2011, when it filed a trademark application with the USPTO for HAYLEY PAIGE in International Class 25, which matured into a registration on June 19, 2012 under Reg. No. 4,161,091.  Attached as **Exhibit 4** is a true and correct copy of said trademark registration certificate.   In addition to said trademark, JLM owns 9 additional U.S. trademark registrations for the Designer's Names, which are: (i) HAYLEY PAIGE and Design, Reg. No. 5,368,112, in International Class 25 (*see* **Exhibit 5** is a true and correct copy of the trademark registration certificate for said trademark); (ii) HAYLEY PAIGE, Reg. No. 5,858,534 in International Class 14 (*see* **Exhibit 6** is a true and correct copy of the trademark registration certificate for said trademark); (iii) HAYLEY PAIGE and Design, Reg. No. 5,858,703, in International Class 14 (*see* **Exhibit 7** is a true and correct copy of the trademark registration certificate for said trademark); (iv) HAYLEY PAIGE OCCASIONS, Reg. No. 5,276,982, in International Class 25 (*see* **Exhibit 8** is a true and correct copy of the trademark registration certificate for said trademark); and (v) OCCASIONS BY HAYLEY PAIGE, Reg. No. 4,914,471, in International Class 25 (*see* **Exhibit 9** is a true and correct copy of the trademark registration certificate for said trademark); (vi) LA PETITE

HAYLEY PAIGE, Reg. No. 5,698,436, in International Class 25 (*see* **Exhibit 10** is a true and correct copy of the trademark registration certificate for said trademark); (vii) LA PETITE HAYLEY PAIGE and Design, Reg. No. 5,698,444 in International Class 25 (*see* **Exhibit 11** is a true and correct copy of the trademark registration certificate for said trademark); (viii) BLUSH BY HAYLEY PAIGE, Reg. No. 6,141,381, in International Class 25 (*see* **Exhibit 12** is a true and correct copy of the trademark registration certificate for said trademark)**;** and (ix) JUST GOT PAIGED, Reg. No. 5,728,141, in International Class 41 (*see* **Exhibit 13** is a true and correct copy of the trademark registration certificate for said trademark).[2]

16.     In addition to the HP U.S. Trademarks, JLM owns approximately 27 foreign trademark registrations and 2 foreign trademark applications for the Designer's Names, in countries and territories such as Australia, Canada, China, the European Union, Hong Kong, Japan and Turkey.

17.     Plaintiff has expended significant time, expense and effort in the development, promotion and marketing of its clothing and apparel under the HP Brands under its aforementioned portfolio of trademarks.

18.     Plaintiff's success is attributable largely to its creative advertising abilities coupled with Internet marketing savvy.

19.     Internet marketing requires a dynamic advertising model that is targeted over many platforms including social networks such as Instagram, Facebook and Twitter, as well as on Internet websites.

20.     As part of JLM's overall marketing strategy regarding the HP Brands, JLM had

---

[2] In furtherance of Gutman's obligation to assist JLM in the registration of its trademarks containing the Designer's Names, Gutman executed four consents to trademark her name, which JLM filed in response to three office actions filed by the examining attorneys reviewing the applications for OCCASIONS BY HAYLEY PAIGE (filed on September 24, 2014), HAYLEY PAIGE (filed on March 7, 2019, and HAYLEY PAIGE and Design (submitted on August 30, 2017), true and correct copies of which are attached hereto as **Exhibits 14-16,** respectively.

various social media accounts created related to the HP Brands, which include but are not limited to accounts on Instagram, which includes but is not limited to @misshayleypaige ("the Main IG Account"), as well as other social media accounts on Instagram, Facebook, Twitter, Pinterest, YouTube, TikTok and other platforms (sometimes collectively referred to as the "JLM HP Social Media Accounts").  A list of the most current social media accounts that JLM owns and uses related to the HP Brands is annexed hereto as **Exhibit 17.**

21.     On or about April 6, 2012, on behalf of JLM, Gutman initiated opening the Main IG Account within the scope of her employment with JLM, in order to assist with JLM's advertising programs.  *See* Exhibit 1.  Gutman did so pursuant to her duties on the Employment Agreement. Most, if not all of the first posts on the Main IG Account, until recently, related to JLM's HP Branded designs, the bridal industry and trunk shows and bridal markets.[3]  From the time the Main IG Account was created, JLM owned the Main IG Account.  Furthermore, until Gutman changed the account's password, JLM had full access to the account and JLM maintained and posted to the Main IG Account.   Sometime in 2014, a Pinterest social media account was opened, also called misshayleypaige (the "Pinterest Account").   JLM also owned this account and the content on the Pinterest Account has always been bridal and wedding related to promote the HP Brands.  JLM also had access to this account until Gutman changed this password as well.

22.     JLM also owns additional corporate social media accounts, which are not specifically related to its HP Brands, but are used to promote the HP Brands, and social media accounts used to market and brand JLM's other active designers, Lazaro and Allison Webb, and JLM's other non-Hayley Paige fashion lines, such as Tara Keely by Lazaro, Ti Adora by Allison Webb and Lucia by

---

[3] A trunk show is an event in which JLM ships specific gowns to retailers so that brides can view and purchase gowns that are not in stores.  Bridal markets are events worldwide where JLM showcases new collections to retailers so that they can purchase stock inventory.

Allison Webb.[4]

23.     JLM also owns several domain names which it uses to host websites relating its various brands, which include but are not limited to the HP Brands, as well as JLM's company website (sometimes collectively the "JLM Websites."). The domain names www.hayleypaige.com and www.misshayleypaige.com (the "JLM HP Domain Names"), are two such domain names that are owned and controlled by JLM and are linked to a JLM owed website, located at https://www.jlmcouture.com/Hayley-Paige (the "JLM HP Website"), which is used to promote and advertise the HP Brands.

