# EXHIBIT 11

# EMPLOYMENT AGREEMENT

**THIS AGREEMENT** dated as of this 13th day of July, 2011, is entered into between JLM COUTURE, INC., a Delaware corporation (hereinafter called the "Company") with offices at 225 West 37th Street, 5th Floor, New York, New York 10018, and Hayley Paige Gutman, residing at 119 Sullivan Street, Apt. 3, New York, NY 10012 (hereinafter called the "Employee").

## WITNESSETH:

**WHEREAS**, the Employee is a designer of brides, bridesmaids, evening wear and related apparel; and

**WHEREAS**, the Company wishes to employ the Employee as a designer of brides, bridesmaids, evening wear and related apparel to be manufactured and sold by the Company; and

**WHEREAS**, the Company and Employee wish to enter into an Employment Agreement which, upon execution, will govern the terms of the Employee's employment by the Company.

**NOW, THEREFORE**, in consideration of the mutual covenants, conditions and promises contained herein, the parties hereby agree as follows:

1. <u>Employment Term</u>. The Company hereby agrees to employ the Employee and the Employee agrees to enter the employ of the Company on the terms and conditions set forth below for a term commencing on the date this Agreement is fully executed by both parties (the "Commencement Date"), and terminating on August 1, 2016 (the "Termination Date"), unless sooner terminated as herein provided (such initial term of this Agreement is herein referred to as the "Term"). The Company may extend the Term an additional one (1) year beyond the initial term or an additional five (5) years with an increase of [REDACTED] o Base Compensation as provided in paragraph 4(a) provided the Company notifies Employee in writing at least ninety (90) days prior to the Termination Date of its desire to extend the term. The

compensation for any extended Term shall be as set forth herein with such increases (if any) in the Base Compensation, as defined below, which, in the discretion of the Board of Directors of the Company, are deemed appropriate.

2. Duties. Subject to the authority of the Board of Directors of the Company and the control and direction of the President and Board of Directors of the Company, the Employee shall be employed as a designer of a line of brides and bridesmaids dresses. From time to time and at the request of the President of the Company, the Employee may also be responsible for designing evening wear and related apparel for the Company (all apparel designed by the Employee is collectively referred to herein as the "Products"). All of the Employee's designs shall be under the Jim Hjelm or JLM Couture label, or other name deemed acceptable by the Company. The Employee shall have direct responsibility for the design of the Products. In addition to designing the Products, the Employee shall perform such other duties and services commensurate with her position as a designer for the Company, as may be assigned to her by an officer of the Company, including, but not limited to, traveling to trunk shows, traveling to China or elsewhere abroad to assist in or supervise manufacturing of the Products, assisting with advertising programs, and designing bridal, bridesmaids, evening wear and related apparel to be sold under the Jim Hjelm or JLM Couture label.

3. Full Time. The Employee shall devote her full time and attention during business hours on the Company's premises to the business affairs of the Company and during the period of such employment, the Employee will not, without the prior consent of the President or Board of Directors of the Company, engage in any other business enterprise which requires the personal time or attention of the Employee and which would interfere with the performance of her duties hereunder. The foregoing shall not prevent the purchase, ownership or sale by the Employee of investments or securities of publicly-held companies and any other business which are not

competitive and do not have any business relations with the Company or any subsidiary of the Company, provided the time or attention devoted by the Employee to such activities does not interfere with the performance of her duties hereunder.

4.  Compensation. For the full, prompt and faithful performance of all the duties and services to be performed by the Employee hereunder, the Company agrees to pay, and the Employee agrees to accept, the amounts set forth below.

(a) Commencing on August 1, 2011, as Base Compensation, Employee shall be paid at the rate of $ ▮▮▮ which Base Compensation shall be increased at the rate of ▮▮▮ per year.

(b) Commencing on August 1, 2011, as Additional Compensation, the Employee shall be paid ▮▮▮ of annual net sales of the Products in excess of ▮▮▮ Dollars ▮▮▮ and ▮▮▮ of annual net of the Products sales in excess of ▮▮▮ Dollars ▮▮▮ per year during each fiscal year of the Term and any extension thereof.

