UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

JLM COUTURE, INC.,

       Plaintiff,

-v-                                                                                    No.  20 CV 10575-LTS-SLC

HAYLEY PAIGE GUTMAN,

       Defendant.

--------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Haley Paige Gutman's motion to dissolve the injunctive relief provisions of the Court's March 4, 2021, Memorandum Opinion and Order granting JLM Couture Inc.'s motion for a preliminary injunction (docket entry no. 109 (the "Preliminary Injunction Order")).  (Docket entry nos. 141-145.)  Defendant Gutman ("Ms. Gutman") argues that the Court should dissolve the Preliminary Injunction Order in light of facts that existed, but were not presented to the Court, prior to the issuance of the injunction. Specifically, Ms. Gutman contends that the injunction should be dissolved because Plaintiff JLM ("JLM") breached the parties' employment contract ("the Contract")[1] by cancelling Ms. Gutman's health benefits as of December 31, 2020, and failing to pay her any "base" or "additional" compensation under the Contract in the year 2021.  (Docket entry no. 145, at ¶¶ 14, 15, 16.)  Separately, Ms. Gutman moves for reconsideration of the Preliminary Injunction Order,

---

[1]    The "Contract," as the term is used herein, comprises the 2011 employment agreement (Docket entry no. 14, Exh. 2), as amended by the 2014 amendment extending that agreement through August 1, 2019 (Docket entry no. 14, Exh. 62), and the February 12, 2019, notice letter exercising JLM's option to further extend Ms. Gutman's employment term by three years through August 1, 2022.  (Id., Exh. 66.)

arguing that it is clearly erroneous insofar as it grants JLM what Ms. Gutman contends is an overbroad injunction against competition, finds that irreparable harm to JLM is likely absent an injunction granting JLM control of the social media accounts referenced in the Preliminary Injunction Order ("the Accounts"),[2] and prohibits Ms. Gutman from using her name in commerce.  (Docket entry nos. 115, 116.)  The Court has jurisdiction of this case pursuant to 15 U.S.C. section 1121, and 28 U.S.C. sections 1138(a) and 1331, and 1367(a).[3]

The Court has reviewed carefully the parties' written submissions,[4] and heard oral argument on June 1, 2021.  For the reasons stated below, the Court denies in its entirety Ms. Gutman's motion to dissolve the Preliminary Injunction Order and denies in its entirety Ms. Gutman's motion for reconsideration.  The Court does, however, modify two provisions of the Preliminary Injunction Order for the purpose of clarity.

FACTS

This recitation of facts is limited to the parties' material proffers in connection with the motion to dissolve the Preliminary Injunction Order.  The Court assumes the parties' familiarity with the facts and history of the case.

---

[2] The Accounts at issue are listed in Addendum 1 to the Preliminary Injunction Order.
[3] On May 28, 2021, the Second Circuit issued a decision holding that Ms. Gutman's notice of appeal from the Preliminary Injunction Order is not yet effective due to Ms. Gutman's pending motion for reconsideration (docket entry no. 115).  (Docket entry no. 174.)  Accordingly, the filing of the notice of appeal did not divest this Court of jurisdiction to consider Ms. Gutman's dissolution and reconsideration motions.
[4] The Court has reviewed the briefing and proffers of the parties in relation to the motion to dissolve the Preliminary Injunction Order located at docket entry numbers 141-145, 156-160, 164, 165, 167, and 168, and has reviewed the briefing of the parties in relation to the motion for reconsideration located at docket entry numbers 116, 135, and 138.

After lengthy contract negotiations[5] and actions by both parties as detailed in the Preliminary Injunction Order, Ms. Gutman announced her resignation from JLM Couture Inc. on December 17, 2020.  (Docket entry no. 58, Exh. 127.)  Ms. Gutman's employment contract with JLM provides, inter alia, for the payment of base compensation, "additional" compensation computed based on the annual net sales of certain product lines during the fiscal year and payable "not later than 120 days after the end of each fiscal year of the company," and benefits.  (Docket entry no. 14, Exh. 2, at §§ 4(b)-(e); docket entry no. 14, Exh. 62.)  By letter dated December 29, 2020, JLM notified Ms. Gutman that "[s]ince you resigned from your employment . . . your Medical Plan was terminated as of December 31, 2020."  (Docket entry no. 143, Exh. 6.)  Ms. Gutman proffers that, throughout her employment with JLM, her base compensation was paid bi-weekly, and that she has not received any base compensation since December 24, 2020.  (Id. at ¶ 15.)  Ms. Gutman has not been paid any additional compensation for fiscal year 2020.  (Id. at ¶ 14.)  On March 18, 2021, Ms. Gutman sent JLM a letter enumerating these alleged material breaches of the Contract and declaring the Contract terminated.  (Docket entry no. 143, Exh. 7.)  JLM did not respond to the March 18, 2021, letter.  (Docket entry no. 145, at ¶ 19.)

