UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

JLM COUTURE, INC.,

       Plaintiff,

  -v-                                                                   No.  20 CV 10575-LTS-SLC

HAYLEY PAIGE GUTMAN and CONRAD
LOUIS CLEVLEN,

       Defendants.

-------------------------------------------------------x

HAYLEY PAIGE GUTMAN,

       Counterclaim-Plaintiff,

  -v-

JLM COUTURE, INC. and JOSEPH L.
MURPHY,

       Counterclaim-Defendants.

-------------------------------------------------------x

<u>M<small>EMORANDUM</small> O<small>PINION</small> A<small>ND</small> O<small>RDER ON</small> M<small>OTION FOR</small> C<small>ONTEMPT AND</small> S<small>ANCTIONS</small></u>

        Before the Court is Plaintiff JLM Couture, Inc.'s motion to hold Defendant Hayley Paige Gutman ("Ms. Gutman") in civil contempt of the preliminary injunction order, as issued on March 4, 2021 (docket entry no. 109), and modified on June 2, 2021 (docket entry no. 176) (hereinafter "Preliminary Injunction Order" or "PI Order"). Specifically, Plaintiff JLM Couture, Inc. ("Plaintiff" or "JLM") seeks monetary and non-monetary sanctions in response to Ms. Gutman's alleged non-compliance with the PI Order. Ms. Gutman opposes the motion and has filed a cross-motion for the attorney's fees and costs incurred in this motion practice. The

Court has jurisdiction of this case pursuant to 15 U.S.C. section 1121, and 28 U.S.C. sections 1331, 1338(a-b), and 1367(a).

The Court has reviewed carefully all of the parties' written submissions and evidentiary proffers. For the reasons stated below, the Court grants, in part, and denies, in part, JLM's contempt motion and denies in its entirety Ms. Gutman's cross-motion for attorney's fees and costs.

## FACTS

This recitation of facts is drawn from the court record and the parties' material proffers in connection with JLM's contempt motion. The Court assumes the parties' familiarity with the facts and history of the case.

On March 4, 2021, this Court granted JLM's motion for a preliminary injunction, in part, and entered an order enjoining "Ms. Gutman, along with her officers, agents, servants, employees, and attorneys and all other persons who are in active concert or participation with her and them" from taking several actions. (Docket entry no. 109 at 52-54.) Ms. Gutman subsequently moved for dissolution and for reconsideration of the preliminary injunction, which motions the Court denied in their entirety on June 2, 2021. (Docket entry no. 176.) However, the Court modified two provisions of the preliminary injunction for the purpose of clarity. (Id.) Specifically, the court modified paragraph 3(b) of the preliminary injunction to prohibit:

> Until August 1, 2022 (or such earlier date as may be specified in a further order of the Court), directly or indirectly, engaging in, or being associated with (whether as an officer, director, shareholder, partner, employee, independent contractor, agent or otherwise), any person, organization or enterprise which engages in the design, manufacture, marketing or sale of: (i) bridal apparel, including bridesmaids', mother of the bride and flower girls' apparel and related items; (ii) bridal accessories and

> related items; (iii) evening wear and related items; and/or (iv) any other category of goods designed, manufactured, marketed, licensed or sold by JLM;

The Court also modified paragraph 3(c) of the preliminary injunction to prohibit:

> using or authorizing others to use any Designs,[1] or any of the Trademarks or any variations, versions, representations or confusingly similar facsimiles thereof, in trade or commerce without the express written permission of Plaintiff's chief executive officer, Joseph L. Murphy; and

On June 7, 2021, a few days after the Court issued its order denying Ms. Gutman's motions for dissolution and reconsideration of the preliminary injunction, Ms. Gutman posted a video on her Instagram @allthatglittersonthegram account (hereinafter "ATG Account") captioned "SAVE THE DATE." In this video, Ms. Gutman stated:

> The judge clarified in her order that I will be allowed to reenter the bridal industry and start designing again under a different brand name in August of 2022. That is already next year. It is such a relief to have a date to set my sights on . . . . And until then, I will continue to be as resilient as I can, announce my new brand name very soon and explore fashion categories that are outside of those JLM is involved in . . . . And when I'm finally allowed to make a living in the industry I love so much, in August of 2022, I will do it in a way that I can be free and truly proud . . . . I have 14 months to plan a gorgeous return to the work I love. And I hope you are as ready as I am. And of course, thank you not just for the support but the patience . . . .

