UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

JLM COUTURE, INC.,

        Plaintiff,

  -v-                              No.  20 CV 10575-LTS-SLC

HAYLEY PAIGE GUTMAN,

        Defendant.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER MODIFYING PRELIMINARY INJUNCTION

On January 25, 2022, the Court of Appeals for the Second Circuit issued a decision vacating certain provisions of the preliminary injunction order, first issued by this Court on March 4, 2021, and modified on June 2, 2021.  (See docket entry nos. 109 and 176 (hereafter together referred to as "Preliminary Injunction Order").)  Having reflected upon the Second Circuit's decision, the Court hereby modifies prospectively the provisions of the Preliminary Injunction Order that were vacated by the Second Circuit.  The modified provisions for preliminary injunctive relief set forth herein will only take effect upon the Second Circuit's issuance of its mandate effectuating its January 25, 2022, decision.

## BACKGROUND

On March 4, 2021, the Court granted Plaintiff's motion for a preliminary injunction, in part, and entered an order enjoining "Ms. Gutman, along with her officers, agents, servants, employees, and attorneys and all other persons who are in active concert or participation with her and them" from taking several actions.  (Docket entry no. 109 at 52-54.)  On June 2, 2021, the Court modified two provisions of the preliminary injunction for the purpose of clarity and otherwise denied Ms. Gutman's motion for dissolution and

reconsideration of the preliminary injunction.  (Docket entry no. 176.)  The parties' familiarity with those decisions is assumed.

Ms. Gutman appealed the Preliminary Injunction Order imposed by this Court, challenging the provisions "(1) ordering her not to compete with JLM, (2) barring her from using the name 'Hayley Paige Gutman' and its derivatives in trade or commerce, and (3) awarding control over the Disputed Accounts to JLM." [1]  JLM Couture, Inc. v. Gutman, No. 21-870, 2022 WL 211017, at *1 (2d Cir. Jan. 25, 2022).  She also challenged this Court's determination that "(4) JLM did not itself breach the Contract and thereby forfeit its right to seek injunctive relief."  Id.

The United States Court of Appeals for the Second Circuit issued its decision on January 25, 2022, finding Ms. Gutman's first, second, and fourth challenges to the Preliminary Injunction Order to be "foreclosed by the plain language of the Contract"[2] between the parties. JLM, 2022 WL 211017, at *1.  The appellate panel upheld this Court's findings that JLM showed a likelihood of success on its claims for breach of contract under section 9(a) of the Contract (the "Noncompete Agreement") because Ms. Gutman "impermissibly competed with JLM and may have continued doing so absent an injunction[,] id. at *7, and under section 10(b) of the Contract (the "Name-Rights Agreement"), which the Second Circuit found "applies to any use" of "Hayley Paige Gutman" and its derivatives (collectively the "Designer's Name") in

---

[1]   The "Disputed Accounts" are the Instagram, TikTok, and Pinterest accounts with the handle "misshayleypaige".  See JLM Couture, Inc. v. Gutman, No. 21-870, 2022 WL 211017, at *1 (2d Cir. Jan. 25, 2022).

[2]   The "Contract," as the term is used herein, comprises the 2011 employment agreement between Ms. Gutman and JLM (docket entry no. 14, Ex. 2) as amended by the 2014 amended extending that agreement through August 1, 2019 (id., Ex. 62), and the February 12, 2019, notice letter exercising Plaintiff's option to further extend Defendant's employment term by three years through August 1, 2022.  (Id., Ex. 66.)

trade or commerce[,]" because Ms. Gutman engaged in the unauthorized use or control of a social media account with a handle incorporating the Designer's Name to promote herself as a celebrity influencer and/or endorse third-party products and services.  Id. at *8; (see also docket entry no. 109 at 22-24).  However, the Second Circuit determined that this Court erred in imposing the provisions of the Preliminary Injunction Order that transferred control of the Disputed Accounts to JLM, vacated those provisions of the Preliminary Injunction Order, and remanded the matter to this Court for further analysis and clarification.  JLM, 2022 WL 211017, at *11.

