UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

JLM COUTURE, INC.,

       Plaintiff,

 -v-                                          No.   20 CV 10575-LTS-SLC

HAYLEY PAIGE GUTMAN,

       Defendant.

-------------------------------------------------------x

### MEMORANDUM ORDER ON MOTION FOR ATTORNEYS' FEES AND COSTS

Before the Court is Plaintiff JLM Couture, Inc.'s motion for attorneys' fees and costs incurred in connection with prosecuting Plaintiff's motion to hold Defendant Hayley Paige Gutman ("Defendant" or "Ms. Gutman") in civil contempt of the preliminary injunction order entered in this action.  The Court granted Plaintiff's motion for civil contempt on September 8, 2021, and awarded Plaintiff JLM Couture, Inc. ("Plaintiff" or "JLM"), its reasonable attorneys' fees and costs incurred in connection with its prosecution of the contempt motion.  (Docket entry no. 234 ("Contempt Opinion" or "Contempt Op.").)  JLM filed its motion for reasonable fees and costs timely, along with contemporaneous billing records, and seeks to recover a total of $190,280.09.  Ms. Gutman opposes the motion, submitting that the Court should consider a fee award in the amount of no more than $6,915.64.  (See docket entry no. 270 ("Gutman Opp.") at 2.)

The Court has reviewed carefully all of the parties' written submissions and evidentiary proffers.  For the reasons stated below, the Court grants, in part, and denies, in part, JLM's motion for attorneys' fees and costs.

BACKGROUND

The Court assumes the parties' familiarity with the factual background and procedural history of the case. Information pertinent to the instant motion is summarized below.

On March 4, 2021, this Court granted JLM's motion for a preliminary injunction, in part, and entered an order enjoining "Ms. Gutman, along with her officers, agents, servants, employees, and attorneys and all other persons who are in active concert or participation with her and them" from taking several actions. (Docket entry no. 109 at 52-54.)

On July 15, 2021, JLM filed a motion seeking a finding that Ms. Gutman was in civil contempt of the preliminary injunction, as issued on March 4, 2021 (docket entry no. 109), and modified on June 2, 2021 (docket entry no. 176) (hereinafter "Preliminary Injunction Order" or "PI Order"). The Court granted JLM's motion, finding that JLM proffered clear and convincing evidence that Ms. Gutman failed to comply with paragraph 3(b) of the PI Order which, as of July 2021, enjoined Ms. Gutman from "[b]reaching the employment Contract,[1] dated July 13, 2011, together with the amendments and extensions thereto, by:"

> Until August 1, 2022 (or such earlier date as may be specified in a further order of the Court), directly or indirectly, engaging in, or being associated with (whether as an officer, director, shareholder, partner, employee, independent contractor, agent or otherwise), any person, organization or enterprise which engages in the design, manufacture, marketing or sale of: (i) bridal apparel, including bridesmaids', mother of the bride and flower girls' apparel and related items; (ii) bridal accessories and related items; (iii) evening wear and related items; and/or (iv) any other category of goods designed, manufactured, marketed, licensed or sold by JLM[.]

---

[1] The "Contract," as the term is used herein, comprises the 2011 employment agreement (docket entry no. 14, Ex. 2), as amended by the 2014 amendment extending that agreement through August 1, 2019 (id., Ex. 62), and the February 12, 2019, notice letter exercising JLM's option to further extend Ms. Gutman's employment term by three years through August 1, 2022. (Id., Ex. 66.)

The Court found that Ms. Gutman had violated paragraph 3(b) by engaging in the marketing of her future bridal brand – including by announcing her reentry into the bridal industry and promoting her future bridal collection – and by posting videos of herself sketching designs of dresses on her Instagram account. (Contempt Op. at 8-11.) The Court also determined that JLM's evidentiary proffers demonstrated that Ms. Gutman's violation of the PI Order was willful, as Ms. Gutman had been sufficiently on notice of the scope of the prohibited conduct set forth in paragraph 3(b), yet engaged in repeated activities that violated the terms of such provision, even after receiving notice that JLM considered her ongoing activities to be contemptuous. (Id. at 13-14.) Having found Ms. Gutman's violation of the PI Order to be willful, the Court granted JLM an award of reasonable attorneys' fees and costs incurred in the prosecution of the contempt motion. (Id. at 17.)