24.     JLM's use of social media is an integral part of its advertising strategy, in which it creates name recognition for each of its brands, including the HP Brands. To this end, JLM embeds links on its various JLM Websites, including the JLM HP Website, to its JLM HP Social Media Accounts. *See e.g.*, **Exhibit. 18,** which is a true and correct copy of a pdf printout of JLM's JLMcouture.com website, printed on December 8, 2020. On pages 3 and 14 of this exhibit, the Main IG Account, @misshayleypaige, is prominently displayed. JLM also embeds links on each of its JLM HP Social Media Accounts to JLM's other JLM HP Social Media Accounts and JLM HP Website. For example, attached as **Exhibit 19** is a true and correct copy of a screen shot of the Main IG Account taken on December 4, 2020. This image was obtained by using the Wayback Machine maintained by the Internet Archive and shows how the Main IG Account looked on March 6, 2015. Towards the top of this page, a link to JLM's website, www.hayleypaige.com, is displayed. *See also* Exhibits 56-

---

[4] Another brand that JLM used to advertise on the Internet and social media was Jim Hjelm bridal and bridesmaid labels. After Mr. Hjelm stopped designing for JLM in the 1990's, another designer, named Francesca Pitera, designed the Jim Hjelm bridal and bridesmaid collections. In approximately 2014 the Jim Hjelm Occasions bridesmaid collection was designed by Gutman. Later in 2014/2015, when Francesca Pitera left JLM, the Jim Hjelm bridal collection was also designed by Gutman. Jim Hjelm Occasions was renamed Hayley Paige Occasions and Gutman continued to design the Jim Hjelm bridal collection until approximately 2017, when JLM discontinued the Him Hjelm label.

59, *infra*.

25.     JLM has also advertised each of its HP Brands in various print and on-line advertisements in which the JLM HP Social Media Accounts and the JLM HP Website are prominently displayed and promoted.  *See* **Exhibits 20-32**, which are true and correct copies of photographs of advertisements from The Knot magazine, Brides magazine and Martha Stewart magazine, together with the cover of each magazine that the articles appeared in.  Gutman was aware of each such advertisement by JLM.

26.     JLM has also paid tens thousands of dollars for the production of multiple videos produced by JLM under the trademark JUST GOT PAIGED, featuring Gutman, which, among other things, show her describing how wedding dresses are made, what happens at runway shows, preparing for runway shows and what it's like to film *Say Yes for the Dress*.  These JLM produced videos, as well as videos from JLM runway shows and dress clips, are featured on JLM's owned and operated YouTube channel called Miss Hayley Paige, which can be viewed at https://www.youtube.com/c/MissHayleyPaige/videos.  *See* **Exhibit 33,** which is a true and correct copy of a screen shot of JLM's YouTube page at www.youtube.com/c/MissHayleyPaige/featured, taken on December 7, 2020.  For years, and still to this day, JLM's YouTube channel has contained links that take viewers directly to the Main IG Account as well as the JLM HP Website.  These videos and the YouTube account are owned by JLM.  Gutman's participation in the creation of the videos and promotion of the YouTube Channel fell within the scope of her employment with JLM.

27.     Gutman also live streamed HP Brand related bridal content on Facebook Live, which was advertised on the Main IG Account.  Attached at **Exhibit 34** is a true and correct copy of a screenshot from the Main IG Account, taken on June 28, 2017.  The Facebook account from which Gutman live streamed is owned by JLM.

28.     In furtherance of her duties to JLM to promote the HP Brands, Gutman also made

other promotional appearances on other platforms such as podcasts.  Attached as **Exhibit 35** is a true and correct copy of a screenshot taken of the Main IG Account on December 21, 2017.  These appearances by Gutman were authorized by JLM and were posted on the Main IG Account with JLM's permission.  .

29.     Another example of JLM's marketing strategy was the creation of an emoji application featuring emojis created by Gutman within the scope of her employment with JLM, and thus was owned by JLM.  On or about February 14, 2017, JLM launched a Holy Matrimoji application, containing bridal related emojis designed by Gutman.  *See* http://www.holymatrimoji.com/.  *See also* **Exhibit 36,** which is a true and correct copy of a screenshot of JLM's website, taken on December 7, 2020.  The purpose of this application was to market the Hayley Paige Brand, which is owed by JLM. Attached as **Exhibit 37** is an example of a business card for the Holy Matrimoji application that was created, with Gutman's knowledge and approval, which was distributed to magazine editors, stores, brides, wedding planners, etc.  On the reverse of the card, the Main IG Account (@misshayleypaige) and JLM HP Domain Name (www.hayleypaige.com) that JLM  links to the JM HP Website, are prominently displayed.  *See also* **Exhibit 38,** which is a true and correct copy of a series of emails sent between July 27, 2017 and July 28, 2017.

30.     As part of its marketing strategy, in late 2018, JLM also created a website to market pop-up sales to soon to be brides and retailers, called www.popuppaige.com.  To market this website, flyers were created and given to thousands of retailers and prospective brides at showrooms and trunk shows.  Attached as **Exhibit 39** is a true correct copy of one such handout.  The reverse of this handout lists many of the JLM HP Social Media Accounts and the www.hayleypaige.com JLM HP Website. The Main IG Account is listed first, as this is the most important social media account in JLM's portfolio of JLM HP Social Media Accounts.

31.     Plaintiff has undertaken significant effort to protect and ensure that its continued

ownership and control over social media accounts that it owns and controls, including the JLM HP Social Media Accounts, and the creative content therein, was used in the advertisement and promotion of its clothing and apparel.  As JLM's clothing and apparel are of very high quality and standards, JLM has made sure that the content its social media accounts, including the JLM HP Social Media Accounts, contain beautifully photographed images relating to the bridal industry and the designers of its brands, such as Gutman, the designer of the HP Brands.

32.     Starting by at least 2015, if not earlier, JLM began adding the Main IG Account name, as well as other social media accounts, to its hang tags on each piece of clothing and apparel sold under the HP Brands as a source indicator of JLM's goods.  Hang tags are removable tags placed on clothing and apparel for sale.  Hang tags are used as source identifies for the garments themselves and are frequently used as specimens to prove use of commerce with the USPTO.  In fact, hang tags were used as specimens for three of the HP U.S. Trademarks to show that the marks were being used in commerce by JLM, two of which had the Main IG Account name, i.e., @misshayleypaige, prominently displayed.  Attached at **Exhibits 40-41,** are true and correct copies of the HAYLEY PAGE and Design Trademark filed on January 9, 2017, the application for the BLUSH BY HAYLEY PAIGE trademark filed on February 18, 2020, respectively, each of which displays the Main IG Account i.e., @misshayleypaige.  Attached as **Exhibit 42,** are examples of three hang tags used on JLM clothing designed by Gutman that prominently display the Main IG Account.  Retailers and brides see these hang tags, making them an important part of JLM's marketing strategy.