(c) Net Sales of the Products for the purposes of Paragraph 4(b) shall be computed separately for each fiscal year of the Company (or part thereof, if Employee's employment shall terminate other than at the end of a fiscal year or if Employee's employment shall commence other than at the beginning of a fiscal year). Such computation shall be made as soon as practicable after the end of each such period, but not later than ninety (90) days after the end of each fiscal year of the Company on October 31.

(d) For the purposes of this Agreement, Net Sales of the Products shall mean the Company's gross receipts from sales of the Products and the net proceeds from revenues derived from licensing the Designs (as defined in Paragraph 11 below) to a third party, if any,

less the usual discounts and allowances to customers, refunds for returned goods, cost of transportation and non-collectable receivables.

(e) The Additional Compensation to be paid pursuant to Paragraph 4(b) shall be payable not later than 120 days after the end of each fiscal year of the Company.

(f) The Company shall provide the Employee with health benefits on the same terms as provided to other employees of the Company receiving similar compensation to that of the Employee.

(g) The compensation provided for herein shall be in addition to any retirement, profit sharing, insurance (including medical) or similar benefit which may at any time be payable to Employee pursuant to any plan or policy of the Company relating to such benefits, which benefits shall be made available to other similarly situated employees of the Company. Such compensation shall be in addition to any options, which may be granted under any Company stock option plan.

5. <u>Employee's Right to Supporting Documentation</u>.   The Employee shall have the right, on an annual basis, to receive a schedule detailing the sales information that the Company relies upon in making payments of Additional Compensation to the Employee.

6. <u>Vacation</u>. The Employee shall be entitled to two (2) weeks of vacation per year, which shall be taken at such time or times as shall be mutually determined by the Company and her. Commencing in year three of the Agreement, the Employee shall be entitled to three (3) weeks of vacation per year, which shall be taken at such time or times as shall be mutually determined by the Company and her.

7. <u>Death</u>. In the event of the death of the Employee during the Term or any extension thereof, the employment of the Employee hereunder shall terminate and come to an end on the last day of the month of the death of the Employee. The Estate of the Employee (or

such persons as Employee shall designate in writing) shall be entitled to receive, and the Company agrees to pay, the Base Compensation of the Employee and the Additional Compensation provided by Paragraph 4(b) computed up to the end of the month in which such death occurs. Notwithstanding the death of the Employee, the provisions of Paragraphs 10 (a),(b), and (d) and Paragraph 11 hereof shall continue in full force and effect.

8. Disability. In the event that the Employee shall, because of her own illness or illness of any of her husband or children, or incapacity, physical or mental disability of any of them, be unable to perform the duties and services to be performed by her hereunder for a consecutive period of six months during any twelve (12) month period, the Company may terminate the employment of the Employee hereunder after the expiration of such period. The Employee shall be entitled to receive her Base Compensation and the Additional Compensation provided by Paragraph 4(b) computed up to the date of such termination.

9. Covenant Not To Compete; Non-solicitation; Nondisclosure

(a) Employee covenants and agrees that during the period of her employment with the Company, Employee shall not compete with the Company, directly or indirectly. For purposes of this Agreement, Employee shall be deemed to compete with the Company if she engages in, or is associated with (whether as an officer, director, shareholder, partner, employee, independent contractor, agent or otherwise), any person, organization or enterprise which engages in the design, manufacture, marketing or sale of: (i) bridal apparel, including bridesmaids, mother of the bride and flower girls and related items; (ii) bridal accessories and related items; (iii) evening wear and related items; and/or (iv) any other category of goods designed, manufactured, marketed, licensed or sold by the Company.

(b) The Employee covenants and agrees for a period of two years following the termination of her employment with the Company, she will not directly or indirectly induce

any person associated with or employed by the Company or any subsidiary of the Company, to leave the employ of or terminate his association with the Company, or any subsidiary of the Company, or solicit the employment of any such person on her own behalf or on behalf of any other business enterprise.