Ms. Gutman asserts that, by failing to pay compensation and benefits allegedly due to her, JLM has materially breached and repudiated the Contract, electing to treat the Contract as terminated, and is not entitled to injunctive enforcement of any of the Contract's

---

[5]  As a part of these negotiations, Mr. Murphy, JLM's Chief Financial Officer, sent Ms. Gutman a letter dated July 24, 2019, stating that JLM would retroactively increase her base and additional compensation, beginning at the start of fiscal year 2019, "as a gesture of good faith during . . . new contract discussions," and that Mr. Murphy was "look[ing] forward to us strengthening our longer-term partnership with an agreement that supersedes the three-year option exercise[.]"  (Docket entry no. 145, Exh. 5.)

restrictive provisions or its provisions granting JLM rights with respect to the use of Ms. Gutman's name and derivatives thereof.  (Docket entry no. 144, at 10-11.)

DISCUSSION

Motion to Dissolve Injunction

"District courts have continuing power to vacate or modify injunctions where there is a showing of a change in the operative facts so that the injunction is no longer justified."  Helmer v. Briody, 721 F. Supp. 498, 505 (S.D.N.Y. 1989); see also International Equity Investments, Inc. v. Opportunity Equity Partners, Ltd., 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006) ("A preliminary injunction may be modified if the moving party demonstrates that a material change in circumstances justifies the alteration."); Railway Labor Executives' Ass'n v. Metro North Commuter R. Co., 759 F. Supp. 1019, 1021 (S.D.N.Y. 1990) ("A continuing injunction, however, whether preliminary or permanent, is always subject to modification for a change in circumstances.")  Upon a motion to dissolve a preliminary injunction order, a court should typically consider "only truly new evidence."  Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1207 (2d Cir. 1970); see also American Optical Co. v. Rayex Corp., 394 F.2d 155 (2d Cir. 1968) (denying motion to vacate a preliminary injunction that was not based on changes in circumstances that occurred after the injunction was entered).

The Second Circuit has expressly disapproved of the practice of "trying to relitigate on a fuller record preliminary injunction issues already decided."  American Optical Co., 394 F.2d at 155; Semmes Motors, Inc., 429 F.2d at 1207; Broker Genius, Inc. v. Seat Scouts LLC, No. 17-CIV-8627 (SHS), 2018 WL 11222928, at *2 (S.D.N.Y. Aug. 3, 2018). Accordingly, upon a motion to modify or dissolve a preliminary injunction, the movant must

demonstrate that the circumstances warranting a change are truly new, as the Court should not permit the movant to "withhold its objections to a preliminary injunction until such time as it can present the strongest possible case." Broker Genius, Inc., 2018 WL 11222928, at *2 (quoting Huk-A-Poo Sportswear, Inc. v. Little Lisa, Ltd., 74 F.R.D. 621, 624 (S.D.N.Y. 1977)).

Here, all of the facts proffered by Ms. Gutman were known or available to her prior to March 4, 2021, the date on which the Preliminary Injunction Order was issued.[6] Ms. Gutman received a letter dated December 29, 2020, terminating her health benefits, and Ms. Gutman proffers that she purchased private health insurance as a result. (Docket entry no. 145, at ¶¶ 16, 17.) Ms. Gutman had historically been paid her base compensation on a bi-weekly basis, and the last payment she received from JLM was made on December 24, 2020. (Id. at ¶ 15.) Ms. Gutman asserts that additional compensation was due on March 1, 2021, but that she was not paid on that date. (Id. at ¶ 14.) Because these facts were known by or were available to Ms. Gutman prior to the issuance of the Preliminary Injunction Order, Ms. Gutman could have raised them prior to the issuance of that order, in further support of her argument that the Contract had been terminated. To permit Ms. Gutman to relitigate the issue of whether the Contract remains in effect, an issue that the Court has already addressed in the context of the preliminary injunction motion practice, would be "judicially unwise." Huk-A-Poo Sportswear, Inc., 74 F.R.D. at 624. Ms. Gutman's failure to raise her factual contentions regarding material