(See docket entry no. 197, Declaration of Sarah M. Matz ("Matz Decl."), Exs. A, A-1; see also docket entry no. 214, Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Contempt ("Gutman Mem."), at 4.) Ms. Gutman's followers commented on the June 7, 2021,

---

[1]   "Designs", as used here, means designs, drawings, notes, patterns, sketches, prototypes, samples, improvements to existing works, and any other works conceived of or developed by Employee in connection with her employment with JLM involving bridal clothing, bridal accessories and related bridal or wedding items, either alone or with others, from the commencement of her employment by JLM through the term of the Contract. The term includes content created or compiled for the JLM HP Social Media Accounts. (See docket entry no. 109 at 53, n. 21; docket entry no. 176 at 15, n.9 and 18, n.11.)

post expressing, among other things, their excitement about Ms. Gutman's future brand and their desire to purchase bridal gowns from her forthcoming collection. (Matz Decl., Ex. B. ("I would love to buy a wedding dress from you when you return to the business[.]"; "Our wedding anniversary is in August, so put me down as one of your first August 2022 customers for an August 2023 vow renewal!").)

On June 8, 2021, Business Insider published an article entitled, "Hayley Paige Gutman is planning to launch a bridal brand under a new name in August of 2022[,]" reporting on Ms. Gutman's June 7, 2021, announcement on her ATG Account. (Matz Decl., Ex. C.) In response to an inquiry for comment, Ms. Gutman informed Business Insider:

> In addition to reentering the bridal space I was meant to be in, I absolutely am exploring new categories where I have received interest from my community, . . . I am excited that my reentry is so soon and that I have a year to develop brand new ideas.
>
> I look forward to creating an authentic brand that is respectful, exciting, built on integrity, and supporting young creatives, instead of taking advantage of them . . . . I will be making up for lost time myself, and I will be focused on helping small boutique bridal businesses that have been harmed so many ways over the last 15 months.

(Id., see also Gutman Mem. at 11.) After the article was published, Ms. Gutman shared a link to the Business Insider article on her ATG Account as an Instagram story.[2] (See docket entry no. 213, Declaration of Hayley Paige Gutman ("Gutman Decl.") at ¶ 9; docket entry no. 196, Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Contempt ("JLM Mem."), at 9.) On her ATG Account Instagram story, Ms. Gutman wrote "SWIPE UP" on the picture of the article to instruct viewers that they could "swipe up from the bottom" of the story slide "and

---

[2] When shared as an Instagram story, a photo or video "automatically disappear[s] after 24 hours" once it is shared. (See Gutman Mem. at 15, n. 11.)

be directed to [the] . . . link" containing the full article.  (JLM Mem. at 9, n.9; docket entry no. 198, Declaration of Joseph L. Murphy ("Murphy Decl."), Ex. U; Gutman Decl. ¶ 9.)

On June 21, 2021, Ms. Gutman posted a video on her ATG Account showing herself sketching designs of dresses.  (Matz Decl., Exs. H and I; Gutman Decl. ¶ 13.)  The June 21, 2021, video had previously been posted to Ms. Gutman's @agirlyoumightknowgrant Instagram account, which Ms. Gutman utilizes to promote a grant program, on May 7, 2021. (JLM Mem. at 10, n.12; Gutman Mem. at 16 ("Hayley first posted [the May 7 drawing video] on her @agirlyoumightknowgrant Instagram account, and then reposted it on her @ATG account on June 21.").)  Ms. Gutman's followers commented on the video, expressing their excitement about her previously-announced return to the bridal industry in August of 2022.  (Matz Decl., Ex. I ("I'm willing to wait to buy it directly from you."; "That heart dress! I hope that's will be your first release – it will be iconic . . . ." (sic); "I will wait to get married so I can wear one of your NEW stunning dresses someday."; "My best friend push back her wedding date until December next year so you can design and make her dress []." (sic).)

On June 25, 2021, Ms. Gutman posted a picture of a letter sent by JLM to Ms. Gutman's counsel, asserting that her recent conduct on her Instagram account violated the PI Order, along with the following caption:

> Just so everyone is absolutely clear, the Court's preliminary injunction preventing me from working in bridal and competing with JLM, expires on August 1, 2022.  Until then, I look forward to launching a new brand, under a new name, and in a new field outside of bridal or any other category that JLM is currently involved in.  After the preliminary injunction expires, I hope to re-enter bridal with a splash [] and under a new name.

(Matz Decl., Ex. J; see also Gutman Mem. at 7.)