Specifically, the Second Circuit vacated the provisions of the Preliminary Injunction Order enjoining Ms. Gutman, along with her officers, agents, servants, employees, and attorneys and all other persons who are in active concert or participation with her and them, from taking any of the following actions:

1. Making any changes to any of the social media accounts listed in **Addendum 1 hereto** (the "JLM HP Social Media Accounts"), including but not limited to changing the name of the handles on the accounts, posting any new content thereto and/or deleting or altering any content located therein, tagging any other posts, users or accounts, transferring any such accounts or the right to use any such account from Defendant to any other person except to JLM, or communicating with third parties through same for commercial purposes, without the express written permission of Plaintiff's chief executive officer, Joseph L. Murphy;

2. Utilizing, or taking any action to gain exclusive control over, any of the JLM HP Social Media Accounts, without the express written permission of Plaintiff's chief executive officer, Joseph L. Murphy[.]

See JLM, 2022 WL 211017, at *4-5, 11 (vacating provisions ordered in docket entry no. 109 at 52).  The Second Circuit also vacated the following paragraph of the Preliminary Injunction Order:

To the extent not previously delivered, within 24 hours of the entry of this Memorandum Opinion and Order Defendant shall deliver to Plaintiff's attorneys the current login credentials, including the current username and password for the

>Account (as defined above), the Pinterest and the TikTok accounts with the handle
>"misshayleypaige," and take any action necessary to enable JLM to regain access
>and control of the JLM HP Social Media Accounts, including linking the accounts to
>one of JLM's email addresses and/or phone numbers and/or other social media
>accounts as requested.

Id. (vacating paragraph ordered in docket entry no. 109 at 54.)

JLM had predicated its request for the preliminary injunctive relief granted as to the Disputed Accounts on its claims for conversion and trespass to chattels. This Court refrained from evaluating those claims, or settling the issue of ownership of the Disputed Accounts, and instead granted all of the injunctive relief, including the relief transferring control of the Disputed Accounts on the basis of its findings on three of JLM's contract-related claims. (Docket entry no. 109 at 32, 43.) The three bases for relief were: (1) Ms. Gutman's breach of her duty under section 2 of the Contract to assist with company advertising by refusing to post JLM's content on the Instagram account with the "@misshayleypaige" handle (id. at 24-27); (2) Ms. Gutman's breach of the Name-Rights Agreement by using the Instagram account with the "@misshayleypaige" handle in non-JLM-related trade or commerce (id. at 22-24); and (3) the finding that much of the content on the Instagram account with the "@misshayleypaige" handle constitutes JLM's intellectual property under section 11 of the Contract, which grants JLM ownership over Ms. Gutman's creations while employed at the company. (Id. at 27-31); see also JLM, 2022 WL 211017, at *9 (summarizing district court findings made in support of preliminary injunctive relief as to the Disputed Accounts).

The Second Circuit determined that the above contractual breaches identified by this Court did not alone support the relief granted as to the Disputed Accounts. JLM, 2022 WL 211017, at *9. Paragraph 3(a) of the Preliminary Injunction Order "already prohibit[s]" Ms. Gutman from using the Designer's Name, including the "@misshayleypaige" Account name, in

trade or commerce without JLM's permission, and paragraph 3(c) of the preliminary injunction already enjoins her from using any of the Designs, or JLM's trademarks, in trade or commerce for any purpose.  Id.  Thus, the panel majority reasoned that the relief ordered as to the Disputed Accounts was unnecessary to prevent Ms. Gutman from breaching the Name-Rights Agreement and section 11 of the Contract.  Id.  With respect to section 2 of the Contract, the appellate panel noted that, even if an injunction could be implemented "to address [Ms.] Gutman's alleged failure to 'assist[] with advertising programs' during the pledged [t]erm" of the Contract, the provisions of the Preliminary Injunction Order transferring control of the Disputed Accounts would be "overbroad."  Id.  First, "unlike other parts of the" preliminary injunction, the provisions related to use and control of the Disputed Accounts do not "expire on August 1, 2022."  Id.  Second, the preliminary injunction "does not limit the purposes for which JLM can use the Disputed Accounts to only those under [Ms.] Gutman's contractual duties," meaning "JLM could just as easily use the Disputed Accounts to enter into its own agreements promoting third-party products or even to comment on this litigation."  Id.  Third, the preliminary injunction "denies [Ms.] Gutman the right to post even personal content on the accounts without JLM's permission, and it nowhere limits JLM's discretion in withholding that permission."  Id.