## DISCUSSION

JLM seeks to recover $189,455 in attorneys' fees and $825.09 in costs incurred in connection with its prosecution of Ms. Gutman's contemptuous conduct. (See docket entry no. 277 ("Matz Reply Decl.") ¶ 11.) This Court "enjoys broad discretion in determining the amount of a fee award" based on its unique "understanding of the litigation." Vincent v. Comm'r of Social Sec., 651 F.3d 299, 307 (2d Cir. 2011) (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)). To determine a reasonable award of fees and costs, the Court will consider "the lodestar approach[,]" which "establish[es] a 'presumptively reasonable fee' by [multiplying] the number of hours reasonably expended by counsel on the litigation . . . by reasonable hourly rates." LCS Grp. LLC v. Shire LLC, 383 F. Supp. 3d 274, 278 (S.D.N.Y. 2019) (citing Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d. Cir. 2011)); see also Ortiz v. City of New York, 843 F. App'x 355, 358 (2d Cir. Feb. 1, 2021). "At its core, [the lodestar] method 'boils down to

[asking] what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." Capitol Records, LLC v. ReDigi Inc., No. 1:12-CV-95-RJS, 2022 WL 3348385, at *1 (S.D.N.Y. Aug. 12, 2022) (citation omitted). The determination of fees "should not result in a second major litigation." Hensley, 461 U.S. at 437. Rather, the goal is "to do rough justice, not to achieve auditing perfection." LCS Grp., 383 F. Supp. 3d at 279; see also Lu Wan v. YWL USA Inc., No. 18-CV-10334-CS, 2021 WL 1905036, at *2 (S.D.N.Y. May 12, 2021) (explaining "the district court should exercise its equitable discretion in light of all relevant factors") (internal quotation marks and citation omitted).

Ms. Gutman raises four principal arguments in opposition to JLM's motion: (1) JLM's counsel seeks to recover for tasks that fall outside the scope of JLM's prosecution of the contempt motion; (2) JLM's billing was excessive and improper; (3) JLM's proffered hourly rates are unreasonable; and (4) Ms. Gutman cannot afford to pay JLM's desired fee award. The Court will address each argument in turn.

Scope of Recovery

JLM seeks compensation for several activities that it asserts were within the scope of JLM's prosecution of the contempt motion for which the Court awarded JLM its reasonable attorneys' fees. JLM submits that, in addition to time spent investigating Ms. Gutman's contemptuous activities and preparing its memoranda of law in support of the contempt motion, it is also entitled to recover for time spent opposing Ms. Gutman's cross-motion for attorneys' fees and costs, opposing Ms. Gutman's emergency motion before the Second Circuit to stay implementation of the Contempt Opinion, and preparing its instant fee application. Ms. Gutman

objects, arguing that efforts undertaken by JLM's counsel in support of the latter three categories of work fall outside the scope of the Court's Contempt Opinion granting a reasonable fee award.

The Court finds Ms. Gutman's arguments unpersuasive and concludes that JLM may recover reasonable attorneys' fees for all of the above-mentioned tasks for the following reasons. First, Ms. Gutman elected to not only oppose JLM's motion for civil contempt, but also to initiate a cross-motion seeking to recover her own attorneys' fees and costs arising from her opposition to the contempt motion. (Docket entry no. 214 at 20-21.) The cross-motion was directly related to JLM's contempt motion in that Ms. Gutman claimed she was entitled to reimbursement of attorneys' fees and costs because JLM's "sole purpose" in bringing the motion was "harassing, intimidating, punishing, or otherwise maliciously inhibiting the free exercise of speech" pursuant to New York's Anti-SLAPP statute. (Id. at 21.) Thus, the cross-motion related to the same underlying facts as the contempt motion but broadened the legal issues involved, requiring JLM to conduct additional legal research and craft new legal arguments as a necessary element in the prosecution of its contempt motion.[2] Therefore, the Court concludes that activities undertaken by JLM's counsel in opposing Ms. Gutman's cross-motion appropriately fall within the scope of tasks for which JLM has been granted attorneys' fees and costs.

Ms. Gutman's arguments that JLM cannot recover fees incurred in opposing Ms. Gutman's emergency motion to stay the Contempt Opinion before the Second Circuit are similarly unavailing. (Gutman Opp. at 4.) Ms. Gutman asserts that the appellate proceeding concerned a different matter altogether – a stay of paragraph 3(b) of the PI Order – but paragraph

---

[2] Moreover, the success of Ms. Gutman's cross-motion hinged on whether JLM's civil contempt motion was granted. Indeed, because JLM prevailed in demonstrating that Ms. Gutman was in contempt of the PI Order, the Court denied Ms. Gutman's cross-motion for attorneys' fees in its entirety.