33.     When the Main IG Account was created, Instagram, and social media in general was relatively new.  Instagram had only been released on October 6, 2010 and at the time the Main IG Account was created Instagram had only about 50 million users.  *See* **Exhibit 43,** which is a true and correct copy of an Internet article dated May 1, 2012, https://www.zdnet.com/article/instagram-passes-50-million-users/.  JLM and Gutman were both aware of the growing potential for marketing

on social media, both agreed that the HP Brands should take full advantage of this new organic advertising platform.  Indeed, Instagram's growth has been astronomical, with the platform now having more than a billion users according to Instagram.  *See* **Exhibit 44,** which is a true and correct printout from Instagram's website located at https://about.instagram.com/about-us.

34.     To be successful, JLM realized that it had to be able to adapt its advertising campaigns rapidly in order to respond to the demands of consumers, new fashions, and noteworthy events, such as trunk shows and bridal markets to stay current and maintain the interest of the followers on the JLM HP Social Media Accounts.  Thus, the ability to immediately and seamlessly modify the content of JLM's HP Social Media Accounts, and its websites, can mean the difference between the success and failure of a brand.

35.     Because creative content on the JLM HP Social Media Accounts, in particular the Main IG Account, was essential for the building of the HP Brands, JLM undertook significant efforts, at JLM's significant expense, to protect and ensure the continued maintenance and control over the creative content used in the advertisement and promotion of the HP Brands on the various platforms that JLM owns, including but not limited to the Main IG Account.

36.     Until only very recently, in furtherance of JLM's business, and to build the HP Brands, JLM and JLM's employees, including Gutman, operated collaboratively to manage and maintain the JLM HP Social Media Accounts to further JLM's HP Brand.  All of Gutman's work in this regard was performed within the scope of her employment and in accordance with her obligations provided in Section 2 of her Employment Agreement.  Gutman was not only contractually obligated to assist in the advertisement and marketing of her designs, but she had additional financial incentive to do so as the more HP Brand dresses that were sold, the more money she was to receive as additional compensation under the Employment Agreement.

37.     When the Main IG Account was created, Gutman was responsible to post content on

JLM's Main IG Account that related to her designs, the bridal industry, bridal markets and trunk shows.  As Gutman was the face of the HP Brands, she was given a lot of discretion and trust to post to the Main IG Account as JLM requested and solely to promote the HP Brands.  For many years, and indeed until recently, Gutman was given this discretion because her vision of the HP Brands was aligned with JLM, and until recently her judgment about how to use JLM assets such as the Main IG Account was in line with how JLM wanted her to use those assets i.e., to promote and build the HP Brands. JLM has made sure that the content its HP Social Media Accounts, contain specific types of imagery namely beautifully curated images of bridal related content that will be appealing to its consumers, who mainly young women in the bridal market.  Gutman enjoyed this responsibility and was very good at managing the Main IG Account and posting content.  In addition to posting content, Gutman also responded to direct messages ("DMs") from individuals i.e., followers, who followed JLM's HP Brands through the Main IG Account.  The purpose of responding to the DMs' was to generate buzz and brand loyalty for the HP Brand Paige"  as well as to answer questions of current and prospective customers.

38.     Gutman, however, was not permitted to post content related to competitor's products, non-bridal related products and services and personal matters, unless said posts were endorsed by JLM or were otherwise approved by JLM.  It was agreed and understood that the Main IG Account was not her personal account.  The content had to both be consistent with JLM's high standards of quality and decorum, but also had to promote the HP Brands.  This does not mean that Gutman was not allowed to post any personal images, because as long as they were on brand and in line with the promotion of the HP Brand image, she was.  For example, JLM was enthusiastic with her posts regarding her own engagement to Danny Wallis and subsequent marriage as they tied into the purpose of the HP Brands.  Additionally, as the lead designer, it is typical for people to sometimes include personal posts that are on brand to keep fans interested.

39.     For many years, JLM expended its own funds to maintain and update the Main IG Account.  For example, JLM employees, at JLM's expense, posted content to the Main IG Account and responded to comments and DMs on the Main IG Account.  Some of these postings were made at Gutman's request, or in collaboration with Gutman, to make sure that up-to-date relevant content was posted.  *See e.g.,*[5] **Exhibit 45,** which is a true and correct copy of an email chain sent on January 7, 2019 between Gutman and JLM employees Elyse Gilreath, Lisa Radwanski and Brittany Noe, with the subject "Re: Weekly Social Media Plan - Trunk Shows"; *see also*:

- **Exhibit 46,** which is a true and correct copy of a series of emails between Gutman and JLM employees Katie Cipriani and Brittany Noe, sent August 7, 2019.  In this email, Gutman gives instructions to these JLM employees regarding content to be added to various JLM HP Social Media Accounts, including the Main IG Account.  JLM's employees, such as Brittany Noe, posted on the Main IG Account JLM's copyright owned photographs from JLM's runway shows and photo shoots that JLM paid thousands of dollars to create;

- **Exhibit 47**, which is a true and correct copy of a series of emails between Gutman and Brittany Noe, sent on August 19, 2019, regarding content that JLM drafted to be posted on the Main IG Account by Gutman while she attended the Burning Man festival from August 27, 2019 to September 2, 2019;

- **Exhibit 48**, which is a true and correct copy of a chain of emails from Gutman to JLM employees Katie Cipriani, Brittany Noe, Elyse Gilreath, Lisa Radwanski, Danielle O'Brien and Kaitlin Horvath, dated September 5, 2019, titled "Social Media

---

[5] The emails attached hereto on which I am neither a sender or recipient are true and correct copies of emails sent or received on JLM's email account, which are maintained by JLM in the normal course of business.

Overview."

- **Exhibit 49**, which is a true and correct copy of a chain of emails sent between September 9, 2019 to September 10, 2019, with the subject "Social Media Overview, sent between Gutman and JLM employees Katie Cipriani, Brittany Noe, Elyse Gilreath, Katie Cipriani, Lisa Radwanski, Danielle O'Brien and Kaitlin Horvath. In this email, Gutman provides instruction to JLM's employees regarding JLM's social media marketing campaigns;

- **Exhibit 50,** which is a series of emails between Gutman and Elyse Gilreath of JLM, sent on November 4, 2019, regarding responding to an DM on the Main IG Account from a bride. Gutman stated that she would respond to the bride. *See id* at p. 1.