(c) The Employee covenants and agrees that she will not, directly or indirectly, during or after the term of employment disclose to any person not authorized by the Company to receive or use such information, except for the sole benefit of the Company, any of Company's Confidential Information (as defined below), or give any Confidential Information to any person not authorized by the Company to receive it. Confidential Information means any financial information, marketing plans, strategies, trade secrets, data, know-how, process, techniques, designs, styles, customer lists or other proprietary information of the Company or its affiliates. The term "Confidential Information" does not include, and there shall be no obligation hereunder with respect to information that is or becomes generally available to the public other than as a result of disclosure by the Employee or any agent or other representative thereof. The Employee shall not have any obligation hereunder to keep confidential any Confidential Information to the extent disclosure of any thereof is required by law; provided, however, that in the event disclosure is required by law, the Employee shall provide the Company with reasonable notice of such requirement so that the Company may seek an appropriate protective order.

(d) If any term of this Paragraph 9 is found by any court having jurisdiction to be unenforceable because it is too broad, then and in that case, such term shall nevertheless remain effective, but shall be considered amended (as to the time, area, scope or otherwise, as the case may be) to a point considered by said court as reasonable, and as so amended shall be fully enforceable.

(e)  In the event that the Employee shall violate any provision of this Agreement (including but not limited to the provisions of this Paragraph 9), the Employee hereby consents to the granting of a temporary or permanent injunction against her by any court of competent jurisdiction prohibiting her from violating any provision of this Agreement.  In any proceeding for an injunction, the Employee agrees that her ability to answer in damages shall not be a bar or interposed as a defense to the granting of such temporary or permanent injunction against the Employee.  The Employee further agrees that the Company will not have an adequate remedy at law in the event of any breach by the Employee hereunder and that the Company will suffer irreparable damage and injury if the Employee breaches any of the provisions of this Agreement.

10.  Exclusive Right to the Designer Name

(a)  The Employee hereby grants to the Company the exclusive world-wide right and license to use her name "Hayley", "Paige", "Hayley Paige Gutman", "Hayley Gutman", "Hayley Paige" or any derivative thereof (collectively the "Designer's Name") in connection with the design, manufacture, marketing and/or sale of bridal clothing, bridal accessories and related bridal and wedding items, including any and all good will associated therewith, throughout the Term (including any extension of the Term), plus a two (2) year period following the Term or any extension thereof, provided Employee has substantially participated in the design or creation of such clothing or related items during her employment by the Company.  In the event that the Company has not sought to Register the Designer's Name as a Trademark with the United States Patent and Trademark office ("USPTO") and/or other authorities in the United States or abroad prior to and including the last day of the two (2) year period following the termination of Employee's employment for whatever reason, such exclusive right and license

by Company to use Employee's name shall terminate upon the passage of said two (2) year period.

(b) The Employee hereby irrevocably sells, assigns, and transfers all right, title and interest to the Company that now exists or may exist during the Term (and any extensions thereof) and for a period of two years thereafter, to register the Designer's Name or any derivatives(s) thereof as trademarks or service marks (the "Trademark" or "Trademarks") with the USPTO and/or other authorities in the United States or abroad. Except as otherwise provided herein, the permission of the Employee to the Company to so register the Trademarks shall be exclusive and perpetual and is hereby granted in exchange for good and valid consideration. Employee agrees to and shall cooperate with the Company and execute any and all documents and perform any and all other actions as may reasonably be necessary to effectuate the intent to secure for the Company complete ownership of the Trademarks. The Trademarks shall in perpetuity be the exclusive property of the Company, the Employee having consented to it being filed by the Company and the Employee thereof shall have no right to the use of the Trademarks, Designer's Name or any confusingly similar marks or names in trade or commerce during the Term or any time thereafter without the express written consent of the Company. The Company shall be solely permitted to license the Trademarks to a third party.