---

[6] Ms. Gutman argues that her March 18, 2021, letter notifying JLM of its alleged breach of the Contract is new evidence, and that the letter terminated the Contract. (Docket entry no. 165, at 5-6.) As the Court explained in the Preliminary Injunction Order, the Contract does not provide for unilateral termination by Ms. Gutman. (Docket entry no. 109, at 19.) Accordingly, Ms. Gutman is unlikely to be able to succeed on her argument that the March 18, 2021, letter effected a change in the status of the Contract, and the correspondence does not establish changed circumstances justifying dissolution of the Preliminary Injunction Order.

breach by JLM and her arguments as to the legal significance of such breach while the preliminary injunction motion was pending is sufficient reason, in itself, for denial of the dissolution motion.

Ms. Gutman's legal arguments also fail on their merits.

Ms. Gutman argues that JLM failed to perform its duties under the Contract following Ms. Gutman's announcement of her resignation, and that JLM's decision to forgo performance terminated the Contract. Accordingly, Ms. Gutman argues that the election of remedies doctrine, which prohibits a party to a contract from ceasing its performance but continuing to accept the benefits of the contract, precludes JLM from pursuing injunctive relief to enforce the Contract. (Docket entry no. 144, at 9.)

When confronted with a repudiation, "the non-repudiating party has two mutually exclusive options. He may (a) elect to treat the repudiation as an anticipatory breach and seek damages for breach of contract, thereby terminating the contractual relation between the parties, or (b) he may continue to treat the contract as valid and await the designated time for performance before bringing suit." Lucente v. International Business Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002). The non-repudiating party "cannot at the same time treat the contract as broken and subsisting." Id. (quotation omitted). Accordingly, a party may not "stop performance and continue to take advantage of the contract's benefits." Martha Graham School and Dance Foundation, Inc. v. Martha Graham Center of Contemporary Dance, Inc., 43 F. App'x 408, 415 (2d Cir. 2002) (quoting Ryan v. Volpone Stamp Co., 107 F. Supp. 2d 369, 386 (S.D.N.Y. 2000)). Once the "party has elected a remedy for a particular breach, [its] choice is binding with respect to that breach and cannot be changed." Lucente, 310 F.3d at 258-259. However, "an election need not be made until the time comes when the party making the election

must render some performance under the terms of the contract." Id. at 259.  At that point, "either performing or failing to perform will indicate an election." Id.

Here, Ms. Gutman argues that, because JLM did not pay her any base or additional compensation and terminated her health benefits after she communicated her resignation on December 17, 2020, the Court must conclude that JLM elected to treat her resignation as an anticipatory breach that terminated the Contract in all respects.  (Docket entry no. 144, at 9.)  However, JLM maintains that it has continued to perform and that it has neither repudiated nor breached the Contract.  (Docket entry no. 159, at 3.)  JLM points to section four of the Contract, arguing that base compensation, additional compensation and benefits are payable only in return "[f]or the full, prompt and faithful performance of all the duties and services to be performed by [Ms. Gutman]" (docket entry no. 159, at 18 citing Contract, § 4). JLM contends that, because such compensation is conditioned upon Ms. Gutman's performance, JLM's post-December 24, 2020, performance under the compensation and benefits provisions is not due in light of Ms. Gutman's announced resignation and subsequent failure to perform her duties.  (Docket entry no. 159, at 18.)  Ms. Gutman did not refute in her reply, or at oral argument respond meaningfully to, JLM's assertion of the Contract's conditional nature, at least with respect to base compensation and benefits.  Instead, in her reply submission, Ms. Gutman simply asserted in conclusory fashion that there is "no question" that JLM's failure to pay her compensation and benefits is a material breach of the Contract.  (Docket entry no. 165, at 4.)

"Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused." Restatement (Second) of Contracts § 225(1). It is Ms. Gutman's burden to demonstrate that JLM failed materially to render performance that was due under the Contract, thus creating changed circumstances that warrant dissolution of the

preliminary injunction. Ms. Gutman, who has performed no services for JLM since December 2020, clearly has not carried her burden of demonstrating that JLM failed to perform a duty that was owed pursuant to the Contract insofar as she complains of JLM's failure to pay base compensation and provide benefits following her announcement of her resignation.