On July 1, 2021, Ms. Gutman posted a subsequent video of herself sketching a dress as an Instagram story on her ATG Account.  (Matz Decl., Ex. K; Gutman Mem. at 15.)  Hours after JLM filed its contempt motion on July 15, 2021, Ms. Gutman posted another video of herself sketching dresses on her ATG Account, a segment of which she also posted as an Instagram story on that account.  (See docket entry no. 218, Declaration of Sarah M. Matz in Support of JLM's Reply ("Matz Reply Decl."), ¶ 2; see also id., Exs. Z, AA; docket entry 224, Gutman's Reply in Support of Cross-Motion for Attorney's Fees and Costs ("Gutman Reply"), at 7, n.3; docket entry no. 225, Reply Declaration of Hayley Paige Gutman ("Gutman Reply Decl."), ¶ 3.)

Sketching designs of gowns was an activity that Ms. Gutman engaged in during her employment with JLM.  As part of its business practices, JLM utilizes sketches of gowns as a "marketing tool," on the "hangtags" of dresses it sells and through Instagram, to "market its news products."  (See JLM Mem. at 13; Murphy Decl. ¶¶ 3-4, 16-20, Exs. M-1-M-7.)  In addition, JLM sells sketches to brides as part of the Hayley Paige brand as accessories or "memorabilia product[s]" for brides to preserve as "art or use[] as part of a memory or scrapbook about a wedding."  (Murphy Decl. ¶ 16.)  Indeed, during her employment with JLM, Ms. Gutman created a "life-like drawing as an inspiration for celebrity Priyanka Chopra's wedding" that JLM used for marketing purposes.  (See Gutman Decl. ¶ 17; docket entry no. 219, JLM's Reply in Support of Motion for Contempt ("JLM Reply"), at 6.)

## DISCUSSION

A civil contempt order is "warranted only if the 'moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict."

Mister Softee, Inc. v. Tsirkos, No. 14-CV-1975-LTS-RLE, 2014 WL 2971106, at *3 (S.D.N.Y. July 2, 2014) (quoting King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995)).  The movant seeking a contempt of court order bears the burden of demonstrating that "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." Id. (quoting United States v. N.Y.C. Dist. Council of N.Y.C., 229 F. App'x 14, 18 (2d Cir. 2007)).  However, the movant need not establish that the violation of the Court's order was willful.  Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 655 (2d Cir. 2004).

Should the movant establish the necessary elements, the Court may invoke its "inherent power to hold a party in contempt" which is "a necessary function for purposes of managing and maintaining order in the efficient and expeditious administration of justice." Flaherty v. Filardi, No. 03-CV-2167-LTS-HBP, 2009 WL 3762305, at *4 (S.D.N.Y. Nov. 10, 2009); see also id. ("Civil contempt is appropriate to ensure parties' future compliance with court orders and to compensate a wronged party.").

Paragraph 3(b) of the Preliminary Injunction Order

JLM asserts that Ms. Gutman's recent course of conduct violates paragraph 3(b) of the PI Order.  Paragraph 3(b) of the PI Order enjoins Ms. Gutman from "[b]reaching the employment Contract,[3] dated July 13, 2011, together with the amendments and extensions thereto, by:"

---

[3]  The "Contract," as the term is used herein, comprises the 2011 employment agreement (docket entry no. 14, Ex. 2), as amended by the 2014 amendment extending that agreement through August 1, 2019 (id., Ex. 62), and the February 12, 2019, notice letter

> Until August 1, 2022 (or such earlier date as may be specified in a further order of the Court), directly or indirectly, engaging in, or being associated with (whether as an officer, director, shareholder, partner, employee, independent contractor, agent or otherwise), any person, organization or enterprise which engages in the design, manufacture, marketing or sale of: (i) bridal apparel, including bridesmaids', mother of the bride and flower girls' apparel and related items; (ii) bridal accessories and related items; (iii) evening wear and related items; and/or (iv) any other category of goods designed, manufactured, marketed, licensed or sold by JLM[.]