Nor did the panel find the Contract's provision in which Ms. Gutman consented to injunctive relief sufficient to support the Preliminary Injunction Order's transfer of exclusive control of the Disputed Accounts to JLM.  Section 9(e) of the Contract provides that Ms. Gutman "consents to the granting of a temporary or permanent injunction against her . . . prohibiting her from violating any provision of [the] Agreement."  (Docket entry no. 109 at 4-5 (quoting Contract § 9(e).)  The Second Circuit determined, however, that the relief granted as to the Disputed Accounts "sound[ed] in property, not in contract" due to the grant of "perpetual,

unrestricted, and exclusive control" of the accounts to JLM throughout the litigation.  JLM, 2022 WL 211017, at *10.  Moreover, the Second Circuit stated that it would be improper to maintain a preliminary injunction that "entrench[es] any pre-breach benefits JLM may have enjoyed from [Ms.] Gutman as a matter of grace" because Section 9(e) of the Contract "endorse[s] only a [preliminary injunction] that aim[s] to protect JLM's *rights*," under the Contract.  Id. at *10 n.15.  Thus, the panel instructed that any revised relief as to the Disputed Accounts must be tailored to the contractual right, if any, "underl[ying] JLM's access to the [accounts] prior to this dispute."  Id.

Furthermore, the Second Circuit determined that this Court had exceeded its discretion in issuing preliminary injunctive relief "transferring control over all three Disputed Accounts based on reasons specific to only one of them[,]" namely the Instagram account, "while expressing no opinion on who actually owns any of the accounts."  JLM, 2022 WL 211017, at *10.

In vacating the provisions of the preliminary injunction relating to the Disputed Accounts, the Second Circuit remanded proceedings and noted some options available to the Court on remand.  One option available to the Court, on remand, is to "answer directly the question of JLM's likelihood of success on the merits of its conversion and trespass claims," and settle the issue of ownership over the Disputed Accounts.  JLM, 2022 WL 211017, at *11.  Alternatively, the Court may choose to "deny[] any property-based injunction and thereby avoid the merits question, leaving [Ms.] Gutman in control of the Disputed Accounts" subject to the remainder of the conditions of the preliminary injunction, or the Court may choose to "modify the vacated portion of the injunction to provide JLM with relief for JLM's breach-of-contract

claims that stems from [Ms.] Gutman's obligations under the Contract."  (Id.)

For the reasons set forth below, the Court hereby reinstates, with modifications, the vacated paragraphs of the Preliminary Injunction Order, effective immediately following the issuance of a mandate by the United States Court of Appeals for the Second Circuit with respect to its January 25, 2022, decision in this case.

DISCUSSION

A party seeking a preliminary injunction must demonstrate: (1) "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation"; (2) "that he is likely to suffer irreparable injury in the absence of an injunction"; (3) "the balance of hardships tips in the plaintiff's favor;" and that (4) the "public interest would not be disserved" by the issuance of a preliminary injunction. Salinger v. Colting, 607 F.3d 68, 79-80 (2d Cir. 2010) (internal quotation omitted).  A different, more demanding standard applies where a proposed preliminary injunction would impose affirmative obligations upon a defendant.  Such a mandatory injunction is warranted only upon a "clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."  Tom Doherty Assocs, Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 34 (2d Cir. 1995) (quotation omitted).

The Court finds that JLM made sufficient evidentiary proffers in connection with the preliminary injunction motion practice to warrant preliminary injunctive relief in response to Ms. Gutman's alleged breach of her obligations under section 2 of the Contract and violation of JLM's rights under the Name-Rights Agreement embodied in section 10(b) of the Contract.  In modified form, the injunctive relief will ensure that JLM retains the ability to access social media accounts that serve as critical advertising platforms for the HP brands and to use such

accounts in furtherance of its promotion of the HP brands in a manner consistent with the Contract.  However, the Court finds, upon reconsideration of the parties' proffers made in connection with the preliminary injunction motion practice, that JLM has produced insufficient evidence that the "misshayleypaige" TikTok account served as an advertising platform for the HP brands and limits the relief set forth herein accordingly.