3(b) was inherently relevant to her emergency motion because the Court found her in civil contempt <u>of that provision</u> of the PI Order.  Moreover, a quick review of Ms. Gutman's appellate brief seeking a stay of paragraph 3(b) of the PI Order reveals that Ms. Gutman's main concern was circumventing the relief the Court issued in connection with the Contempt Opinion, namely the removal of her videos and posts from social media and the limits placed upon the marketing of her future bridal brand.  (<u>See</u>, <u>e.g.</u>, docket entry no. 263 ("Matz Decl."), Ex. 2.)  The timing of Ms. Gutman's emergency motion, filed two days after the Court issued the Contempt Opinion, also demonstrates the interrelatedness of the issues, and Ms. Gutman's attempt to dodge the coercive relief ordered by the Court.  Ms. Gutman's second argument for why fees in connection with the appellate motion practice should be excluded – that the Court lacks jurisdiction over appellate proceedings – is entirely conclusory in nature and beside the point.  Ms. Gutman relies solely on a citation to Federal Rule of Appellate Procedure 38, which sets forth the procedure for obtaining an award of damages or costs arising from a frivolous appeal.  As JLM points out, however, district courts do award attorneys' fees in connection with a party's defense of a district court's judgment at the appellate level (<u>see</u> docket entry no. 278 ("JLM Reply") at 1-2 (citing <u>Shanfa Li v. Chinatown Take-Out Inc.</u>, No. 16-CV-7787-JCM, 2020 WL 7647178, at *2 (S.D.N.Y. Dec. 23, 2020)), and considering that the appellate motion was, in effect, an attempt to avoid the relief granted by the Contempt Opinion, and JLM was successful in opposing Ms. Gutman's motion for an emergency stay (<u>see</u> docket entry no. 112, No. 21-870 (2d Cir. Sept. 13, 2021)), this Court will permit JLM to recover attorneys' fees incurred in its efforts to oppose the appellate motion.  <u>See</u> also <u>Anderson v. Cnty. of Suffolk</u>, No. 09-CV-1913-GRB, 2016 WL 1444594, at *8 (E.D.N.Y. Apr. 11, 2016) ("Courts have held that a 'reasonable paying client would undoubtedly be willing to pay for services of skilled appellate counsel to defend' a verdict

won at trial" and "[a] district court generally decides the issue of appellate attorney's fees in the first instance . . . ."); Hines v. City of Albany, 862 F.3d 215, 223 (2d Cir. 2017) (explaining, in context of fee awards under Section 1988, prevailing party is also entitled to recover "attorneys' fees incurred as a result of appeals related to the defense of a fee award").

Finally, the Court rejects Ms. Gutman's argument that fees incurred in preparing the instant fee application should be excluded from any fee award. The Court's finding of contempt, the preparation of the fee application, and the ultimate award of fees and costs are direct results of Ms. Gutman's willful noncompliance with the PI Order. Therefore, excluding fees incurred in connection with preparation of the instant fee application would defeat the purpose of the Court's decision to award reasonable attorneys' fees as a sanction for Ms. Gutman's willful contempt. See Charlestown Cap. Advisors, LLC v. Acero Junction, Inc., No. 18-CV-4437-JGK-BCM, 2021 WL 1549916, at *8 (S.D.N.Y. Apr. 20, 2021) (awarding reasonable fees incurred in preparing fee application); LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC, No. 12-CV-7311-JPO-KNF, 2016 WL 5812105, at *7 (S.D.N.Y. Sept. 22, 2016) (finding fees incurred in connection with fee application recoverable where underlying sanctions motion had been granted).

Hours Reasonably Expended

Ms. Gutman also argues that JLM's counsel expended an unreasonable number of hours in connection with the prosecution of the contempt motion. Ms. Gutman submits that the contempt motion was "not a complicated motion, either factually or legally," and JLM's attorneys engaged in excessive, duplicative, and inefficient efforts, including by "discussing matters amongst themselves, staffing two lawyers on phone calls . . . and repeatedly revising and discussing each other's work." (Gutman Opp. at 5-7.) Ms. Gutman submits that the Court

should restrict JLM's fees to approximately 36.125 hours of work in connection with JLM's prosecution of the contempt motion.  (Id. at 9.)