- **Exhibit 51,** which is a true and correct copy of an email exchange on December 30, 2019 between Gutman and JLM employees such as Elyse Gilreath, Lisa and Brittany Noe, titled "Re: Pepper Gown Donation".

In the emails above where Gutman is providing instructions to other JLM employees, she is doing so in the scope of her employment with JLM. Gutman's instructions were in accordance with how the Main IG Account was to be used. Other postings on the Main IG Account were made by JLM employees at the direction of other JLM employees in JLM's marketing department.

40.     Gutman was aware that any marketing decision that would affect JLM's image, such as giveaways, required my ultimate approval. She would ask me for approvals or would have other JLM employees ask me for approvals on marketing ideas as I control the global marketing program for the HP Brands. *See e.g.,* page 1 to **Exhibit** 51, at p 1; *see also* page 2 to **Exhibit 52**, which is a true and correct copy of a series of emails between Gutman, Elyse Gilreath of JLM and Danielle O'Brien of JLM, sent between February 11, 2020 and February 12, 2020. I made it understood that the public's perception of the HP Brands was critical to JLM's marketing strategy.

41.     In fact, on or about June 4, 2019, Gutman sent me an email requesting that JLM hire a social media director to run the Main IG Account, in addition to the other JLM HP Social Media Accounts.  Attached as **Exhibit 53** is a true and correct copy of said email dated June 4, 2019.  This email is further evidence that Gutman understood that JLM owned the Main IG Account.

42.     At the time Gutman requested that JLM hire a social media director to handle all of JLM's HP Social Media Accounts, including the Main IG Account, JLM already had an on-staff PR department working primarily on social media at this time.  JLM was in the process of recruiting a social media and internet consultant/manager prior to the pandemic.  In May or June of 2020, JLM hired a social media consultant/manager named Carl Cricco, who continues to work the with the company.  However, as explained below, in November of 2019 Gutman changed the passwords and locked out the entire JLM social media staff out of the Main IG Account.

43.     Regardless of whether Gutman or JLM's employees were posting or maintaining the Main IG Account, from the date the Main IG Account was created to at least February of 2020, Gutman actively worked with JLM to improve, and add posts to, the Main IG Account.  *See* **Exhibit 52**,  In this email, Gutman suggested a Valentines giveaway promotion and requested assistance from JLM's employees to draft the content of her post for the giveaway to be posted on the Main IG Account.  *See id*.  Gutman approved the content of the post that Ms. Gilreath had drafted and thanked her for drafting it.  *See id.* at p. 1.  Gutman also acknowledged that the post was "to stimulate sales/get gals in the stores…"  It could not be any clearer to Gutman that the purpose of the Main IG Account was to generate sales of JLM and to market the HP Brands.  For example, attached as **Exhibit 54,** which is a true and correct copy of a screen shot taken of the Main IG Account on October 4, 2017, a post was made by Hayley Paige, or one of JLM's other employees, regarding a sneak peek of JLM's upcoming Hayley Paige Collection.

44.     JLM's advertising strategy creates brand loyalty, which is reflected by the number of

followers on each social media account. The number of followers on each of JLM's Social Media Accounts, in particular the JLM HP Social Media Accounts, has significantly increased as a direct result of JLM's marketing strategy, and the large amount of money JLM has expended in advertising. For example, with respect to the Hayley Paige Brand alone, JLM has expended in excess of $4,068,000 on advertising from 2012 through 2020.  A copy of a chart containing JLM's approximate expenses and costs related to the Hayley Paige Brand, per year and by expense, is annexed hereto as **Exhibit 55.**

45.     As a direct result of JLM's marketing and advertising expenditures over the years, the number of followers of the JLM Social Media Accounts has steadily increased.  For example, in August of 2014, the Main IG Account had only approximately 22,000 followers.  By March 6, 2015, the Main IG Account had 49,000 followers. *See* **Exhibit 19.**  By August 9, 2015, the Main IG Account had over 88,000 followers.  *See* **Exhibit 56,** which is a true and correct copy of a screen shot of the Main IG Account as it appeared on August 9, 2015.  By October 3, 2015, the Main IG Account had approximately 113,000 followers.  *See* **Exhibit 57,** which is a true and correct copy of a screenshot of the Main IG Account taken using the Internet Archive's Wayback Machine, taken on October November 26, 2020.  By May 27, 2016, the Main IG Account had over 289,000 followers.  *See* **Exhibit 58**,[6] which is a true and correct copy of a screenshot of the Main IG Account taken using the Internet Archive's Wayback Machine, taken on November 26, 2020, showing how the Main IG Account appeared on May 27, 2016.  By November 13, 2019, the Main IG Account had over 957,000 followers.  *See* **Exhibit 59,** which is a true and correct copy of a screenshot taken of the Main IG Account on November 13, 2019.  Finally, as of November 17, 2020, the Main IG Account has over

---

[6] The images taken from the Wayback Machine at Exhibits 55 and 56 do not show the full extent of how the Main IG Account looked.  However, information on the exhibits, such as the numbers of followers appear to be accurate.

1,100,000 followers.  Attached at **Exhibit 60** is a true and correct copy of a screen shot of the Main IG Account, taken on November 17, 2020.[7]

46.    As further evidence of the importance of the Main IG Account to JLM, and that Gutman understand that the Main IG Account belongs to JLM, the signature in her business emails where she is giving her title as Lead Designer, indicates the Main IG Account, JLM's business address and indicates the HAYLEY PAIGE and BLUSH BY HAYLEY PAIGE Trademarks.



@misshayleypaige

Examples of Gutman's signature on emails are at **Exhibits 38, 45-53** hereto.

47.    JLM also paid for items to be given away to followers of the JLM Account, such as wedding dresses, athleisurewear, and accessories.  These giveaways increased interest among the Main IG Account's followers, which in turn increased the number of followers for the account, which in turn increased JLM's advertising reach through this particular asset.  Attached as **Exhibit 61,** is a true and correct copy of a screen shot from the Main IG Account, taken on December 3, 2019, in which Gutman describes one of these giveaways.