(c) (i) As additional consideration for the assignment to the Company of the Designer's Name and the Trademarks, the Employee shall receive payment equal to ▮▮▮ ▮▮▮▮▮ percent ▮▮▮ of net revenues derived from the sale of goods under the Designer's Name or Trademarks based on the Designer's name (the "Additional Consideration") in each of the ten (10) years following the termination of the Employee's employment with the Company. In the event the Employee's employment is terminated for cause pursuant to

paragraph 13.1, the Employee shall be entitled to receive payment of the Additional Consideration for a period of five (5) years.

    (ii)    In the event of the Employee's death prior to the expiration or termination of the Agreement, the Estate of the Employee shall be entitled to receive payment of the Additional Consideration for a period of five (5) years from the date of such death;

    (iii)    In the event of the Employee's death during the first five (5) years after expiration or termination of the Agreement, payment of the Additional Consideration shall be made to the Estate of the Employee and shall continue through the end of the fifth (5th) year following the expiration or termination of the Agreement;

    (iv)    In the event of the Employee's death between the fifth (5th) year and the end of the ten (10) year period provided for in Paragraph (c)(i), the Company's obligation to pay the Additional Consideration shall cease and be fully satisfied following payment to the Estate of the Employee of all amounts due on account of sales made through and included the end of the month in which such death occurs.

(d)    The parties acknowledge and agree that the Employee shall not seek to register the Designer's Name or any derivative(s) thereof, in the USPTO and/or other authorities in the United States or abroad, and shall not grant the right to so register the Designer's Name to any third party.

(e)    In the event that the Company files an application to register the Trademark or Trademarks, Employee agrees that for a period of five years following termination of her employment, she shall not be identified to the trade or consuming public as the designer, and her role as designer shall not be used to promote the sale, of any goods in competition with goods manufactured and sold by the Company.

11. <u>Designs and Intellectual Property</u>. The parties expressly agree that all designs, drawings, notes, patterns, sketches, prototypes, samples, improvements to existing works, and any other works conceived of or developed by Employee in connection with her employment with the Company involving bridal clothing, bridal accessories and related bridal or wedding items, either alone or with others, from the commencement of her employment by the Company through the Term of the Employment Agreement and any extensions thereof (collectively, the "Designs "), are works for hire, and ownership of any intellectual property arising from or related to the Designs shall be the sole and exclusive property of the Company. Employee expressly acknowledges and agrees that all Designs created prior to the execution of this contract were created as works for hire and are the exclusive property of the Company.

If, for any reason the Designs, or any portion thereof, are deemed not to be a work made for hire, then the Employee irrevocably, absolutely and unconditionally assigns to the Company (a) all of right, title and interest in and to the Designs and/or any portion thereof (whether arising under copyright law, trademark law, or otherwise), including to the extent applicable, but not limited to, the exclusive rights enumerated in 1 U.S.C. Section 106, and all extensions and renewals thereof, and (b) all moral rights with respect to the Designs, including but not limited to, any and all rights of identification of authorship and any and all rights of approval, restriction or limitation on use or subsequent modifications relating to the Designs.

The Employee agrees to and shall cooperate with the Company and execute any and all documents and perform any and all other actions as may reasonably be necessary to effectuate the intent to secure complete ownership of the Designs.

12. <u>Use of Designs</u>. Employee agrees and acknowledges that after such time as she is no longer employed by the Company, she shall have no right to use the Designs or any

Trademarks owned by the Company, or any variations, versions, representations or confusingly similar facsimiles thereof, in trade or commerce for any purpose whatsoever.

13. Termination.

13.1 (a) Termination by Company for Cause. The Company may terminate the Employee's employment if the Employee's employment is terminated "for cause". The term "for cause" shall, for the purposes of this Agreement, mean (i) a material breach by the Employee of the provisions of this Agreement, following written notice by the Company and 30 days opportunity by Employee to cure such breach (ii) the commission by the Employee for aiding or abetting, or the commission of a felony or of a fraud or a crime involving moral turpitude or a business crime, (iii) the knowing possession or use of illegal drugs, or the excessive drinking of alcoholic beverages which impairs the Employee's ability to perform her duties hereunder, (iv) being under the influence of such drugs, substances or alcohol during the Employee's hours of employment, or (v) any violation of the Company's corporate policies described in the Company's Employee Handbook, which handbook may be supplemented or amended by the Company from time to time, a copy of which has been provided to the Employee. Any written communication from any personnel authorized by the President of Board of Directors concerning the Employee's failure to comply with the provisions of this Agreement, including without limitation, e-mail and intra office memoranda, shall constitute written notice of breach for purposes of this paragraph 13.