JLM also asserts that it is not obligated to pay Ms. Gutman additional compensation because section three of the 2014 amendment to the Contract, which added references to specific product lines and made other changes in the additional compensation formulae set forth in section four of the original contract, provides in relevant part that, "[i]f [JLM] or [Ms. Gutman] decides that [Ms. Gutman] is not able to continue her additional duties, in whole or in part, . . . [JLM] will no longer be obligated to make the [additional compensation] payments set forth in paragraphs 3(b) and (c)." (Docket entry no. 14, Ex. 62, at ¶ 3(h).) Paragraphs 3(b) and 3(c) constitute the entirety of the amended contract's provisions for additional sales-based compensation. Ms. Gutman does not dispute that she stopped designing the Jim Hjelm collection, which is one of the product lines referenced in the amendment, in 2017, or that she stopped performing all of her duties in December 2020. JLM contends that paragraph 3(h) relieves it of any obligation to pay additional compensation in 2021.[7]

At oral argument, Ms. Gutman asserted that JLM's position is contrary to the clear meaning of the Contract because she was still "able" to continue her additional duties notwithstanding her cessation of work on the Jim Hjelm line, and further asserted that paragraph 3(h) of the 2014 amendment was superseded by a letter written to Ms. Gutman by Mr. Murphy, JLM's CEO, on July 24, 2019. (Docket entry no. 145, Exh. 5.) The July 24, 2019, letter stated

---

[7] JLM also argues that it overpaid Ms. Gutman over the years that the Contract has been in effect and proffers that, if it is wrong about its obligation to pay additional compensation in 2021, it would, if given the opportunity, cure any failure in this regard.

that, "as a gesture of good faith during our new contract discussions," JLM would increase Ms. Gutman's salary and increase the percentage of sales used to compute Ms. Gutman's additional compensation.  (Id.)  Mr. Murphy concluded the letter by stating "I look forward to us strengthening our longer-term partnership with an agreement that supersedes the three-year option exercise."  (Id.)  As the Court found in the Preliminary Injunction Order, the parties were engaged in contract negotiations during a substantial part of 2019, but did not agree to a new contract.  (Docket entry no. 109, at 12.)  In light of the language of section 3 of the 2014 amendment, Ms. Gutman's 2017 cessation of work on the Jim Hjelm line and her 2020 cessation of work for JLM altogether, and the language of the 2019 letter – which does not suggest an abrogation of the prior contract or a permanent commitment to the pay arrangements described therein – Ms. Gutman has not carried her burden of showing that JLM materially changed the circumstances relevant to the injunction by breaching an obligation to pay additional compensation on March 1, 2021.

On this record, Ms. Gutman has failed to demonstrate that JLM has elected to treat the Contract as terminated by her resignation, and the election of remedies doctrine thus does not compel dissolution of the injunction based on Ms. Gutman's belated arguments concerning provision of her compensation and benefits.  For all the reasons stated above, Ms. Gutman has failed to show a material change since the issuance of the Preliminary Injunction Order that demonstrates that the injunction it is no longer justified.

Motion for Reconsideration

The Court next turns to Ms. Gutman's motion for reconsideration of the Preliminary Injunction Order.  (Docket entry no. 115.)  "Reconsideration of a court's previous

order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." MPD Accessories B.V. v. Urban Outfitters, Inc., 2014 WL 3439316, at *1 (S.D.N.Y. July 15, 2014) (internal quotation marks omitted). Accordingly, a motion for reconsideration may only be granted upon one of three grounds: (1) "an intervening change of controlling law," (2) "the availability of new evidence," or (3) "the need to correct a clear error of law or prevent manifest injustice." United States v. Zhu, 41 F. Supp. 3d 341, 342 (S.D.N.Y. 2014) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)).  A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." Analytical Surv., Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted).  "[U]nless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court[,]" reconsideration is generally denied.  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  "The standard for reconsideration is strict and [the decision whether to grant the motion] is committed to the discretion of the court." S.E.C. v. Wojeski, 752 F. Supp. 2d 220, 223 (N.D.N.Y. 2010), aff'd sub nom. Smith v. S.E.C., 432 F. App'x 10 (2d Cir. 2011).