This paragraph of the PI Order is clear and unambiguous, as it is "'specific and definite enough to apprise those within its scope of the conduct that is being proscribed' or required." Telenor Mobile Commc'ns AS v. Storm LLC, 587 F. Supp. 2d 594, 615 (S.D.N.Y. 2008) (quoting New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1352 (2d Cir. 1989)). As this Court has already explained, paragraph 3(b) of the PI Order was imposed to prevent imminent and irreparable violations of paragraph 9(a) of the parties' Contract, which binds Ms. Gutman not to compete with JLM during the term of the Contract, and which expires on August 1, 2022. (See docket entry no. 176 at 11-12.) Ms. Gutman's argument that this provision is "not clear and unambiguous for the reasons already set forth in [her] motion for reconsideration[,]" see Gutman Mem. at 10, is unavailing, as the Court denied the reconsideration motion in its entirety. (Docket entry no. 176 at 10-12 (rejecting argument that paragraph 3(b) was overbroad or unenforceable given Ms. Gutman's purported resignation).)

JLM has proffered clear and convincing evidence that Ms. Gutman has failed to comply with paragraph 3(b) of the PI Order. First, Ms. Gutman has actively "engage[d] in . . . the . . . marketing" of her future bridal brand. (PI Order ¶ 3(b).) Ms. Gutman announced in the June 7, 2021, video on her ATG Account that she will be "reenter[ing] the bridal industry" by

---

exercising JLM's option to further extend Ms. Gutman's employment term by three years through August 1, 2022. (Id., Ex. 66.)

launching a new bridal brand in August of 2022.[4]  (Matz Decl., Exs. A, A-1.)  She encouraged her followers and potential customers to "SAVE THE DATE" and thanked them "for the support [and] the patience."  In so doing, Ms. Gutman not only alerted her followers and potential customers that a bridal collection competitive to JLM's would soon be forthcoming, but also cultivated their enthusiasm about the future brand.  This approach was successful, as evidenced by the comments posted to the June 7, 2021, video, in which followers not only expressed their excitement about her future brand but also expressed their willingness to wait until August of 2022 to buy bridal wear so that they could choose from Ms. Gutman's forthcoming collection.  (See Matz Decl., Ex. B ("Our wedding anniversary is in August, so put me down as one of your first August 2022 customers for an August 2023 vow renewal!"; "Ready to purchase my dream gown in August 2022 from the best designer, (name in progress)!!!"; "GREAT NEWS! I will tell my brides to Say Yes to YOUR Dress(es)! and whatever else your doing." (sic).)

Ms. Gutman continued to promote her future bridal collection when she gave an exclusive interview to Business Insider about her plans for "reentering the bridal space [she] was meant to be in[,]" "making up for lost time[,]" and "helping small boutique bridal businesses[.]"  (Matz Decl., Ex. C.)  By linking the Business Insider article reporting on her June 7, 2021, announcement of her future bridal brand to her ATG Account through an Instagram story, Ms. Gutman continued to increase public awareness of her forthcoming collection.  These marketing

---

[4]   As JLM accurately notes, the Court did not rule that Ms. Gutman will be "allowed to reenter the bridal industry" in August of 2022.  Rather the Court clarified that the obligations set forth in paragraph 9(a) of the Contract, which are incorporated into paragraph 3(b) of the PI Order, only apply "during the period of [Ms. Gutman's] employment with [JLM]."  (Docket entry no. 176 at 12.)  Thus, the "outside terminal date" for the relief set forth in paragraph 3(b) is August 1, 2022, which is the "terminal date of the employment provisions of the Contract[.]"  (Id.)  The Court found that Plaintiff's requests for post-Contract term injunctive relief are not yet ripe for review because the term of the Contract remains ongoing.  (Docket entry no. 109 at 19, n.10.)

efforts were reinforced through her June 25, 2021, post on her ATG Account affirming her "hope to re-enter bridal with a splash" "[a]fter the preliminary injunction expires" on August 1, 2022. (Matz Decl., Ex. J.) These activities directly contravene paragraph 3(b) of the PI Order, which prohibits Ms. Gutman from competing with JLM by marketing bridal apparel.