Pursuant to Section 2 of the Contract, Ms. Gutman is obligated to perform "duties and services commensurate with her position as a designer for the Company, as may be assigned to her by an officer of the Company, including, but not limited to . . . assisting with advertising programs" through the term of the Contract.  (Docket entry no. 109 at 4 (quoting Contract § 2).)  The Court previously found that JLM proffered credible testimony and evidence that "promoting the HP brands" on the Instagram account "was commensurate with Ms. Gutman's position as lead designer and was a duty assigned to her by Plaintiff's authorized personnel."  (Id. at 26.)  JLM produced credible evidence that Ms. Gutman was "given discretion to post to the Account and respond to direct messages in real time to maintain customer engagement."  (Id. (citing docket entry no. 14, Declaration of Joseph Murphy ("Murphy Decl.") ¶¶ 37, 38 and docket entry no. 106, Preliminary Injunction Hearing Transcript ("P.I. Tr.") 153:3-5).)  Ms. Gutman also "received draft captions and other content for the Account from Plaintiff's employees," (id. (citing docket entry no. 15, Declaration of Brittany Noe ("Noe Decl.") ¶ 5)), and would occasionally receive specific directions from Mr. Murphy about whether and when to post to the Account.  (Docket entry no. 60, Ex. 93; Docket entry no. 98, Exs. P-193, P-194.)

JLM submitted that the Instagram Account is "the most important social media account in JLM's portfolio" related to the HP brands (Murphy Decl. ¶¶ 10, 30), and also

proffered credible testimony and evidence that JLM promoted the HP brands across various social media platforms as an important part of its advertising efforts. As the Court has previously noted, the "advertising reference in the Contract is not specific to any type of advertising platform," and the evidence proffered by JLM credibly demonstrated "that JLM's advertising programs include social media." (Docket entry no. 109 at 24; see also Murphy Decl. ¶¶ 24, 35 (describing social media as "an integral part of [JLM's] advertising strategy, in which it creates name recognition for each of its brands, including the HP brands," and the "creative content" therein as "essential").) JLM used "various social media accounts" to promote the Hayley Paige brands, including "accounts on Instagram, Facebook, . . . Pinterest, [and] YouTube." (Murphy Decl. ¶ 20.) These efforts involved featuring "bridal and wedding related" content meant to "promote the HP [b]rands." (Id. ¶ 21 (describing Instagram account posts related to "JLM's HP Branded designs, the bridal industry and trunk shows and bridal markets" and the Pinterest account content as "bridal and wedding related to promote the HP Brands"); see also id. ¶ 31 (describing that JLM "has made sure" that the content across the accounts affiliated with the HP brands "contain beautifully photographed images relating to the bridal industry and the designers of its brands, such as [Ms.] Gutman").) In addition, JLM directed brides and retailers to the various social media accounts advertising the Hayley Paige brands by embedding links to the social media accounts on various JLM websites, id. ¶ 24, and by including a list of social media accounts, including the Facebook, Pinterest, and YouTube accounts affiliated with the HP brands, on flyers directing "brides and retailers" at "showrooms and trunk shows" to its website to learn about upcoming pop-up sales. (Id. ¶ 30 and Ex. 39.)

Moreover, credible evidence and testimony demonstrate that Ms. Gutman was responsible for assisting with JLM's advertising efforts for the HP brands on various social

media platforms.  For example, Ms. Gutman "live streamed HP Brand related bridal content on Facebook Live, which was also advertised on the Main [Instagram] Account."  (Murphy Decl. ¶ 27.)  JLM shared videos "featuring [Ms.] Gutman" and showing her "describing how wedding dresses are made, what happens at runway shows, [and] preparing for runway shows" on a "YouTube channel called Miss Hayley Paige."  (Id. ¶ 26.)  Ms. Gutman also emailed with JLM employees about the "social media overview" for the HP brands, including activity on the brand-affiliated Instagram and Pinterest accounts.  (Id., Exs. 48-49 (discussing content of Instagram stories with JLM employees and noting "we have been keeping up on Pinterest pins").)  At the preliminary injunction hearing, Ms. Gutman confirmed her involvement with promotion on social media platforms.  (See P.I. Tr. 168:5-15 (When asked if she would "regularly post on Facebook[,]" Ms. Gutman replied: "Sometimes, and I would also post to the Blush by Hayley Paige account even though I was not required to.  I had access to a lot of these accounts.").)