In reviewing a fee petition, the Court must "exclude hours that are excessive, redundant, or otherwise unnecessary, allowing only those hours that are reasonably expended." Lu Wan, 2021 WL 1905036, at *6 (internal quotation marks and citation omitted); see also Patsy's Brand, Inc. v. I.O.B. Realty, Inc., No. 99-CV-10175-KMW, 2022 WL 1026577, at *4 (S.D.N.Y. Apr. 6, 2022) (stating that "[o]nly those hours reasonably expended by counsel are incorporated into the calculation of the lodestar value" and awarding $269,262.30 in attorneys' fees in relation to prosecution of contempt motion).  JLM bears the burden of establishing that the number of hours for which it seeks reimbursement was reasonable.  Malletier v. Artex Creative Int'l Corp., 687 F. Supp. 2d 347, 363 (S.D.N.Y. 2010).  In evaluating whether the hours spent by counsel were reasonable, the Court is to look "to its own familiarity with the case and its experience with the case[,]"  and the inquiry centers "not [on] whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co., 291 F. Supp. 3d 554, 562 (S.D.N.Y. 2018), report and recommendation adopted, No. 17-CV-2105-VSB-GWG, 2019 WL 416327 (S.D.N.Y. Feb. 1, 2019) (internal quotation marks and citations omitted).

JLM seeks to recover fees for work performed by three Adelman Matz P.C. attorneys: partner Sarah M. Matz, counsel David M. Marcus, and associate Michelle C. Malone, who billed time between June 2021 and October 2021 in connection with the prosecution of JLM's contempt motion against Ms. Gutman.  (Matz Decl. ¶¶ 4-13; Matz Reply Decl. ¶¶ 5-10.) JLM submitted declarations from the three attorneys involved describing the work undertaken in

connection with the contempt motion, along with contemporaneous time records with entries noting the date related tasks were performed, the nature of the tasks, and the duration of the work involved.  (See docket entry nos. 263-65, 277, 281-1); see also S. Katzman Produce, Inc. v. Won, No. 08-CV-2403-KAM-VVP, 2009 WL 2448408, at *6 (E.D.N.Y. Aug. 7, 2009) ("In the Second Circuit, a party seeking an attorney's fees award must document the application with contemporaneous time records . . . .") (internal quotation marks and citation omitted); Malletier, 687 F. Supp. 2d at 363 (same).

After conducting a thorough review of JLM's billing records, the Court finds some merit in Ms. Gutman's contention that the hours expended by JLM's counsel were, at times, somewhat excessive and duplicative.  The preparations for the memorandum of law in support of JLM's contempt motion are illustrative of some of these inefficiencies.  Ms. Matz and Ms. Malone engaged in simultaneous and extensive review and revision of JLM's opening brief, exchanging multiple rounds of drafts based on numerous stages of revision from the end of June 2021 through mid-July 2021.  (See e.g., Matz Decl., Ex. 1 ("JLM Invoice"), Entry 07/01/2021 SM (2.90 hours for review and revision of brief); id., Entries 07/01/2021 MM (over five hours spent revising brief based on SM's edits); Entry 07/07/2021 SM (4.2 hours for revisions of brief); id., Entry 07/08/2021 MM (1.5 hours in connection with revision of brief); id., Entry 07/08/2021 SM (3.1 hours for review and revisions of brief); id. Entries 07/09/2021 MM (1.6 hours for revisions of brief and review of court orders).)  Despite the ongoing review process and the devotion of significant time by both parties in connection with the brief by July 11, 2021, Ms. Matz then spent another 6.9 hours on July 12, 2021, reviewing and "draft[ing] significant revisions to [the] contempt motion" and conducting additional research in support.  (Id., Entry 07/12/2021 SM.)  In addition, despite the heavy involvement by Ms. Matz and Ms. Malone in

preparing the opening brief, Mr. Marcus also became involved in the process on July 2, 2021, and the three attorneys then proceeded to conduct simultaneous revision of the memorandum – sometimes on the same day (see, e.g., id., Entries for 07/10/2021 (showing all three attorneys revising and revising the same draft and Ms. Malone having to respond to comments from both Ms. Matz and Mr. Marcus on the same day).)  JLM's attorneys also engaged in extensive rounds of collaboration via teleconferencing with one another throughout the process.  (See, e.g., id., (0.6 hour call between SM and MM on 06/28/21, 2.3 hour call between SM and MM on 07/01/2021, 0.8 hours spent on call between SM and MM and call with client on 07/02/2021.)  The ongoing collaboration amongst the attorneys and their dedication to revising their work product may have brought significant value to JLM—indeed, JLM's materials supporting its motion for contempt were well organized and supported by a thorough evidentiary record, and the motion was ultimately successful.  It would not be reasonable, however, given the overlap of work performed amongst the attorneys involved, to pass along all of the costs to Ms. Gutman, and a reduction in the amount of hours is warranted.[3]