48.    Since 2012 to present, sales of Gutman's clothing and apparel have continued to

---

[7] This screenshot shows the Main IG Account after Gutman took control over the account, which is described below.  She has since deleted many of the JLM approved posts and is adding many of her own, non-JLM approved posts.  She is also endorsing products and services on the Main IG Account that JLM has no connection with and that are not JLM authorized endorsements.

steadily increase.  These sales were in large part the result of JLM's marketing campaign, JLM's distribution channels the quality of JLM's clothing and Gutman's growing celebrity within the industry that JLM carefully helped to cultivate.

49.     Acknowledging the importance of Gutman to JLM's sales, and to reward her dedication to the company and its marketing strategies, on July 15, 2014, JLM and Gutman executed an amendment to the Employment Agreement, which, among other things, increased the amount of Gutman's consideration (the "Amendment").  A true and correct copy of the Amendment is attached hereto as **Exhibit 62**.

50.     As part of JLM's strategy to market the HP Brands and to build name recognition, I understood that it benefited JLM for Gutman, as the face of the HP Brands, to have increased exposure not only on social media, but also on television.  In late 2014/early 2015, Gutman appeared on *TLC's Say Yes to the Dress*, but only sporadically.  I believed that if Gutman became a regular on the program, the increased exposure for the HP Brands would boost sales of the HP Brands.  In March of 2015, when Gutman was engaged to Danny Wallis, I was able to arrange with The Knot magazine to feature a story about Gutman and her wedding.  The Knot made Gutman the first bridal gown designer to be on the cover in her own wedding gown that she designed.  Attached as **Exhibit 63** is a true and correct copy of the aforementioned magazine cover for the Knot magazine.

51.     I used the buzz for getting a placement on a cover of The Knot to convince my contact at Kleinfeld Bridal, Ronnie Rothstein, to have Gutman become one of the regular featured designers on TLC's *Say Yes to the Dress*, which only served to increase the popularity of the HP Brand amongst consumers.[8]  Kleinfeld Bridal is one of JLM's biggest customers and is the location where *Say Yes to*

---

[8] Initially, my conversations with Mr. Rothstein led to *Say Yes to the Dress* airing a special episode of Gutman's wedding, which included her voice over.  Subsequently, Gutman received increased exposure on *Say Yes to the Dress*, tied to her trunk show appearances at Kleinfeld Bridal.  Gutman subsequently became a regular on the program.

*the Dress* is taped.  Thus, resulting from my initial efforts, from approximately November 17, 2015 to present, Gutman has been featured on *Say Yes to the Dress*, which is essentially featuring the HP Brand.  Additionally, from 2018-19, Gutman was one of the two featured designers on a TLC spin-off called *Say Yes to America*.  Gutman's appearances on television generated additional interest in JLM's HP Brands.  This exposure was important for JLM as Gutman was the face of the HP Brands.  JLM's effort was to benefit the HP Brands, not Gutman personally.

52.     Gutman's appearances on television also gave her minor celebrity status.  This is what JLM wanted as Gutman's increased celebrity increased name recognition for the HP Brands, which further drove sales.  This name recognition, together with JLM's continued marketing efforts that featured the Main IG Account, also generated more followers for the Main IG Account, which also increased the value of the HP Brands and sales.  This is especially true where, as until recently, the link to JLM's HP Brand websites were featured on the Main IG Account.   For example, from 2015 to present, the number of followers on the Main IG Account rose from approximately 115,000 followers to over 1.1 million followers.  During this time, combined sales for the HP Brands has exceeded $220,000,000 in world-wide retail sales.

53.     The HP Brands' increasing exposure and name recognition also resulted in collaborations and co-marketing ventures between JLM and third parties.  For example, on or about August 1, 2018, JLM entered into a collaboration agreement (the "Collaboration Agreement") with a luxury diamond jewelry company called Hearts On Fire Company, LLC ("HOF").  Pursuant to the Collaboration Agreement, JLM granted HOF the right to use the names "Hearts On fire By Hayley Paige" and "Hayley Paige for Hearts On Fire" (the "Collaboration Names') with respect to approved wedding bands and wedding rings.  JLM was required to provide Gutman for marketing purposes for the products sold under the Collaboration Names.  A true and correct copy of the Collaboration Agreement is annexed here to as **Exhibit 64.**

54.     JLM, in order to product its intellectual property rights in the Designer's Names, also filed for and received trademark registrations for HAYLEY PAIGE, Ser. No. 5,858,534 in International Class 14 and HAYLEY PAIGE and Design, Ser No. 5,858,703, in International Class 14, for the sale of jewelry.

55.     In furtherance of the Collaboration Agreement, Gutman executed a letter of inducement on August 27, 2018, whereby Gutman agreed, *inter alia*, to perform as required under the Collaboration Agreement.  Thereafter, the JLM HP Social Media Accounts, in particular the Main IG Account, advertised HOF's jewelry.  For example, the screenshot of the Main IG Account at **Exhibit 59** contains a link to the HOF website.  *See also* **Exhibit 65,** which is a true and correct copy of a screen shot of the Main IG Account taken on September 5, 2018, which contains an endorsement of HOF.

56.     As a result of the Collaboration Agreement, JLM has received royalties from HOF.  In addition to these payments, the joint marketing of the HAYLEY PAIGE trademarks and HOF's name under the Collaboration Agreement have generated additional good will for JLM's Designer's' Name related trademarks, as well as the JLM HP Social Media Accounts, in particular the JLM HP Social Media Account.

57.     In addition to the HOF Collaboration Agreement, JLM intends to license the Designer's Names to other third parties, which JLM has the right to do.

58.     On or about February 2, 2019, I sent Gutman a letter providing her with the requisite notice required under the Amendment that JLM was exercising its option to renew the term thereof for at least an additional three years.  Attached as **Exhibit 66** is a true and correct copy of my notice letter.  JLM also increased Gutman's base pay.  *See id.*  I had JLM provide her with this additional compensation as I was excited by the collaborations and other opportunities that were being lined up that required JLM to secure Gutman's future commitment to JLM.  *See id.*  The Collaboration

Agreement with HOF was just the beginning of future collaboration deals for JLM, Gutman and third parties who wanted to license the Designer's Names, which belong to JLM pursuant to the Employment Agreement, for their goods and services.[9]  Further, as sales of the HP Brand's goods were so successful, I offered to negotiate to further amend Gutman's employment agreement to further increase the term thereof, and to provide Gutman with additional financial compensation including brand ambassador fees from third party licensing deals with JLM.