(b) In the event of such termination for cause, the Employee shall be entitled to receive her Base Compensation provided by 4(a) and the Additional Compensation provided by Paragraph 4(b) computed up to the date of such termination and the provisions of Paragraph 13 hereof shall continue in full force and effect. In addition the Employee shall also be entitled to COBRA health benefits.

13.2. <u>Termination by Company Without Cause</u>. The Company shall have the right to terminate the Employee's employment hereunder at any time, without cause, on 30 days written notice to the Employee. In the event the Employee's employment hereunder is terminated by the Company without cause, the Employee shall be entitled to receive the Base Compensation provided in Paragraph 5 (a) for a period of six months from the date such termination becomes effective and the Additional Compensation provided by Paragraph 5 (b) for a period of six months from the date such termination becomes effective and the provisions of Paragraph 13 hereof shall continue in full force and effect. The Company also agrees to pay the Employee's health insurance for six months, and thereafter, the Employee shall be entitled to COBRA health benefits.

14. <u>No Impediments</u>. The Employee warrants and represents that she is free to enter into this Agreement and to perform the services contemplated thereby and that such actions will not constitute a breach of, or default under, any existing agreement.

15. <u>No Waiver</u>. The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or of any other provision.

16. <u>Entire Agreement</u>. This Agreement constitute the entire agreement and understanding of the parties hereto and no amendment, modification or waiver of any provision herein shall be effective unless in writing, executed by the party charged therewith.

17. <u>Governing Law and Jurisdiction</u>. The Employment Agreement, including all amendments thereto, shall be governed by New York Law and shall be construed interpreted and enforced in accordance with New York Law. Exclusive jurisdiction over actions arising out of or relating to the enforcement of the Employment Agreement and all rights derived there from,

including all trademark and other intellectual property rights, shall rest in the Courts of New York State, New York County, or the United States District Court, Southern District of New York and Employee hereby submits to the personal jurisdiction of the Courts of New York State, New York County, or the United States District Court, Southern District of New York in all such matters.

18. Binding Effect. This agreement shall bind and inure to the benefit of the parties, their successors and assigns.

19. Assignment and Delegation of Duties. This Agreement may not be assigned by the parties hereto except that the Company shall have the right to assign this Agreement in connection with a sale or transfer of all or substantially all of its assets, a merge or consolidation. This Agreement is in the nature of a personal services contract and the duties imposed hereby are non-delegable.

210. Paragraph Headings. The paragraph headings herein have been inserted for convenience of reference only and shall in no way modify or restrict any of the terms or provisions hereof.

21. Notices. Any notice under the provisions of this Agreement shall be given by registered or certified mail, return receipt requested, directed to the addresses set forth above, unless notice of a new address has been provided in writing.

22. Unenforceability/Severability. If any provision of this Agreement is found to be void or unenforceable by a court of competent jurisdiction, the remaining provisions of this Agreement, shall, nevertheless, be binding upon the parties with the same force and effect as through the unenforceable part as been severed and deleted.

23. <u>Supersedes Prior Agreement</u>. This Agreement represents the entire agreement between the parties and shall control the parties' relationship and supersedes any and all prior agreements between them.

24. <u>Counterparts</u>. This agreement may be executed in one or more counterparts, all of which shall be deemed to be duplicate originals.

**IN WITNESS WHEREOF**, the parties hereto have caused this AGREEMENT to be executed as of the date first above written.

JLM COUTURE, INC.

By: _____

_____
Hayley Paige Gutman