Ms. Gutman first argues that the Court should reconsider paragraph 3(b) of the Preliminary Injunction Order because the Court clearly erred in determining that the Contract's non-competition provision was enforceable notwithstanding Ms. Gutman's purported resignation. (Docket entry no. 116, at 3-5.)  The Court has already considered and rejected Ms. Gutman's arguments that the Contract is no longer in force (see docket entry no. 109, at 19), and Ms. Gutman does not identify any facts or controlling authority the Court overlooked in reaching

that decision. Ms. Gutman's assertion that the term "period of employment" in paragraph 9(a) should be given a distinct meaning from the "term" of the Contract is an argument that was available to her previously, and is, moreover, unpersuasive. Accordingly, Ms. Gutman is not entitled to a "rehearing on the merits" as to the effect of her purported resignation. Analytical Surv., Inc., 684 F.3d at 52.

With regard to Ms. Gutman's argument that the Contract's non-competition provision was not enforceable because it was overbroad in scope, Ms. Gutman admits that she argued as much in opposition to the motion for a preliminary injunction. (Docket entry no. 138, at 4.) In support of her contention that paragraph 9(a) of the Contract is unenforceable because it is overbroad, Ms. Gutman cites only district court-level cases that do not concern covenants binding persons who remain employees and whose services are unique or extraordinary. (Docket entry no. 116, at 4-5.) Accordingly, Ms. Gutman, who worked under the Contract as lead designer for multiple high-profile JLM product lines, improperly seeks to "relitigate[e] old issues," Analytical Surv., Inc., 684 F.3d at 52, and additionally fails to identify any controlling authority that the Court overlooked in rejecting her argument that the covenant is overbroad. The Court's decision to grant the relief set forth in paragraph 3(b) of the Preliminary Injunction Order is supported by controlling precedent in this circuit. See Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 70 (2d Cir. 1999) (approving of injunctions prohibiting competition where a unique employee "has such ability and reputation that his or her place may not easily be filled"). Ms. Gutman's argument that paragraph 3(b) of the Preliminary Injunction Order is not tailored to any identified irreparable harm is also against the weight of controlling authority. Id. ("If the unique services of such employee are available to a competitor, the employer obviously suffers

irreparable harm"). Accordingly, Ms. Gutman has not demonstrated that reconsideration of the scope of paragraph 3(b) of the Preliminary Injunction Order is warranted.

Ms. Gutman has, however, identified one issue that warrants clarification of a provision of the Preliminary Injunction Order – the omission of a terminal date for the restrictions set forth in paragraph 3(b) of the Preliminary Injunction Order. That paragraph of the Preliminary Injunction Order was imposed to prevent imminent and irreparably harmful violations of paragraph 9(a) of the Contract. By its terms, paragraph 9(a) of the Contract applies only "during the period of [Ms. Gutman's] employment with [JLM]." While it is not, of course, clear that the Preliminary Injunction Order, which applies only during the pendency of this action, will still be in effect at the August 1, 2022, terminal date of the employment provisions of the Contract, clarification of that outside terminal date is warranted. Accordingly, paragraph 3(b) of the Preliminary Injunction Order is hereby modified to read as follows:

> Until August 1, 2022 (or such earlier date as may be specified in a further order of the Court), directly or indirectly, engaging in, or being associated with (whether as an officer, director, shareholder, partner, employee, independent contractor, agent or otherwise), any person, organization or enterprise which engages in the design, manufacture, marketing or sale of: (i) bridal apparel, including bridesmaids', mother of the bride and flower girls' apparel and related items; (ii) bridal accessories and related items; (iii) evening wear and related items; and/or (iv) any other category of goods designed, manufactured, marketed, licensed or sold by JLM;

Ms. Gutman next requests that the Court reconsider the Preliminary Injunction Order's provisions granting JLM control of the Accounts. (Docket entry no. 116, at 6.) Ms. Gutman improperly reiterates arguments regarding the Court's interpretation of her duty to "assist[] with advertising programs" that the Court previously considered and rejected. (Docket entry no. 109, at 24-26.) Ms. Gutman also improperly reasserts theories of social media account ownership that she raised in opposition to the motion for a preliminary injunction and which the Court considered and found unnecessary to address. As explained above, reassertion of these arguments is not appropriate grounds for reconsideration. It is similarly inappropriate for Ms. Gutman to attempt to relitigate the effect of her exclusive access to the Accounts since November 2019, as the Court did not overlook this fact and expressly found that JLM had exercised control of the Accounts through its employees and given Ms. Gutman discretion to post to the Accounts in real time in the course of her employment. (Docket entry no. 109, at 26.) Nor has Ms. Gutman demonstrated that the Court clearly erred in finding that JLM had shown that it would likely suffer irreparable harm in the absence of injunctive relief providing JLM with control of the Accounts.