        Ms. Gutman has also violated paragraph 3(b) of the PI Order by posting videos of herself sketching designs of dresses on June 21, 2021,[5] July 1, 2021, and July 15, 2021. (Matz Decl., Exs. H, I, K; Gutman Decl. ¶ 13; Gutman Mem. at 16; Matz Reply Decl. ¶ 2, Exs. Z, AA; Gutman Reply Decl. ¶ 3.) JLM has proffered, and Ms. Gutman has not denied, that JLM utilizes sketches as a "marketing tool" including on the "hangtags on the dresses themselves" as well as "through Instagram[,]" see JLM Mem. at 13, to "market and promote . . . new collections by teasing their launch. . . , explain the inspiration for an upcoming collection . . . , market when new collections would ship . . . , promote previews of upcoming collections . . . , and give a peek into the design process." (Murphy Decl. ¶¶ 3-4, 16-20, Exs. M-1-M-7.) Indeed, Ms. Gutman concedes that she created a "colored, life-like drawing as an inspiration for celebrity Priyanka Chopra's wedding" while employed by JLM, see Gutman Decl. ¶ 17, and does not dispute JLM's claim that the design was used for marketing purposes. (See JLM Reply at 6.) By posting videos of sketches of dress designs to her ATG Account, Ms. Gutman has marketed herself as a bridal and evening wear designer apart from JLM and drawn further attention to her forthcoming bridal collection in violation of paragraph 3(b) of the PI Order. Furthermore, JLM has proffered, without dispute, that sketches are "goods that JLM sells as part of the Hayley Paige brand as an accessory/memorabilia product." (JLM Mem. at 4; see also Murphy Decl. ¶

---

[5]    Ms. Gutman concedes that the June 21, 2021, video posted to her ATG Account was previously posted to her @agirlyoumightknowgrant account on May 7, 2021. (JLM Mem. at 10, n.12; Gutman Mem. at 16.)

16 (explaining that sketches were sold to be "hung as art or used as part of a memory or scrapbook about a wedding").) Thus, by posting sketches of gowns, Ms. Gutman has not only violated paragraph 3(b)'s directive that she refrain from "engaging in . . . the . . . marketing" of "goods designed, manufactured, marketed, licensed or sold by JLM," but also paragraph 3(b)'s prohibition on "engaging in . . . the design" of competitive goods.  (PI Order ¶ 3(b).)

Ms. Gutman's argument that she has not violated paragraph 3(b) of the PI Order because "[t]here are no 'competitive goods'" that have been designed or manufactured at this point is unavailing.  (See Gutman Mem. at 11.)  First, Ms. Gutman's interpretation of the PI Order completely ignores paragraph 3(b)'s prohibition against the "marketing" of such goods, whether or not they have yet to be manufactured.  Even if Ms. Gutman has not begun the process of creating the dresses that will be a part of her forthcoming collection, she has advertised her future bridal brand in violation of paragraph 3(b) of the PI Order.  Second, Ms. Gutman has created and posted videos of sketches of gowns, and dress sketches are competitive goods manufactured and sold by JLM to brides as accessories or memorabilia of their weddings.  (See Murphy Decl. ¶ 16.)  Ms. Gutman's assertion that the creation of her drawings does not violate paragraph 3(b) because her "drawings are not for sale[,]" see Gutman Mem. at 18 (citing Gutman Decl. ¶ 13), nor are they "aimed at creating a product line," id., again takes an impermissibly narrow view of paragraph 3(b), which prohibits engaging in the "design, manufacturing, marketing **or** sale of" "goods designed, manufactured, marketed, licensed or sold by JLM[.]"  (PI Order ¶ 3(b) (emphasis added).)

Ms. Gutman's argument that she should not be found in contempt because she has only made preparations for her future brand, and has not taken sufficient steps to engage in

competition with JLM, is also unpersuasive.  Although Ms. Gutman is correct, <u>see</u> Gutman Mem. at 11, that "[u]nder applicable New York law, a former employee may prepare to compete during the term of a non-competition provision," <u>In re Document Techs. Litig.</u>, 275 F. Supp. 3d 454, 464 (S.D.N.Y. 2017), acts "cease to be preparatory where they detrimentally impact the former employer's economic interests during the term of a non-competition clause." <u>Id.</u> at 465. Ms. Gutman has publicly announced and promoted her future bridal brand on her ATG Account, a powerful advertising medium on which she has accumulated approximately 197,000 followers, <u>see</u> JLM Mem. at 7, n.7, and also through her interview with <u>Business Insider</u> in connection with an article reporting on her plans to reenter the bridal industry.  Potential JLM customers have responded to Ms. Gutman's ATG Account activity expressing their enthusiasm about her future brand and their plans to buy their bridal wear from Ms. Gutman once the brand is launched. (Matz Decl., Exs. B, I.)  Such activities go far past mere preparatory actions, to the detriment of JLM's economic interests.