On appeal, Ms. Gutman specifically challenged the provision of the Preliminary Injunction Order in which she was directed to provide JLM with the login credentials for the Instagram, Pinterest, and TikTok accounts with the handle "misshayleypaige."  The Court finds that the Instagram and Pinterest accounts serve as important advertising platforms for the HP brands for the reasons stated above and in the Court's March 4, 2021, preliminary injunction order.  However, upon reconsideration, the Court finds that JLM has proffered insufficient evidence that the TikTok account served as an advertising platform for the HP brands.  JLM submitted that Ms. Gutman created a TikTok account using the "misshayleypaige" handle in November 2019 and "posted videos that did not represent the HP [b]rands, in particular the Hayley Paige Brand."  (Murphy Decl. ¶ 61.)  JLM further proffered that, when JLM's Chief

Executive Officer, Joseph Murphy, "advised [Ms.] Gutman that she should post JLM approved content on the TikTok account only, rather than posting personal images that were off brand, [Ms.] Gutman responded . . . by changing the password to the Main [Instagram] Account."  (Id.) Thus, JLM's evidentiary proffers do not persuasively establish that the TikTok account was used in connection with promotion of the HP brands, or even that JLM had the ability to access the account before the entry of the Court's March 4, 2021, preliminary injunction order. Instead, JLM's claim to the TikTok account seems to be centered on to JLM's trademark rights to the Designer's Name pursuant to Section 10(b) of the Contract.  (Id.)  As the Second Circuit noted, paragraph 3(a) of the preliminary injunction already prohibits Ms. Gutman from violating that contractual provision.  The evidence of record demonstrates that JLM has asserted its trademark and contractual rights in the Designer's Name, and did not authorize use of the brand-affiliated social media accounts ("HP Brand Accounts") whose handles reflected the Designer's Name in ways that JLM considered incompatible with the promotion of JLM's HP brands.

Therefore, at this procedural juncture, the Court reaffirms its finding that Plaintiff has demonstrated a "clear and substantial likelihood of success in establishing that Defendant breached her duty to assist with advertising programs" under Section 2 of the Contract.  Ms. Gutman repudiated "her obligation to post Plaintiff's content on the [Instagram] Account,"  and used "the [Instagram] Account to promote third party goods and build a commercial platform that she intended to use for herself as an influencer."  (Docket entry no. 109 at 26-27.)  Ms. Gutman changed the access credentials for the Instagram account in November 2019 and did not share the new credentials with Plaintiff, effectively locking JLM out of the Account.  (Docket entry no. 109 at 12 (citing Murphy Decl. ¶¶ 42, 64).)  JLM also

proffered that Ms. Gutman changed the password to the Pinterest account, blocking JLM's access to that social media platform.  (Murphy Decl. ¶ 21.)  In November 2020, Ms. Gutman informed JLM that she would "not be posting any JLM related business" to the Instagram account.  (Id. (citing Murphy Decl., Ex. 75).)  Ms. Gutman also utilized the Instagram account to promote third-party products without JLM's permission.  (Docket entry no. 109 at 10-12.)  However, the Court finds that Plaintiff has failed to demonstrate that the TikTok account at issue was used as an advertising platform in connection with the HP brands, and the Court will direct that JLM deliver the account credentials to Ms. Gutman.  Her subsequent use of the account will, however, be limited by her obligations and JLM's rights under the Contract and the Preliminary Injunction Order as issued, and modified, by this Court.