       Even though an appropriate deduction from the number of hours expended by JLM's counsel is warranted here, the Court finds Ms. Gutman's requested reduction to 36.125 hours to be much too severe.  Contrary to Ms. Gutman's portrayal, JLM's motion for contempt was not a straightforward motion, either factually or legally.  JLM's counsel had to expend

---

[3]    The Court also recognizes that Ms. Malone performed some tasks that were administrative in nature, including creating PDFs, performing redlines, and filing documents.  (See, e.g., Matz Decl., Ex. 1 ("JLM Invoice"), Entries 07/09/21, 07/11/21, 07/15/21.)  Her time spent on those administrative tasks at her regular billing rate, while not pervasive, also supports the reduction in hours imposed by the Court here.  See, e.g., Nikonov v. Flirt NY, Inc., No. 19-CV-07128-SDA, 2022 WL 1443429, at *4 (S.D.N.Y. May 6, 2022) (finding time spent on administrative tasks warranted a reduction in number of hours credited).

significant time investigating Ms. Gutman's contemptuous conduct and preparing the factual record supporting the contempt motion. This included monitoring activity on Ms. Gutman's Instagram account, including her posts, her stories that disappeared 24 hours after being posted, and comments made by her followers, all of which JLM submitted as part of its evidentiary proffer. The investigation proceeded under exigent circumstances, since the restrictions set forth in paragraph 3(b) of the PI Order were imposed to prevent imminent and irreparable harm to JLM's interests (Contempt Op. at 16) and Ms. Gutman continued her Instagram account activity even after JLM informed Ms. Gutman of its position that her social media activities violated the PI Order. (Id. at 13-14 (describing Ms. Gutman's repeated activities violating PI Order and concluding that violation was willful).) Moreover, JLM's counsel had to devote significant effort to mapping social media activity – an area in which the law is still novel and developing – onto the legal standards for breach of contract, including violation of the non-compete provision set forth in the Contract and incorporated into paragraph 3(b) of the PI Order. See Aquavit Pharms., Inc. v. U-Bio Med, Inc., No. 19-CV-3551-VEC-RWL, 2021 WL 4312579, at *29 (S.D.N.Y. July 16, 2021), report and recommendation adopted as modified 2021 WL 3862054 (S.D.N.Y. Aug. 30, 2021)) (finding "fees incurred for policing Defendants' website and social media" which were "directly related to investigation of Defendants' contempt[]" should not be deducted). And, significantly, JLM's counsel presented a well-organized and supported motion for contempt and was ultimately successful in achieving equitable relief, coercive sanctions, and an award of JLM's attorneys' fees and costs.[4]

---

[4] Ms. Gutman's argument that JLM achieved only nominal success because the Court refrained from awarding $66,000 in damages is unavailing. (Gutman Opp. at 17-18.) In addition to an award of attorneys' fees and costs, JLM obtained significant equitable relief and coercive sanctions, and it is well settled that a "plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on

The Court concludes that an across-the-board 30 percent cut in the number of hours expended by JLM's counsel is appropriate here. See LCS Grp, 383 F. Supp. 3d at 281 (explaining that "a court may apply an across-the-board reduction to effectuate the reasonable imposition of fees" and reducing the number of hours of attorneys by 50 percent); Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC, No. 16-CV-1318-GBD-BCM, 2020 WL 2512045, at *5 (S.D.N.Y. May 15, 2020) (reducing fee award across the board to account for "excessive internal teleconferencing" and billing of travel time at full rates). Applying the 30 percent hourly reduction here means that Ms. Matz's compensable hours will be reduced from 120.9 to 84.63, Mr. Marcus' compensable hours will be reduced from 98.3 to 68.81, and Ms. Malone's compensable hours will be reduced from 209.1 to 146.37.

The Court has also reviewed Ms. Gutman's arguments regarding the propriety of JLM's billing practices and concludes that they do not necessitate a further reduction. Ms. Gutman takes issue with instances of block billing in JLM's time records, as well as portions of time entries that are redacted, arguing that such practices make it impossible to determine "with any precision what time was spent on which particular tasks" and whether that time was reasonable. (Gutman Opp. at 9.) Redactions may be applied to protect privileged information in billing records, including details that would reveal litigation strategy or matters subject to attorney-client privilege, and the Court does not find the limited redactions in JLM's billing records to be excessive or to interfere unduly with the reasonableness inquiry. See, e.g., DiBella v. Hopkins, 403 F.3d 102, 120-21 (2d Cir. 2005) (explaining that material in billing statements about "discovery, trial strategy, factual investigation," may be privileged); Bretillot v. Burrow,

---

all hours reasonably expended if the relief obtained justified that expenditure of attorney time." Grant v. Martinez, 973 F.2d 96, 101 (2d Cir. 1992) (quoting Hensley, 461 U.S. at 436 n.11.)