59.    Through most of 2019, Gutman continued to comply with her obligations as an employee and help with JLM's marketing strategy, by assisting JLM in the advertisement and marketing of HP Brands on the Main IG Account.  *See e.g.,* Exhibits 38, 45-53.  In fact, in June of 2019, Gutman requested that JLM ramp up its control over the Main IG Account by hiring a social media director to handle the account.  *See* Exhibit 53.

60.    Despite the success of the HP Brands, and in stark contrast to the prior cooperation of, and collaboration with, Gutman regarding JLM's ownership and use of the Main IG Account, in November of 2019, Gutman began to take steps to assert control over JLM's property, i.e., the Main IG Account.

61.    Issues with Gutman began on or about November 2, 2019 when Gutman created a TikTok account under the misshayleypaige name (the "TikTok Account'), which also belongs to JLM, and subsequently posted videos that did not represent the HP Brands, in particular the Hayley Paige Brand.  The misshayleypaige name is one of the Designer's Names and JLM has used it continuously in commerce since at least April of 12.  Pursuant to the Employment Agreement, and based on JLM's continuous use of misshayleypaige, JLM owns the exclusive right to use this name and therefore owns the TikTok Account.  Further, pursuant to the Employment Agreement, Gutman

---

[9] In addition to JLM having the right to license the Designer's Names to third parties pursuant to the Employment Agreement and Amended Employment Agreement, Gutman would also receive additional compensation for these collaborations.

is precluded from using misshayleypaige or @misshayleypaige trade names "in trade or commerce." *See* Employment Agreement § 10(b).  When I advised Gutman that she should post JLM approved content on the TikTok account only, rather than posting personal images that were off brand, Gutman responded shortly thereafter by changing the password to the Main IG Account so that JLM no longer had access to the account.

62.    In late 2019, or early 2020, Gutman changed the biography section of the Main IG Account to read "Personal & Creative account", even though that was not true, and Gutman removed reference to JLM, without JLM's permission or authorization, including removing the links to JLM's HP Brand websites.  In doing so, Gutman not only hijacked the Main IG Account, but she took affirmative steps to convert it from a JLM company account to a personal account.

63.    As stated above, Gutman was aware that the Main IG Account belonged to JLM. Further, screenshots of how the Main IG Account looked prior to the time that Gutman converted the account for her own use, show that the Main IG Account was JLM's account, not Gutman's account. Attached at Exhibits 19, 54, 56-61, 65, *and* Exhibit 74, *infra*, are examples of how the Main IG Account looked prior to the time that Gutman to JLM's account and converted it for her own use.

64.    Notwithstanding the fact that she blocked JLM from accessing its own property i.e., the Main IG Account, Gutman continued to post JLM approved content on the Main IG Account.  For example, on November 13, 2019, just about the time that JLM was locked out the Main IG Account, the Main IG Account contained approved bridal related photograms, contained links to JLM's www.hayleypaige.com website and advertised JLM's Holy Matrimoji App.  *See* Exhibit 59.  By way of another example, in a series of emails sent between February 11, 2020 and February 12, 2020, Gutman requested that JLM employees write the content of a post to the Main IG Account for a Valentine's Day giveaway.  *See* Exhibit 52.

65.    However, in June of 2020, during JLM's discussions with Gutman to amend her

agreement, Gutman informed JLM that the Main IG Account was her personal account.  **Attached as Exhibit 67** is a true and correct copy of an email exchange between Gutman and me, sent between June 2, 2020 and June 3, 2020.   Shortly thereafter, in or about July of 2020, Gutman began posting personal images, as well as uploading posts promoting the goods of third parties, such as avocado oil products, beer and nutritional supplements, none of which were approved by JLM, and none of which relate to the bridal industry.  Collectively attached as **Exhibits 68-71** are true and correct copies of screen shots taken of the Main IG Account, on July 31, 2020, December 4, 2020, December 10, 2020 and December 10, 2020, respectively.   Gutman has re-labeled JLM's Main IG Account to be her "Personal & Creative account" even though that is not true.  *See* **Exhibit 72**, which a true and correct copy of the Main IG Account, now labeled as Gutman's "Personal & Creative account."  None of the images depicted on this exhibit are on brand.  Collectively as **Exhibit 73** are true and correct copy of screenshots of the Main IG Account showing taken between July 30, 2020 and December 10, 2020, showing how Gutman has added personal photographs and non-brand endorsements into the posts on the Main IG Account.  Attached at **Exhibits 78** and **79**, are screen shots, both taken on December 13, 2020, of the Main IG Account, which show posts that Gutman made on the Main IG Account on December 12, 2020.  These posts of Gutman in a snowboarding outfit, while holding a nutritional supplement, and Will Farrell in Elf are not only unrelated to the HP Brands, but they further erode the good will and name recognition that JLM has worked so hard to achieve, by linking the Main IG Account with the HP Brands in the minds of consumers.  Gutman's post at Ex. 78 is particularly inappropriate as her fiancé, Conrad Louis Cleven, is in a paid partnership with Optimum Nutrition, the maker of the product being held by Gutman in this exhibit.  *See* **Exhibit 80**, which are true and correct copies of screenshots taken on December 13, 2020, of Mr. Cleven's bio section of his Instagram account, @conradlouis, and a post on said account made on December 11, 2020.  The bio section shows that he has an ongoing partnership with Optimum Nutritious.  Further, Mr. Cleven has

147,000 followers.  In the attached screenshot of Mr. Cleven's post, Mr. Cleven appears next to Gutman holding the same whey protein product.  He also tags JLM's @misshayleypaige Instagram account.  Thus, Gutman is using the Main IG Account to sell third-parties' products without authorization or permission from JLM.

66.   By July of 2020, the Main IG Account had approximately 1,000,000 followers.  By taking possession of the Main IG Account, Gutman now had instant, exclusive, access to over 1,000,000 followers of JLM's HP Brand to whom she could now promote her relationships with third parties, at JLM's expense as JLM had expended substantial time, effort and money to increase the number of followers for the Main IG Account.  I believe that Gutman is paid for these endorsements, and therefore has also profited off of the substantial investment made by JLM at JLM's expense. Gutman should not be able to use JLM's property, the Main IG Account and valuable trademarks, for her own personal gain.