Ms. Gutman argues further that the Preliminary Injunction Order is clearly erroneous insofar as paragraph 3(a) of the order prohibits her from using the Designer's Name[8] in trade or commerce without the written permission of JLM's CEO, Mr. Murphy. (Docket entry no. 116, at 8.) In support of her argument, Ms. Gutman avers that the Court misinterpreted paragraphs 10(a) and 10(b) of the Contract as prohibiting any commercial use of Ms. Gutman's name during her employment when those provisions, according to Ms. Gutman, only prohibit

---

[8]   As defined in the Contract, the term "Designer's Name" refers to 'Hayley', 'Paige', 'Hayley Paige Gutman', 'Hayley Gutman', 'Hayley Paige' or any derivative thereof. (Docket entry no. 109, at 3.)

commercial use of her name as a trademark in connection with bridal goods. (Docket entry no. 116, at 9-10.) The Court considered the proper interpretation of paragraphs 10(a) and 10(b), including a version of Ms. Gutman's proposed interpretation that was briefed in opposition to the motion for a preliminary injunction (docket entry no. 39, at 17), and held that an interpretation that allows Ms. Gutman to use the Designer's Name in commerce would be inconsistent with the clear meaning of paragraph 10(b) and would to deprive JLM of its right to use the Designer's Name in commerce any time after the term of the Contract. (Docket entry no. 109, at 22-23.) To the extent Ms. Gutman's new argument was not raised in previous briefing, it was an argument available to her at that time and is an inappropriate basis for reconsideration. <u>Analytical Surv., Inc.</u>, 684 F.3d at 52 (reconsideration is not a vehicle for "presenting the case under new theories").

    Ms. Gutman's restyled arguments that paragraph 3(a) of the Preliminary Injunction Order is not narrowly tailored to a finding of irreparable harm and is an improper restraint on speech (docket entry no. 138, at 7-8; n.4), do not warrant reconsideration of the Court's conclusion that there was clear and compelling evidence that Ms. Gutman had knowingly, voluntarily, and intelligently waived her right to use her name in commerce in exchange for valid consideration. (Docket entry no. 109, at 45.) Furthermore, the Court found that Ms. Gutman had "contracted away any right to monetize the trademarks and Designer's Name without JLM's permission" (<u>id.</u> at 24) and had demonstrated that she was willing to violate that right by, for example, "surreptitiously approving Optimum Whey's use of her name and image as a designer and developer of JLM products in an endorsing influence post on Optimum Whey's website." (<u>Id.</u> at 49.) Ms. Gutman has not identified any facts or controlling precedent that the Court overlooked in reaching the foregoing conclusions as to the propriety of

the restrictions on her commercial use of her name and derivatives thereof, and its findings regarding irreparable harm. Reconsideration of paragraph 3(a) is therefore denied.

Ms. Gutman argues that paragraphs 3(a), 3(c), and 4 of the Preliminary Injunction Order fail to identify with sufficient detail and specificity the acts restrained thereby in violation of Federal Rule of Civil Procedure 65(d). Ms. Gutman made similar arguments in opposition to the motion for a preliminary injunction (docket entry no. 39, at 25), and therefore cannot show that she has identified facts or controlling law that the Court overlooked in describing the scope of the preliminary injunction. Nor has Ms. Gutman identified controlling authority that the Court overlooked that demonstrates it was clearly erroneous to grant JLM's CEO, Mr. Murphy, authority to approve her use of the Designer's Name and trademarks. However, Ms. Gutman has identified one omission that warrants clarification of a provision of the Preliminary Injunction Order – the omission of a clause in paragraph 3(c) permitting Ms. Gutman to use JLM's trademarks if she receives permission from JLM's CEO. The Preliminary Injunction Order is hereby modified so that paragraph 3(c) reads as follows:

> using or authorizing others to use any Designs,[9] or any of the Trademarks or any variations, versions, representations or confusingly similar facsimiles thereof, in trade or commerce