Nor do the limitations imposed on Ms. Gutman through paragraph 3(b) of the PI Order violate her First Amendment rights.  (<u>See</u> Gutman Mem. at 18, 20.)  As an initial matter, Ms. Gutman has already argued that the Court should reconsider the PI Order because it constitutes an improper restraint on her speech in violation of the First Amendment.  (<u>See</u> docket entry no. 138 at 7-8, n.4.)  The Court has rejected that contention.  (<u>See</u> docket entry no. 176 at 14.)  Ms. Gutman cannot transform her response to JLM's motion for contempt into an additional opportunity to move for reconsideration of the PI Order.  And even if such argument were permissible at this stage, the Court has already found that the "relevant provisions of the negotiated Contract" constitute "clear and compelling evidence" that "Ms. Gutman voluntarily, knowingly, and intelligently, in exchange for consideration" waived her rights.  (Docket entry

no. 109 at 45 (finding Ms. Gutman "waived her right to use the Designer's Name for commercial purposes without JLM's permission").)  That same analysis applies to paragraph 9(a) of the Contract, the obligations imposed by which are mirrored in paragraph 3(b) of the PI Order, in which Ms. Gutman voluntarily, knowingly, and intelligently, in exchange for consideration, waived her rights to, inter alia, market her own bridal goods when she agreed not to complete with JLM through the term of the Contract.  (See id. (collecting cases establishing criteria for waiver of constitutional right).)

Finally, JLM has carried its burden of demonstrating that Ms. Gutman "has not diligently attempted to comply" with paragraph 3(b) of the PI Order "in a reasonable manner." Mister Softee, Inc., 2014 WL 2971106, at *3.  The Court has twice articulated the meaning and scope of paragraph 3(b) of the PI Order, see docket entry nos. 109 and 176, and has explicitly rejected Ms. Gutman's arguments that the relief set forth in paragraph 3(b) is overbroad.  (See docket entry no. 176 at 11-12.)  However, despite being sufficiently on notice of the scope of prohibited conduct set forth in paragraph 3(b), Ms. Gutman has engaged in repeated activities that violate the terms of that provision.  In so doing, Ms. Gutman has misrepresented the Court's June 2, 2021, clarification of the terminal date for the relief set forth in paragraph 3(b) as an endorsement of and license for her supposed reentry into the bridal industry in August of 2022. (See supra n. 4; Matz Decl., Exs. A, A-1.)  Ms. Gutman leveraged such misrepresentation to advertise her forthcoming bridal collection, in direct contravention of her obligation not to compete with JLM during the term of the contract.  In addition, after receiving notice that JLM considered her June 7, 2021, video on her ATG Account to constitute a violation of the PI Order, see Matz Decl., Ex. F (June 18, 2021, meet & confer letter from JLM to Ms. Gutman), Ms. Gutman posted more videos on her ATG Account, including the June 25, 2021, video reiterating

her desire to reenter bridal in August of 2022, and the July 1, 2021, and July 15, 2021, videos showing her sketching designs of gowns.[6] Such conduct does not, in any way, constitute a diligent attempt to comply with the Court's order. To the contrary, the Court finds that the evidence demonstrates that Ms. Gutman's violation of the PI Order was willful. See e.g., Chase Bank USA., N.A. v. M. Harbey Rephen & Assocs., No. 1:19-MC-275-GHW, 2020 WL 1911185, at *3 (S.D.N.Y. Apr. 20, 2020) ("A contemnor's conduct is willful if [s]he 'had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply.'" (quoting New York State Nat'l Org. for Women v. Terry, 952 F. Supp. 1033, 1044 (S.D.N.Y. 1997), aff'd, 159 F.3d 86 (2d Cir. 1998))); Mingoia v. Crescent Wall Sys., No. 03-CV-7143-THK, 2005 WL 991773, at *5 (S.D.N.Y. Apr. 26, 2005) (finding evidence that defendants willfully violated the court's judgment where plaintiffs demonstrated that defendants did not make "a good faith effort to comply" with the judgment, "offered no reasonable excuse for their noncompliance[,]" and gave "no assurances that they will comply with the [j]udgment in the future").

Thus, for the foregoing reasons, the Court finds that JLM has proven by clear and convincing evidence, on the undisputed facts of record, that Ms. Gutman is in civil contempt of the Court's PI Order and that her contempt of the order was willful.[7]

---

[6] Ms. Gutman's removal of the June 21, 2021 video, both from her ATG Account (posted on June 21, 2021) and from her @agirlyoumightknowgrant account (posted on May 7, 2021), does not demonstrate that she has made reasonable attempts to comply with the Court's PI Order. (See Gutman Mem. at 19, 25.) To the contrary, as explained supra, those videos showcased conduct that violated the PI Order, and Ms. Gutman's after-the-fact decision to remove those videos does not nullify the deliberate violation of paragraph 3(b) of the PI order or address the harm already caused by that violation.