That established, the Court finds that JLM has also demonstrated that it would "suffer irreparable harm absent injunctive relief" should it not be able to access HP Brand Accounts due to the "loss of control of its reputation and goodwill[,]" as well as the loss of access to actual and potential customers that may result.  (Docket entry no. 109 at 47-48.)  Plaintiff proffered credible evidence that part of its advertising approach is to "collaboratively . . . manage and maintain" social media accounts "to further JLM's HP [b]rand[s]," (Murphy Decl. ¶ 36), and "[t]o be successful, JLM . . . had to be able to adapt its advertising campaigns rapidly in order to respond to the demands of consumers, new fashion, and noteworthy events, such as trunk shows and bridal markets to stay current and maintain the interest of the followers" on the HP Brand Accounts.  (Id. ¶ 34.)  Critical to these brand management efforts, JLM proffered, is "the ability to immediately and seamlessly modify the content" of the social media accounts "and its websites."  (Id. (explaining ability to modify content can "mean the difference between the success and failure of a brand"); see also id. ¶ 35 (describing "creative content" on the HP

Brand Accounts, in particular the Instagram account, as "essential for the building of the HP [b]rands").)  These activities also include providing social media account users with information in response to their inquiries about where they could find brand merchandise.  (Docket entry no. 60, Ex. 102.)  Thus, Plaintiff has demonstrated that the ability to access HP Brand Accounts is critical to its promotional efforts and the overall success of the HP brands.  Plaintiff has also established that it permitted and expected Defendant to utilize HP Brand Accounts whose handles reflected the Designer's Name, to which JLM holds trademarks pursuant to the Names-Rights Agreement, in aid of her duties as an employee to assist with advertising.  Were Defendant not in breach of her obligations under the Contract, Plaintiff would have continued to have access to the Instagram and Pinterest accounts for promotional purposes, and, as its actions prior to the issuance of the preliminary injunction demonstrate, would have exercised control over Ms. Gutman's activities on the accounts.   Defendant has refused to assist JLM in its advertising efforts on social media, and also changed account credentials to block JLM's ability to access a critical social media platform altogether (see Murphy Decl. ¶¶ 42, 64). The Court therefore concludes that injunctive relief preserving JLM's ability to utilize the HP Brand Accounts in accordance with its rights to advertising assistance and control over the use of the Designer's Name, and in furtherance of the Contract, is necessary to avoid irreparable harm to JLM.

The Court further finds that JLM has also met its burden of showing that it will be irreparably harmed should Ms. Gutman utilize the HP Brand Accounts in a manner inconsistent with her duties under the Contract, by, for example, promoting herself as an influencer and/or endorsing third party products and services.  Social media advertising and communications "are ubiquitous in modern American society" (docket entry no. 109 at 25), and

as of November 17, 2020, the Instagram account alone "had over 1.1 million followers." (Id. at

12 (citing Murphy Decl. ¶ 45).)  Because social media serves as a powerful advertising medium,

JLM proffered credible evidence that the content included on the social media platforms that

bear names that JLM has acquired must meet certain criteria, including that it must be

"consistent with JLM's high standards of quality and decorum" and "promote the HP [b]rands."

(Murphy Decl. ¶ 38.)  This approach encompasses "bridal and wedding related" content as well

as "personal images . . . as long as they [are] on brand and in line with the promotion of the HP

[b]rand image."  (Id. ¶¶ 21, 38; see also P.I. Tr. 41:4-11 (explaining that Mr. Murphy and Ms.

Gutman had discussed a marketing strategy by which they would "combine the personality with

the brand"); P.I. Tr. 27:11-18 (explaining that Ms. Gutman "was given latitude" to post JLM

"products or the personal glimpses behind the scenes" but "anything that would have to do with

[JLM's] competitors or personal matters that weren't consistent with the image of the brand

would have to be approved . . . before they were able to be posted").)  Ms. Gutman's previous

activity on the Account that was inconsistent with her duties under the Contract—including her

use of the Account to promote third party products—indicates a severe risk of irreparable harm

to JLM, including through likely customer confusion about the products JLM endorses and

offers to customers and the undermining of the HP brands more generally, in the absence of

injunctive relief limiting Ms. Gutman's use of the accounts to contractually-prescribed

parameters.