No. 14-CV-7633-JGK-MHD, 2015 WL 5306224, at *25 (S.D.N.Y. June 30, 2015), <u>report and recommendation adopted</u>, 2015 WL 6455155 (Oct. 26, 2015) (explaining that privileged information in billing entries includes the client's motivation in seeking services, such as particular areas of legal research).  Nor are the instances of block billing so pervasive among JLM's otherwise detailed and meticulous records as to warrant further reduction.  <u>Cf.</u> <u>Sea Spray Holdings Ltd. v. Pali Fin. Grp., Inc.</u>, 277 F. Supp. 2d 323, 325-26 (S.D.N.Y. 2003) (concluding that "[w]hile 'block billing is not prohibited in this Circuit,' the substantial amount of block billing in the fee requests renders it difficult to determine whether, and/or the extent to which, the work done by [the client's] attorneys is supplicative or unnecessary.") (citation omitted); <u>Bank v. Ho Seo</u>, No. 06-CV-15445-LTS-RLE, 2009 WL 5341672, at *5 (S.D.N.Y. Dec. 16, 2009), <u>report and recommendation adopted as modified</u>, 2010 WL 129681 (S.D.N.Y. Jan. 13, 2010) (finding entries including "Research," "E-mail," or "Conference," made it "impossible to discern" whether they "refer to anything meaningful" and whether the tasks were reasonable).  Finally, Ms. Gutman fails to provide any authority that supports her assertion that JLM is not entitled to a fee award because it has not produced evidence that JLM has actually rendered payment on the invoices.  Although attorneys are bound to make a "good faith effort to exclude" from both a fee request and a bill to one's client any "excessive, redundant, or otherwise unnecessary" hours, this requirement does not impose a burden on an attorney to ensure its bills are paid in full before seeking reimbursement.  <u>Hensley</u>, 461 U.S. at 434.

<u>Reasonable Hourly Rates</u>

JLM seeks to recover attorneys' fees based on the following hourly rates: $550 for Ms. Matz, $400 for Mr. Marcus, and $400 for Ms. Malone.  In response, Ms. Gutman argues

that JLM's rates are unreasonable in that they are excessively high and also internally irreconcilable based on each attorney's relative level of experience.

To determine the "reasonable hourly rate[,]" the Court must examine the "prevailing market rate" or the "rate prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Patsy's Brand, 2022 WL 1026577, at *2 (internal quotation marks and citation omitted). As the fee applicant, JLM bears the burden of producing sufficient evidence demonstrating that its requested rates are reasonable. Joint Stock Co., 2020 WL 2512045, at *3. In addition to reviewing JLM's evidence, the "Court may also 'rely on its own familiarity with prevailing rates in the District.'" Hollander Glass, 291 F. Supp. 3d at 561 (citation omitted).

In support of its fee application, JLM's counsel submitted a declaration from each attorney who was involved in the prosecution of the contempt motion, describing their individual experience and the nature of the work they performed. (See doc. nos. 263-65.) Ms. Matz has served as a partner at Adelman Matz P.C. since 2013 and currently serves as the leader of the firm's litigation and trademark departments. (Matz Decl. ¶ 5.) She specializes in intellectual property and commercial litigation matters and has been extremely active throughout this litigation, including in overseeing prosecution of the contempt motion at issue here. (Id.) Mr. Marcus serves as Counsel at Adelman Matz P.C. and has been admitted to practice law in New York since 1996, focusing on complex litigation matters, including those involving the rights of publicity, copyright and anti-trust law, and preclusion disputes. (Docket entry no. 265 ("Marcus Decl.") ¶¶ 4-6.) In support of JLM's prosecution of Ms. Gutman's contemptuous conduct, Mr. Marcus assisted in the preparation of JLM's opening brief, but took on a larger role in the drafting of JLM's reply brief in support of the contempt motion. (Id. ¶ 6.) Ms. Malone is an

associate at Adelman Matz P.C. who has been admitted to practice law in New York since 2018. (See docket entry no. 264 ("Malone Decl.") ¶ 4.)  As of September 2021, Ms. Malone had worked at Adelman Matz P.C. for over nine months, focusing predominately on intellectual property matters, and had worked on litigation matters involving commercial and intellectual property disputes prior to joining that firm.  (Id.)  Ms. Malone worked on various facets of JLM's prosecution of Ms. Gutman' contempt, including the initial motion, reply and opposition briefs, and she was responsible for conducting factual investigations, performing legal research, and drafting and revising work product.  (Id. ¶ 5.)