67.   Additionally, by using the Main IG Account to endorse the goods of others, she is using JLM's trade name @misshayleypaige in a manner that is creating confusion amongst consumers of JLM products who believe that either JLM is the source of or endorses the third-parties' goods now being peddled on the Main IG Account, or that the source of the HP Brands is now Gutman. This is hurting the goodwill that JLM has created in the @misshayleyaige trade name.  This is also disastrous for JLM's sales.

68.   Starting in the summer of 2019, JLM and Gutman engaged in discussions regarding executing a new employment agreement.  Discussions continued until recently.   I believed that Gutman's decision to take over the Main IG Account was a negotiation tactic to obtain leverage during negotiations, especially since until very recently she was still posting mostly bridal-related content.  Essentially, she has been trying to hold the Main IG Account hostage.  JLM believed that Gutman would return control over the Main IG Account to JLM as soon as an agreement was reached,

and as Gutman restarted posting JLM approved content on the Main IG Account, and we were trying in earnest to reach terms that were amicable and would keep Ms. Gutman happy. As those negotiations were ongoing, JLM took no immediate action to regain control over the Main IG Account.

69.     In fact, on October 25, 2020, following a meeting on October 24th at Kleinfeld between Hayley and I when I emphasis that it was her duty to the company to include links to JLM's website, Gutman restored the links on the Main IG Account to JLM's websites. She also at some point restored the link to HOF's website, although she has since removed it. *See e.g.*, **Exhibit 60,** which shows that on November 17, 2020, Gutman had included the link to HOF's website. Unfortunately, on or around November 3, 2020, in a fit of anger after Gutman found out that JLM was not willing to give her the Main IG Account, Gutman removed these links and many hundreds of bridal related posts in a further act of exercising dominion and control over JLM's property. Gutman's deletion of posts and other changes to the Main IG Account occurred just after my telephone call with Gutman her on November 3, 2020 during which I stated that the Main IG Account belonged to JLM.

70.     Gutman has deleted many hundreds of posts from the Main IG Account recently. Attached collectively as **Exhibit 74** are true and correct copies of screenshots taken of the Main IG Account, taken on April 14, 2016, May 19, 2016, May 24, 2016, January 1, 2017, January 5, 2017, January 8, 2017, March 29, 2017, May 15, 2017, January 1, 2018, April 8, 2018, June 21, 2018, July 2, 2018, April 22, 2019, June 03, 2019, and July 22, 2019. JLM has confirmed that Gutman has deleted the posts at Exhibit **74**, and many hundreds of others**,** which previously had been posted on the Main IG Account by Gutman or other JLM employees.

71.     Further, on November 23, 2020, in response to a JLM's request to add JLM content on the Main IG Account, Gutman refused and again insisted that the Main IG Account is her personal account. *See* **Exhibit 75,** which is a true and correct copy of a chain of emails between Gutman and

Elyse Gilreath, and my email response to Gutman sent on November 25, 2020.  It is now clear that Gutman has no intention to return the Main IG Account to JLM, or even to allow it to be used to promote JLM's HP Brand while these other disputes are resolved.

72.     For the reasons stated above, Gutman's claim that the Main IG Account was her personal account was knowingly false.  Moreover, Gutman has at least two personal accounts with the handles @mrshayleycleven and @allthatglittersonthegram.  It is clear that these two accounts are her personal accounts, while Gutman has wrongfully converted the Main IG Account to be used as her own business platform, as if she were an influencer.  Gutman is continuing to use JLM's Main IG Account, and the associated goodwill that JLM has created in the account, for her own personal gain. She is also profiting from the number of followers on the account that were obtained through JLM's marketing efforts and by JLM's employees who managed the account.  Additional, JLM is being harmed as its customers who expect to see bridal related content on the Main IG Account, instead see non-bridal content.  This content does not drive sales of JLM's goods and is actually turning off consumers who would otherwise purchase JLM's goods.

73.     JLM has commenced this action, and seeks injunctive relief herein, in order to protect JLM's business, its assets and intellectual property rights and the goodwill associated therewith. Gutman has refused to return the Main IG Account to JLM and she continues to display content on the Main IG Account for her own personal gain.

74.     JLM requires immediate relief now as Gutman continues not only to endorse non-JLM approved services and goods of others, which tarnishes JLM's goodwill, registered trademarks and goodwill in the Main IG Account, but she is also deleting JLM posts on the Main IG Account.  These posts are needed to sell clothing currently sold under the HP Brands.  Further, these posts are needed for archival purposes.  There are thousands of posts on the Main IG Account that JLM has no copies of.

75.     Further, the Main IG Account, which has over 1.1 million followers, is the linchpin in JLM's marketing of its HP Brands.  Each of JLM's dedicated websites and social media accounts that are dedicated to the HP Brands, fall under the umbrella of the Main IG Account.  Without the Main IG Account, which JLM has created, cultivated, supported and paid for, JLM has now lost access to its primary marketing tool, as well as access to millions of potential customers.  JLM's profits have fallen.  During this pandemic, when it is difficult to impossible to visit a brick-and-mortar location to see a dress, JLM relies now even more on social media to generate sales.  JLM needs its Main IG Account back in order to sell its clothing and apparel under its HP Brands.

76.     In particular, the winter holidays are the top time for engagements, which drives traffic to JLM's brands and retail partners.  JLM needs the Main IG Account to be on brand immediately in order to capitalize on the holiday season.  Additionally, TLC is about to air in January of 2021 a three-part covid special of *Say Yes to the Dress*.  *See* https://people.com/style/say-yes-to-the-dress-announces-coronavirus-pandemic-episode/.  As JLM has an exclusive collection of dresses at Kleinfeld, where the show is filmed, JLM needs to have the Main IG Account focused on the HP Brands, with bridal related content, immediately in order to capitalize on this publicity.  Having links and endorsements to Chosen Foods, rather than links to the JLM HP Website and bridal related posts, will undermine JLM's ability to market the HP Brands.  This will result in decreased sales for JLM.

77.     Additionally, Gutman's conduct is also undermining the value of the Main IG Account which, until recently, was solely dedicated to the HP Brands and the bridal industry.  Instagram uses an algorithm that matches the content of the Instagram account, in large part, to the content of what users are interested.  As Gutman converts the Main IG Account from centering on the HP Brands and the bridal industry, the Instagram Algorithm is less likely to indicate that the Main IG Account is bridal related.  Thus, Instagram users who are interested in purchasing a bridal dress or brides' maid dress is now less likely to be directed the Main IG Account.  This is disastrous to JLM and is undoing

all of the hard work and money that JLM has expended on promoting the Main IG Account.  Every off brand post that Gutman makes, such as those at Exhibits 69-73, 78-79, effects the algorithm used by Instagram makes the Main IG Account less likely to appear on the feeds of Instagram users who interested in purchasing wedding dresses.  In fact, if the Main IG Account is not returned to JLM's control immediately, or if Gutman is not required to maintain the Main IG Account as required by JLM, the harm to the Main IG Account will be irreversible.