---

[9] "Designs", as used here, means designs, drawings, notes, patterns, sketches, prototypes, samples, improvements to existing works, and any other works conceived of or developed by Employee in connection with her employment with JLM involving bridal clothing, bridal accessories and related bridal or wedding items, either alone or with others, from the commencement of her employment by JLM through the Term of the Contract. The term includes content created or compiled for the JLM HP Social Media Accounts.

without the express written permission of Plaintiff's chief

executive officer, Joseph L. Murphy; and

Lastly, Ms. Gutman requests a stay of the Preliminary Injunction Order pending appeal, or, in the alternative, pending a motion to the Second Circuit to stay the same order, pursuant to Federal Rule of Civil Procedure 62(c).  (Docket entry no. 116, at 11.)  The factors a court must analyze upon a motion for a stay pursuant to Rule 62(c) include "the applicant's likelihood of success on the merits, whether the applicant will be irreparably injured absent a stay, whether issuance of the stay will substantially injure the other parties, and where the public interest lies."  Arctic Ocean Intern. Ltd. v. High Seas Shipping Ltd., No. 06-CIV-1056 (LAP), 2009 WL 5103283, at *1 (S.D.N.Y. Dec. 28, 2009) (citing Hilton v. Braunskill, 481 U.S. 770, (1987)).  Ms. Gutman asserts that a stay is appropriate because the Preliminary Injunction Order is manifestly unjust, and that a stay will allow Ms. Gutman to seek "meaningful employment."[10] (Docket entry no. 116, at 11.)  Because Ms. Gutman has failed to demonstrate that reconsideration is warranted based on clear error or that the restrictions of the Preliminary Injunction Order work manifest injustice, Ms. Gutman has not demonstrated a likelihood of success on the merits of her appeal.  Ms. Gutman does not argue that the other factors weigh in favor of a stay, and the Court analyzed the balance of equities and public interest when granting the preliminary injunction.  (Docket entry no. 109, at 47-51.)  Accordingly, Ms. Gutman has not

---

[10]   Ms. Gutman argues that the Preliminary Injunction Order prevents her from seeking "meaningful" employment.  (Docket entry no. 116, at 11; docket entry no. 138, at 4.)  By "meaningful" employment, Ms. Gutman appears to reference employment or endeavors that would either be competitive with JLM (docket entry no 116, at 4) or would monetize the trademarks that she has sold to JLM (docket entry no. 138, at 7-8).  Restricting such employment is consistent with the provisions of the Contract and does not work manifest injustice.

demonstrated that a stay pending appeal is necessary or appropriate under the circumstances of this case.

CONCLUSION

For the reasons stated herein, Ms. Gutman's motion to dissolve the Preliminary Injunction Order is denied in its entirety. Ms. Gutman's motion for reconsideration is also denied in its entirety. The Preliminary Injunction Order is, however, clarified by the following modifications:

> Paragraph 3(b) is hereby modified to read "Until August 1, 2022 (or such earlier date as may be specified in a further order of the Court), directly or indirectly, engaging in, or being associated with (whether as an officer, director, shareholder, partner, employee, independent contractor, agent or otherwise), any person, organization or enterprise which engages in the design, manufacture, marketing or sale of: (i) bridal apparel, including bridesmaids', mother of the bride and flower girls' apparel and related items; (ii) bridal accessories and related items; (iii) evening wear and related items; and/or (iv) any other category of goods designed, manufactured, marketed, licensed or sold by JLM;"

Paragraph 3(c) is hereby modified to read "using or authorizing others to use any Designs,[11] or any of the Trademarks or any variations, versions, representations or confusingly similar facsimiles thereof, in trade or commerce without the express written permission of Plaintiff's chief executive officer, Joseph L. Murphy; and"

This order resolves docket entry number 115.  The Preliminary Injunction Order remains in force in all other respects and the case remains referred to Magistrate Judge Cave for general pretrial management.

Dated: New York, New York
       June 2, 2021

                                                 /s/ Laura Taylor Swain
                                                 LAURA TAYLOR SWAIN
                                                 Chief United States District Judge

---

[11] "Designs", as used here, means designs, drawings, notes, patterns, sketches, prototypes, samples, improvements to existing works, and any other works conceived of or developed by Employee in connection with her employment with JLM involving bridal clothing, bridal accessories and related bridal or wedding items, either alone or with others, from the commencement of her employment by JLM through the Term of the Contract.  The term includes content created or compiled for the JLM HP Social Media Accounts.