[7] In light of the clear and convincing evidence that Ms. Gutman has violated paragraph 3(b) of the PI Order, the Court need not address the parties' arguments as to whether Ms. Gutman's conduct also violates paragraphs 3(a), 3(c), and 4 of the PI Order.

Appropriate Remedy

Having found Ms. Gutman in civil contempt, the Court "must determine an appropriate remedy." Mister Softee, Inc., 2014 WL 2971106, at *4. "The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." Paramedics, 369 F.3d at 657. Although "[f]ederal courts have broad discretion to fashion remedies necessary to ensure compliance with their orders," Flaherty, 2009 WL 3762305, at *4, "[s]uch sanctions may not be imposed as a purely punitive measure." Paramedics, 369 F.3d at 657 (citing Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd., 885 F.2d 1, 5 (2d Cir. 1989)).

JLM requests that the Court impose both nonmonetary and monetary sanctions. In regard to the equitable relief sought, JLM first requests that the Court order Ms. Gutman to remove the posts from her ATG Account and her @agirlyoumightknowgrant account that JLM alleges violate the Court's PI Order. Having found that Ms. Gutman's May 7, 2021, video from her @agirlyoumightknowgrant account and her posts from June 7, 2021, June 21, 2021, June 25, 2021, and July 15, 2021,[8] contain content that violates paragraph 3(b) of the PI Order, the Court finds this relief appropriate and hereby directs Ms. Gutman to remove such content within five days of the date this order is issued. Second, JLM requests that Ms. Gutman "be enjoined from announcing her new competitive brand in its entirety[,]" or, alternatively, if the Court permits her

---

[8] To the extent certain posts, including the May 7, 2021, and June 21, 2021, videos have already been removed from Ms. Gutman's Instagram accounts, the Court orders that Ms. Gutman refrain from reposting such content while the PI Order remains in effect. Similarly, to the extent certain content the Court found violated paragraph 3(b) of the PI Order has disappeared from Ms. Gutman's ATG Account because it was posted as an Instagram story, and hence only appeared for 24 hours, the Court orders that Ms. Gutman refrain from reposting such content while the PI Order remains in effect.

to announce her new brand name, JLM requests that the Court order Ms. Gutman "to make the simultaneous statement that [her new brand] will not contain bridal products." (JLM Mem. at 25.) The Court finds this request to be overbroad in scope and instead hereby enjoins Ms. Gutman from announcing a new brand name in the context of a present or future commercial venture involving any category of goods listed in paragraph 3(b) of the PI Order while such order remains in effect.

JLM also requests that the Court impose coercive monetary sanctions in order to incentivize Ms. Gutman's compliance with the PI Order. When instituting a coercive sanction, the Court has "broad discretion to design a remedy that will bring about compliance." Paramedics, 369 F.3d at 657 (quoting Perfect Fit Indus. v. Acme Quilting Co., 673 F.2d 53, 57 (2d Cir. 1982)). The Court is "counseled to consider several factors . . . including the character and magnitude of the harm threatened by continued contumacy, the probable effectiveness of any suggested sanction in bringing about compliance, and the contemnor's ability to pay." (Id. (internal modifications and quotation omitted).)

JLM requests that the Court require Ms. Gutman to pay a fine for each day that she is not compliant with the PI Order. Having considered the relevant factors, the Court finds that a coercive sanction is appropriate in this matter. Paragraph 3(b) of the PI Order was "imposed to prevent imminent and irreparably harmful violations of paragraph 9(a) of the Contract" which prohibits Ms. Gutman from competing with JLM during the term of the Contract. (Docket entry no. 176 at 12.) Ms. Gutman has already caused harm to JLM through the announcement and marketing of her future bridal brand and the design of dress sketches that assist in marketing her future collection. As evidenced in the comments to Ms. Gutman's ATG Account posts, followers are excited about her new bridal brand and have expressed their desire

to purchase from her future collection. (See Matz Decl., Exs. B, I.) The Court finds, based on the resources Ms. Gutman has obtained through her employment at JLM and through her other commercial ventures, including her promotion of third-party products, that she has sufficient means to pay a coercive sanction. (See, e.g., JLM Mem. at 21.) Thus, the Court hereby orders that, should Ms. Gutman fail to remove the violative Instagram content within five days of the date of this order, repost the same or any similar content, or announce a new brand name in connection with a present or future commercial venture involving any category of goods listed in paragraph 3(b) of the PI Order, while the PI Order remains in effect, she must pay $5,000 to the Clerk of Court for each day on which she is not in compliance.