The Court finds that the balance of equities also tips in favor of granting Plaintiff

injunctive relief to ensure its ability to both access, and utilize, the HP Brand Accounts in

furtherance of its promotion efforts at least through the duration of Ms. Gutman's term of

employment.  Ms. Gutman has declared that she is no longer Plaintiff's employee, expressed

that she will "not be posting any JLM related business" to the Instagram account (Murphy
Decl., Ex. 75), and had previously changed the Instagram and Pinterest accounts' credentials to
deny JLM access.  (Id. ¶¶ 21, 64.)  JLM has demonstrated a likelihood of success on its claims
that these actions by Ms. Gutman breached section 2 of the Contract, and injunctive relief is
therefore necessary in order to protect JLM's contractual rights.  In addition, there is no
evidence indicating that JLM would have permitted the use of HP Brand Account handles
reflecting the Designer's Name on social media accounts that were not advertising vehicles
supporting its products, such that Plaintiff would not have been free to monetize the accounts
for her own benefit or those of other commercial ventures, had she continued to fulfill her
contractual duties.  JLM requires the ability to continually add and modify account content, as
well as engage with potential and actual customers, in order to successfully advertise and
manage the HP brands.  Injunctive relief preserving JLM's ability to access the HP Brand
Accounts is critical to its business objectives under the Contract.  Finally, injunctive relief
restricting Ms. Gutman's use of the HP Brand Accounts to uses consistent with her duties under
the Contract is necessary in order to prevent the undermining of JLM's HP brands and
confusion among actual and potential JLM customers.

       The injunction, as modified, is also equitable when considering Ms. Gutman's
interests.  First, the modified relief ensures that Ms. Gutman retains appropriate access to the
Instagram and Pinterest accounts with the "misshayleypaige" handle which she opened after
becoming Plaintiff's employee and utilized in collaboration with JLM to promote the HP
brands, (see docket entry no. 109 at 6-7 (quoting docket entry no. 44 at ¶¶ 9,11)), and permits
her to utilize the accounts in a manner commensurate with her duties under the Contract.
Second, because the revised provisions are imposed to prevent imminent and irreparably

harmful violation of section 2 of the Contract, which describes Ms. Gutman's duties during her employment with the Company, the Court has limited the effectiveness of modified paragraphs one and two of the Preliminary Injunction Order to the Contractual term.  Third, the revised provisions limit JLM's use of the Instagram and Pinterest accounts to activities related to the promotion of the HP brands, consistent with the scope of JLM's use of Ms. Gutman's services and Ms. Gutman's duties at the time she ceased to collaborate with JLM.  Return of control of the TikTok account to Ms. Gutman is equitable, based on JLM's insufficient showings that the account served as an advertising platform for the HP brands and that its access to the account is necessary for the success and management of the HP brands.   Ms. Gutman's use of the TikTok account under its current handle is, however, subject to the terms of the Contract and the provisions of the Preliminary Injunction, as is any commercial use of the Designer's Name.

Finally, the relief, as modified, serves the public interest.  The modified injunction will protect JLM's ability to manage and advertise its brands, prevent consumer confusion, and provide appropriate protection from further irreparable harm occasioned by Ms. Gutman's breaches of the contract while also protecting Ms. Gutman's ability to access the accounts she developed and, in the case of the Pinterest and Instagram accounts, utilized in collaboration with JLM, and in the case of the TikTok account, utilized for alleged non-JLM related purposes.

## CONCLUSION

For the foregoing reasons, and those set forth in the Court's previous Preliminary Injunction Order, effective immediately after Second Circuit's issuance of the mandate in respect of its January 25, 2022, decision, the vacated provisions of the Preliminary Injunction

Order are reinstated and modified to read in their entirety as follows:

During the pendency of this action, Ms. Gutman, along with her officers, agents, servants, employees, and attorneys and all other persons who are in active concert or participation with her and them, are enjoined from taking any of the following actions:

1. Until August 1, 2022 (or such earlier date as may be specified in a further order of the Court), making any changes to any of the social media accounts listed in **Addendum 1 hereto** that are inconsistent with Ms. Gutman's duties under her 2011 employment agreement with JLM, as amended by the 2014 amendment, and the February 12, 2019, notice letter extending the employment term through August 1, 2022 (the "Contract"), including but not limited to changing the name of the handles on the accounts, deleting or altering any content promoting the Hayley Paige brands located therein, transferring any such accounts or the right to use any such accounts from Defendant to any person or entity other than JLM, communicating with third parties through the same for non-JLM promotional purposes, and posting content or communicating with third parties in connection with any non-JLM commercial venture, without the express written permission of Plaintiff's chief executive officer, Joseph L. Murphy;

2. Until August 1, 2022 (or such earlier date as may be specified in a further order of the Court), taking any action, other than a properly noticed application to the Court, to gain exclusive control over, any of the accounts listed in Addendum One;

Within 48 hours of the issuance of the Second Circuit's mandate effectuating its January 25, 2022, decision in this case, the parties shall meet and confer to develop mutually-accessible login credentials, including the username and password for the Instagram Account and the Pinterest Account, both with the handle "misshayleypaige," and take any action necessary to enable Plaintiff and Defendant to have mutual access and use of these accounts, in furtherance of the Contract and subject to the provisions of the Preliminary Injunction Order, through August 1, 2022 (or such earlier date as may be specified in further order of the Court).  Both Plaintiff's and Defendant's use of the accounts shall be limited to the promotion of the HP brands in a manner consistent with the Contract.  Within 48 hours of the issuance of the Second Circuit's mandate effectuating its January 25, 2022, decision in this case, Plaintiff shall deliver the login credentials to the TikTok account with the handle "misshayleypaige" to Defendant.  Ms. Gutman's subsequent use of the TikTok account shall remain governed by the parties' Contract and the Court's Preliminary Injunction Order.

This Memorandum Opinion and Order resolves all pending applications for relief in respect of the Second Circuit's decision.  Any applications for further modifications of the Preliminary Injunction Order, and any other motion practice, shall be initiated and briefed in accordance with the applicable federal, local and individual practice rules.

This case remains referred to Magistrate Judge Cave for general pretrial management.  This Memorandum Opinion and Order resolves docket entry no. 315.

SO ORDERED.

Dated: New York, New York
      February 14, 2022

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

## Addendum 1

| Brand | Platform | Handle | Account Link |
|---|---|---|---|
| Hayley Paige | Instagram | misshayleypaige | https://www.instagram.com/misshayleypaige/ |
| Hayley Paige | Facebook | Hayley Paige / HayleyPaigeBridal | https://www.facebook.com/HayleyPaigeBridal |
| Hayley Paige | Pinterest | Hayley Paige / hayleypaigejlm | https://www.pinterest.com/hayleypaigejlm/_saved/ |
| Hayley Paige | Pinterest | misshayleypaige | https://www.pinterest.com/misshayleypaige/_saved/ |
| Hayley Paige | Youtube | Miss Hayley Paige | https://www.youtube.com/channel/UCJR_76xqVd6ihrlUm3AL-qg?view_as=subscriber |
| Hayley Paige | Twitter | hayleypaige_jlm | https://twitter.com/HayleyPaige_JLM |
| Blush by Hayley | Instagram | blushbyhayleypaige | https://www.instagram.com/blushbyhayleypaige/ |
| Blush by Hayley | Facebook | BlushbyHayleyPaige | https://www.facebook.com/BlushbyHayleyPaige |
| Blush by Hayley | Pinterest | blushbyHP | https://www.pinterest.com/blushbyHP/_created/ |
| Blush by Hayley | Twitter | BlushbyHP | https://twitter.com/BlushbyHP |
| Hayley Paige Occasions | Instagram | hayleypaigeoccasions | https://www.instagram.com/hayleypaigeoccasions/ |
| Hayley Paige Occasions | Facebook | hpoccasions | https://www.facebook.com/hpoccasions/ |
| Hayley Paige Occasions | Twitter | Jim_H_Occasions | https://twitter.com/Jim_H_Occasions |
| La Petite Hayley Paige | Instagram | lapetitehayleypaige | https://www.instagram.com/lapetitehayleypaige/ |
| La Petite Hayley Paige | Facebook | lapetitehayleypaige | https://www.facebook.com/lapetitehayleypaige |
| Holy Matrimoji App | Instagram | holymatrimoji | https://www.instagram.com/holymatrimoji/ |
| Holy Matrimoji App | Facebook | HolyMatrimoji | https://www.facebook.com/HolyMatrimoji |