The Court finds Ms. Matz and Mr. Marcus' hourly rates to be more than reasonable given their relative levels of experience and expertise, as well as the nature of the work they performed in connection with the contempt motion.  Courts in this District have routinely found a fee in the $550 range to be reasonable for a partner with primary responsibility litigating a dispute with breach of contract and intellectual property elements, as is the case here. See Latin Am. Music Co. v. Spanish Broadcasting Sys., No. 13-CV-1526-RJS, 2020 WL 2848232, at *6 (S.D.N.Y. June 1, 2020) ("[C]ourts in this district have generally found hourly rates of $400 to roughly $750 to be appropriate for partners in copyright and intellectual property cases); Glob. Brand Holdings, LLC v. Accessories Direct Int'l USA, Inc., No. 17-CV-7137-LAK-SLC, 2020 WL 9762874, at *7 (S.D.N.Y. May 29, 2020) ), adopted by Order, dkt. no. 58 (Aug. 4, 2020) (finding hourly rate of $525 reasonable for shareholder, "comparable to partner[,]" litigating straightforward contract dispute); Weiwei Gao v. Sidhu, No. 11-CV-2711-WHP-JCF, 2013 WL 2896995, at *6 (S.D.N.Y. June 13, 2013) (hourly rate of $550 reasonable for a breach-of-contract commercial litigation case for attorney with primary responsibility for the matter).  In addition, courts in this District have regularly determined amounts higher than

$400 to constitute reasonable hourly rates for attorneys with Mr. Marcus' level of experience. See, e.g., Malletier, 687 F. Supp. 2d at 360-61 (finding rate of between $475 and $540 for attorney with 24 years-experience to be reasonable in 2010); Webber v. Dash, No. 19-CV-610-RWL, 2022 WL 2751874, at *9-10 (S.D.N.Y. July 14, 2022) (finding hourly rates of $500 and $550.00 in 2021 and 2022 to be reasonable for attorney with over twenty years' experience).

The Court concludes, however, that Ms. Malone's requested hourly rate warrants a reduction because her approximately 3-4 years of experience at the time she worked on the motion for contempt does not warrant the same rate as counsel in this action. "An appropriate associate rate depends upon their level of experience." Kane v. Endicott Meats, Inc., No. 19-CV-00288-ALC-SN, 2021 WL 2183091, at *2 (S.D.N.Y. May 28, 2021). "With respect to associate and counsel rates, courts in this District have awarded hourly rates ranging from $300 to $750, depending on years of experience." Top Jet Enters., Ltd. v. Kulowiec, No. 21-MC-789-RA-KHP, 2022 WL 1184245, at *3 (Apr. 21, 2022). Given that Ms. Malone had approximately three to four years of experience at the time she worked on the motion, the Court finds a reduction to the hourly rate of $300 to be reasonable.[5] See Kane, 2021 WL 2183091, at *2 (finding $250 per hour to be reasonable for a 2019 law school graduate and second year associate at small firm); LG Cap. Funding, LLC v. AIM Exploration, Inc., No. 17-CV-03118-KMW-SN, 2021 WL 4482654, at *7 (S.D.N.Y. Apr. 20, 2021), report and recommendation adopted 2021 WL 4482148 (S.D.N.Y. Sept. 30, 2021) (finding $250 hourly rate reasonable for third-year

---

[5] JLM cites Joint Stock Co. Channel One Russia Worldwide, No. 16-CV-1318-GBD-BCM, 2020 WL 2512045, at *3 (S.D.N.Y. May 15, 2020) in support of its request that the Court find Ms. Malone's hourly rate of $400 to be reasonable. (Docket entry no. 262 at 9.) In Joint Stock Co., however, the Court determined that the rates of $300 and $350 per hour were reasonable for an associate with approximately nine years of experience in 2018 and 2019.

associate in breach of contract action); Top Jet Enters., 2022 WL 1184245, at *4 (awarding rate of $300 per hour for junior attorney in connection with motion to compel).   Patsy's Brand, 2022 WL 1026577, at *3 ("With respect to associates' rates, courts in the Southern District have generally found hourly rates of $200 to $450 to be reasonable in copyright cases.").

Ability to Pay

Ms. Gutman argues that the Court should refuse to award JLM significant fees because her "poor financial situation" renders her unable to afford the payment JLM seeks. (Gutman Opp. at 16.)  Although "[a] contemnor may be excused from the burden of a civil contempt sanction if it lacks the financial capacity to comply[,]" Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 658 (2d Cir. 2004), based on the Court's review of Ms. Gutman's declaration (see docket entry no. 274-1), the Court concludes that Ms. Gutman has the financial ability to pay the fee award granted herein.

Calculation of Attorneys' Fee Award

For the foregoing reasons, the Court applies a 30 percent reduction to the number of hours billed by each of the three attorneys representing JLM in connection with its prosecution of Ms. Gutman's civil contempt of the PI Order.  The Court also reduces the hourly rate charged for Ms. Malone's services to $300 per hour, as follows.

| Attorney | Total Hours | Hours Reduced by 30% | Hourly Rate | Total Fees |
| --- | --- | --- | --- | --- |
| Ms. Matz | 120.9 | 84.63 | $550 | $46,546.50 |
| Mr. Marcus | 98.3 | 68.81 | $400 | $27,524 |
| Ms. Malone | 209.1 | 146.37 | $300 | $43,911 |

**Total Fee Award: $117,981.50**

Applying such reductions, the Court awards JLM **$117,981.50** in reasonable attorneys' fees. The Court concludes, based on its unique knowledge of this litigation and the underlying contempt motion practice, that this fee award is reasonable. See, e.g., M. Harvey Rephen & Assocs., P.C. v. Chase Bank USA, N.A., 853 F. App'x 690 (2d Cir. Mar. 29, 2021) (finding district court did not abuse discretion in awarding $231,441.00 in fees and costs for underlying motion to compel); Patsy's Brand, Inc., 2022 WL 1026577, at *4 (awarding $269,262.30 in fees for prosecution of contempt motion); Duracell Inc. v. Global Imports, Inc., No. 17-MC-185-KNF, 2018 WL 5619983, at *9-11 (S.D.N.Y. Aug. 16, 2018), report and recommendation adopted 2019 WL 549064 (S.D.N.Y. Feb. 12, 2019) (awarding $88,273 in fees for motion for contempt where the underlying case was "simple[,]" no "novel, difficult, or complex issues" were involved, and the plaintiff's memorandum of law contained "barely more than a one-page long argument on the issue of contempt").

Costs

JLM's counsel seeks to recover $825.09 in costs, comprising $760.64 in Westlaw legal research fees and $64.45 in courier messenger service fees. (Matz Decl. ¶¶ 3, 14.) In opposition, Ms. Gutman asserts that "JLM's request to be paid for Westlaw costs should be denied." (Gutman Opp. at 16 n.9.) Although some courts in this District do not award legal research fees incurred through the use of electronic databases on the basis that "[W]estlaw is an overhead cost of a law firm, just as law libraries are (or used to be)", Trividia Health, Inc. v. Nipro Corp., No. 20-CV-8450-VEC, 2022 WL 1744701, at *3 (S.D.N.Y. May 31, 2022), the Court finds the awarding of legal research fees incurred by JLM's counsel to be reasonable here. JLM's counsel billed Westlaw-related costs to JLM as part of its regular billing practices, and the legal research fees are minimal compared to the overall requested fee award. See Inter-

American Dev. Bank v. Venti S.A., No. 15-CV-4063-PAE, 2016 WL 642381, at *8 (S.D.N.Y. Feb. 17, 2016) (explaining that "[t]he costs of legal research tools like Westlaw . . . are compensable[,]" and finding reimbursement appropriate where fee application was unopposed and "the research costs [were] minimal" compared to overall requested award).  Therefore, this Court joins many others in this District in concluding that, on a proper record, Westlaw-related costs are compensable.  See e.g., Patsy's Brand, 2022 WL 1026577, at *5 (awarding legal research costs and noting they "are regularly included as part of attorneys' fees awards in this Circuit"); Banco Central Del Paraguay v. Paraguay Humanitarian Foundation, Inc., No. 01-CV-9649-JFK, 2007 WL 747814, at *3 (S.D.N.Y. Mar. 12, 2007); de Jesus Rosario v. Mis Hijos Deli Corp., 2020 WL 2614761, at *3 (S.D.N.Y. May 22, 2020).

## CONCLUSION

For the foregoing reasons, JLM's motion for attorneys' fees and costs is granted, in part, and denied, in part.  The Court hereby awards JLM $117,981.50 in attorneys' fees, and $825.09 in costs, comprising a **total award of $118,806.59**.  This Memorandum Order resolves docket entry no. 261.  This case remains referred to Magistrate Judge Cave for general pretrial management.

SO ORDERED.

Dated: New York, New York
      December 21, 2022

                                            /s/ Laura Taylor Swain
                                           LAURA TAYLOR SWAIN
                                           Chief United States District Judge