78.     Unless JLM receives an order granting it injunctive relief against Gutman, JLM believes that Gutman will continue to delete posts on the Main IG Account and continue to post her own personal content and endorsements for third parties' products, which will irreparably damage the good will and value in the Main IG Mark that JLM has spent millions of dollars to create.  This will also prevent JLM from further licensing the Designer's Names to third parties.  For example, Gutman, through her actions, is also jeopardizing JLM's relationship with one of JLM's biggest customers, BHLDN (a subsidiary of Urban Outfitters) as there is an understanding that we will be cross promoting the brands on social media.  BHLDN has made a large investment in an exclusive Hayley Paige collection.  JLM is unable to pursue other third-party licensing deals as JLM believes that Gutman would not fulfill her obligations to JLM and her obligations to the third parties.

79.     As things stand, there is no guarantee that Gutman will include links and references to HOF.  I believe that she may refuse to do so to harm JLM because JLM is the owner of the jewelry license.  JLM is not making any new licensing deals with third parties as I believe that Gutman would not honor her obligations under these agreements or would negotiate directly with the third parties, ostensibly on behalf of JLM, but actually in order to obtain additional consideration for herself at JLM's expense.  For example, even though JLM has agreements in the past with TLC for *Say Yes to the Dress*, I have recently learned that Gutman has made side agreements with TLC without JLM's knowledge.

80.     Additionally, it is apparent from the video clip of the three part *Say Yes to the Dress* special discussed in paragraph 76, *supra*, that Gutman's fiancé, Conrad Cleven, will be featured on the program.  Based on the off-brand post by Gutman on the Main IG Account containing Mr. Cleven (*see* e.g., Exhibit 73 at p 3), and the improper co-sponsorships by Cleven and Gutman (see Exhibits 78, 80), I have strong reason to believe that Mr. Cleven's appearances on *Say Yes to the Dress* will be equally inappropriate and further tarnish the name of the HP Brands and the @misshayleypaige name.  JLM thus requires an order preventing Gutman from making any commercial use of the HP U.S. Trademarks, without JLM's approval, which would include enjoining Gutman from appearing on *Say Yes to the Dress* unless the episodes of the program are first approved by JLM.  JLM requires this relief immediately as Gutman appears on the program not to promote herself, but to promote the HP Brands, and the program is about to be broadcast at the beginning of January of 2021.

81.     Also, in the past, JLM has used the Main IG Account to promote events at the JLM Flagship store, which is the only store with the complete Hayley Paige collection of bridal wear.  Events at this store have been an important cornerstone in the growth of good will in the HP Brands and revenue.  JLM requires the Main IG Account to be on-brand in order to effectively attract prospective purchasers of wedding dresses and wedding related goods to shop at this store.

82.     JLM thus seeks an order enjoining Gutman from: (a) using the Main IG Account, including, the Pinterest Account, the TikTok Account, and any of the other JLM Social Media Accounts listed on Ex. 17, (i) posting new content thereto; (ii) posting content to the bio section of the Main IG Account, the Pinterest Account, the TikTok Account and any of the other JLM Social Media Accounts listed on Ex. 17, such as links to websites that are not owned by JLM or HOF; (iii) deleting any bridal related content or content related to HOF, without JLM's permission; (b) changing the handle of the Main IG Account and any of the other JLM Social Media Accounts listed on Ex. 17, or transferring same to anyone other than JLM; and (c) prohibiting Gutman from accessing or

attempting to take control over any of the JLM Social Media Accounts identified on Exhibit 17.

83.     JLM also seeks an order directing Defendant to deliver to JLM the access credentials for the Main IG Account, the Pinterest Account and the Tik Tok Account i.e., to provide the password for these accounts to JLM and assist in attaching a JLM email address to the account.  JLM requires the password, in particular for the Main IG Account, so that it can resume making on-brand posts to the account, delete the offensive posts and un-tag Mr. Cleven's posts to Main IG Account that are inappropriate and off-brand.  In the alternative, JLM requires at a minimum an order that: (a) prohibits Gutman from making any further posts or changes to any of the JLM Social Media Accounts without JLM's written permission; (b) prohibits Gutman from using the JLM Social Media Accounts to send, or respond to, DMs or private messages in order to negotiate deals or transaction business unrelated to JLM, without JLM's permission; (c) requires Gutman to delete the non-authorized personal posts and un-authorized endorsements, to remove all references to the account being a personal account and, for example, to un-tag the Main IG Account from Mr. Cleven's Instagram posts,  at JLM's written request; and (d) requires Gutman to post on the JLM Social Media Accounts for which she has the password, JLM approved bridal related content within 24 hours of each request, ,including references to JLM, links to the JLM Websites and the JLM HP Social Media Accounts.

84.     JLM also seeks an order that directs Gutman to cease from taking any other action that breaches JLM's Employment Agreement with Gutman, and/or from using the Designer's Names and related trademarks without JLM's authorization, so that JLM knows that Gutman stays on brand.  Every non-authorized use of JLM's trademarks and the Designer's Names, dilutes and tarnishes JLM's trademarks.  JLM respectfully requests this relief as Gutman is still employed by JLM and the terms of her Employment Agreement are still in full force and effect.  Further, JLM is entitled to protect its intellectual property rights that it acquired from Gutman and which JLM has invested considerable sums of money to create good will.

85.     JLM did not file this motion sooner as JLM was, until recently, in negotiations with Gutman.  She still designs for JLM and I believed that she ultimately would return the Main IG Account to JLM.  However, based on her recent emails to me, I believe that she intends to take over the Main IG Account permanently, and destroy the content on the Main IG Account that JLM has worked so hard to create.

**WHEREFORE,** for the foregoing reasons I respectfully request that the Court grant JLM's request for a temporary restraining order and for a preliminary injunction.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 14th day of December 2020.

JOSEPH L. MURPHY