JLM also seeks compensation for the costs and fees associated with litigating this contempt motion. The Court has found that Ms. Gutman's violation of the PI Order was willful, and such a finding of willfulness "strongly supports granting attorney's fees and costs to the party prosecuting the contempt." Terry, 159 F.3d at 96. Thus, the Court finds an award of reasonable attorneys' fees and costs appropriate here and orders JLM to file a motion, along with supporting materials including contemporaneous time records, for the fees and costs incurred with connection with the prosecution of this motion, within 14 days of the date of this order.

The Court's finding of contempt and order granting equitable relief, coercive sanctions, and an award of JLM's attorneys' fees and costs incurred with the prosecution of this motion are sufficient to address Ms. Gutman's violations of the PI Order and the dual coercive and compensatory purposes of civil contempt. To the extent JLM seeks the imposition of additional sanctions, those requests are denied. Specifically, the Court finds JLM's request for monetary compensation "based on actual harm to JLM's business and reputation," in which JLM has proffered that it has "lost at least $66,000 in sales" based on the average price of a JLM

Hayley Paige bridal dress multiplied by the 15 comments on Instagram "showing refusal to buy from JLM/waiting for August 2022", see JLM Mem. at 22-23, to be too speculative in nature. See e.g., Paramedics, 369 F.3d at 658 (explaining that a district court has "less discretion" in awarding compensatory relief, which should be "correlated with the loss incurred"). Except to the extent set forth above, the Court also denies JLM's request for an additional sanction "for each subsequent violation," see JLM Mem. at 24, on the basis that the granting of such relief would be premature at this stage. JLM may seek additional relief should Ms. Gutman engage in or threaten subsequent noncompliant conduct.

Ms. Gutman's Cross-Motion for Attorney's Fees and Costs

Because the Court has found Ms. Gutman in civil contempt of the Preliminary Injunction Order, the Court hereby denies, in its entirety, Ms. Gutman's cross-motion for attorney's fees and costs in connection with the instant motion practice.[9]

CONCLUSION

For the foregoing reasons, the Court grants, in part, and denies, in part, JLM's motion to hold Ms. Gutman in civil contempt of the Court's Preliminary Injunction Order and

---

[9] Ms. Gutman claims that she is entitled to recover attorney's fees, costs, and damages pursuant to the New York Anti-SLAPP statute. (N.Y. Civil Rights Law, §§ 70-a, 76-a) (Westlaw Pub. L. through 2021).) The Court need not engage in an analysis of whether the New York Anti-SLAPP statute applies in this case because costs and attorney's fees are only recoverable under such statute if the other party's action was "commenced or continued without a substantial basis in fact or law" and other damages may "only be recovered upon an additional demonstration" that the action was "commenced or continued for the purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights." (N.Y. Civil Rights Law, § 70-a(1)(a-c).) Because the Court has found JLM's motion to be meritorious and declared Ms. Gutman to be in civil contempt of the Court's PI Order, none of the above bases for recovery of fees, costs, or damages applies.

denies, in its entirety, Ms. Gutman's cross-motion for attorney's fees and costs. Ms. Gutman is directed to remove the May 7, 2021, video from her @agirlyoumightknowgrant account and her posts from June 7, 2021, June 21, 2021, June 25, 2021, and July 15, 2021, on her ATG Account **within five days of the date of this order**. Ms. Gutman is also enjoined, effective immediately, from announcing a new brand name in the context of any present or future commercial venture involving any category of goods listed in paragraph 3(b) of the Preliminary Injunction Order while such order remains in effect. Ms. Gutman must pay $5,000 to the Clerk of Court for each day that she is not in compliance with either of the above directives (including any day(s) on which she reposts, or causes to be reposted, the removed or similar content, or new content violative of either of the foregoing directives). JLM will be awarded its reasonable attorneys' fees and costs incurred in connection with prosecuting this motion and is directed to file a motion, along with contemporaneous supporting billing materials, for such fees and costs within 14 days of the date of this order. Ms. Gutman is directed to file any response to such fee motion within 14 days after JLM's motion is filed. JLM shall then have seven days to file its reply.

This Memorandum Opinion and Order resolves docket entry nos. 195 and 212. This case remains referred to Magistrate Judge Cave for general pretrial management.

SO ORDERED.

Dated: New York, New York
September 8, 2021

   /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge