UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

JLM COUTURE, INC.,

        Plaintiff,

 -v-                                                                                         No.  20-CV-10575-LTS-SLC

HAYLEY PAIGE GUTMAN, et al.,

        Defendants.

-------------------------------------------------------x

ORDER REQUESTING ADDITIONAL BRIEFING AND
MODIFYING THE PRELIMINARY INJUNCTION

        This case is before the Court on remand from the Second Circuit.  (See docket entry no. 471 (the "Second Circuit Opinion").)  The Second Circuit "affirm[ed] in part and vacate[d] in part the district court's March 14, 2023, order modifying its preliminary injunction and remand[ed] for further proceedings consistent with [its] opinion."  (Id. at 25.)

        The Court has reviewed carefully the Second Circuit Opinion and the parties' joint letter, filed at this Court's request, "addressing the Second Circuit's decision and their positions as to next steps in this litigation."  (See docket entry no. 473 (the "Joint Letter").)  For the following reasons, the parties are hereby ordered to submit additional briefing on the issues raised in the Second Circuit Opinion.  JLM's request for interim relief pending this Court's consideration and resolution of the issues identified by the Second Circuit Opinion is granted in part and denied in part, and Ms. Gutman's request for interim relief is granted in part and denied in part.

BACKGROUND

        The Court assumes the parties' familiarity with the factual background and

procedural history of the case and adopts the findings of fact previously set forth in its March 4, 2021, Memorandum Opinion and Order granting the Preliminary Injunction (docket entry no. 109); June 2, 2021, Memorandum Opinion and Order clarifying the Preliminary Injunction (docket entry no. 176); September 8, 2021, Memorandum Opinion and Order finding Ms. Gutman in contempt of the Preliminary Injunction (docket entry no. 234); February 14, 2022, Memorandum Opinion and Order Modifying the Preliminary Injunction (docket entry no. 326); and March 14, 2023, Amended Opinion and Order Modifying the Preliminary Injunction (docket entry no. 431).[1]

## DISCUSSION

The Second Circuit Opinion vacated in part the Court's March 14, 2023, Amended Opinion and Order Modifying the Preliminary Injunction (docket entry no. 431 (the (the "PI Order")), finding that that the Court (1) "erred by modifying its preliminary injunction to give JLM exclusive control over the Disputed Accounts"[2] and (2) "impermissibly granted a preliminary injunction restricting [Ms. Gutman] from identifying herself as a designer of certain products based on Paragraph 10(e) of the Contract."[3]  (Second Circuit Opinion at 15, 22.)

---

[1]   The Second Circuit Opinion did not disturb these factual findings.

[2]   The "Disputed Accounts" are the Instagram account, created on or about April 6, 2012, and the Pinterest account, created on November 3, 2011, that use the handle "@misshayleypaige."  (See Second Circuit Opinion at 5.)

[3]   The "Contract" comprises the 2011 employment agreement (Docket entry no. 14, Ex. 2), as amended by the 2014 amendment extending that agreement through August 1, 2019 (id., Ex. 62), and the February 12, 2019, notice letter exercising Plaintiff's option to further extend Defendant's employment term by three years through August 1, 2022. (Id., Ex. 66.)  "Paragraph 10(e)" refers to the provision of the Contract that reads: "In the event that the Company files an application to register the Trademark or Trademarks, Employee agrees that for a period of five years following termination of her employment, she shall not be identified to the trade or consuming public as the designer, and her role

Finding that the Court had erred by not analyzing the original ownership of the Disputed Accounts and the reasonableness of the scope of the restrictive covenant at issue, the Second Circuit directed the Court to review JLM's likelihood of success on the merits as to each of the two issues.  (See id. at 21 (remanding "to analyze ownership of the Disputed Accounts under the framework discussed"), 24-25 (remanding to "consider" questions related to the reasonableness under New York law of the restrictions imposed by Paragraph 10(e)).)

The parties disagree as to what further proceedings are necessary in light of the Second Circuit Opinion.  JLM argues that further briefing on the remanded issues is necessary, and that the vacated portions of the preliminary injunctions should be imposed in their entirety in the interim.  (Joint Letter at 2-7.)  Ms. Gutman, on the other hand, requests that the Court enter an order that (i) "confirms" that the preliminary injunction ordering Ms. Gutman to transfer complete control over the Accounts to JLM is no longer in effect, (ii) orders JLM to promptly take all steps necessary transfer sole access and control of the Accounts back to Ms. Gutman, and (iii) "confirms" that there are no restrictions on Ms. Gutman's commercial competition with JLM—all without any further briefing.  The Court considers the issues of additional briefing and interim relief in turn.

Additional Briefing

While Ms. Gutman has correctly pointed out that "this case has been briefed extensively to this Court and the Second Circuit and subject to multiple oral arguments before both courts" (Joint Letter at 10), the Second Circuit Opinion directed this Court to consider certain specific questions on remand that have not yet been briefed fully by the parties.

---

as designer shall not be used to promote the sale, of any goods in competition with goods manufactured and sold by the Company."

Therefore, consistent with the Second Circuit Opinion, the Court hereby orders the parties to submit briefing addressing the following questions:

*Regarding Ownership of the Accounts*

- Whether Ms. Gutman owned the Accounts when they were first created.  (See Second Circuit Opinion at 17.)  This question includes (1) whether Ms. Gutman first created the Accounts for "her personal use" and (2) whether—and if so, how—ownership of the Accounts depends on the terms of service governing their creation and use.  (See id. at 18 & n. 6.)
- If Ms. Gutman owned the Accounts upon their creation, whether the Accounts' ownership was ever transferred to JLM by operation of the Contract or otherwise.  (See id. at 17-18.)
- If Ms. Gutman owned the Accounts and never transferred ownership rights to JLM, whether—and if so, how—JLM acquired superior possession rights to the content, handle, customer and potential customer data and interactions, and/or good will associated with those accounts, and the extent to which those can be protected and/or severed if Ms. Gutman owns the Accounts and is entitled to control them.  (See id. at 19 n.8.)
- Whether JLM has shown a clear or substantial likelihood on the merits of its trespass to chattels, conversion, or any other claims sufficiently to support a mandatory preliminary injunction with respect to access to and/or control over the Disputed Accounts.  (See id. at 21-22.)

*Regarding the Restrictive Covenant*

- Whether JLM has made a sufficient showing that it has a legitimate interest warranting enforcement of a restrictive covenant.  (See id. at 24.)
- Whether Paragraph 10(e)'s five-year term is reasonable in duration and, if not, what if any duration would be reasonable.  (See id.)
- Whether JLM's interpretation of the designer-identification prohibition in Paragraph 10(e) is reasonable in scope and not overly burdensome on Ms. Gutman.  (See id. at 24-25.)

*Regarding Procedural Issues*

- The current status of JLM's Chapter 11 bankruptcy proceeding and its effect, if any, on litigation of the parties' dispute regarding ownership of the Accounts or any attributes or components thereof, or their disputes regarding the scope of JLM's rights under Paragraph 10(e).  (See docket entry no. 469.)

Each party's opening brief shall be filed by **March 29, 2024**.  Opposition briefs

shall be filed by **April 12, 2024**, and any reply briefs shall be filed by **April 19, 2024**.

Interim Relief

In the Joint Letter, JLM suggests that the Court exercise its discretion to reinstate "Sections I(i), A(ii) and B of the TRO" and requests reinstatement of injunctive relief enforcing Section 10(e) of the Contract pending the Court's consideration of the parties' submissions and resolution of the issues identified by the Second Circuit. (Joint Letter at 6.) The Court treats JLM's suggestion as a request for continuation of its exclusive control of the Accounts and restrictions on Ms. Gutman's ability to alter them pending further proceedings. The Court also addresses herein JLM's request for interim relief enforcing Section 10(e). For the following reasons, the Court orders below that, pending resolution of the issues that the Second Circuit has remanded for further consideration, (1) Ms. Gutman will have access to the Accounts, subject to the previously-imposed restrictions on making changes, alterations or additions, and (2) Ms. Gutman remains enjoined from violating the provisions of Section 10(e).

Control of the Accounts

Ms. Gutman argues that, "if the Court allows any further submissions, the . . . Accounts must be returned to [her] in the interim . . . . because the Preliminary Injunctions have been vacated." (Joint Letter at 10.) JLM insists that it "should retain access to the Accounts" because the Second Circuit Opinion "did not direct JLM to deliver the Accounts" to Ms. Gutman and "made no finding that JLM does not own the Accounts. . . ." (Id. at 5.)

Because the Second Circuit vacated the portion of the preliminary injunction granting "JLM sole control" of the Accounts, Ms. Gutman is entitled to have access to the Accounts while the issues on remand are being resolved unless the Court imposes a new preliminary injunction. (See Second Circuit Opinion at 22 (defining the relevant "status quo" as

"a return to shared access" to the Accounts).)  For the following reasons, the Court declines to grant the relief JLM seeks.

To retain sole access to the Accounts, JLM must demonstrate: (1) "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation"; (2) "that he is likely to suffer irreparable injury in the absence of an injunction"; (3) that "the balance of hardships tips in the plaintiff's favor;" and (4) that the "public interest would not be disserved" by the issuance of a preliminary injunction.  Salinger v. Colting, 607 F.3d 68, 79-80 (2d Cir. 2010) (internal quotation omitted).  A different, more demanding standard applies where a proposed preliminary injunction would impose affirmative obligations upon a defendant.  Such a mandatory injunction is warranted only upon a "clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."  Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 34 (2d Cir. 1995) (punctuation omitted).  The Second Circuit directed that "JLM must . . . meet the more stringent standard" to be granted exclusive control over the Accounts.  (Second Circuit Opinion at 22.)

Nowhere in the Joint Letter, however, does JLM argue that it meets this standard.  Instead, JLM relies on "the Court's prior findings of irreparable harm to JLM if [Ms.] Gutman were to gain access to the Accounts at issue. . . ."  (Joint Letter at 5.)  Because the prospect of irreparable harm, standing alone, is insufficient to demonstrate entitlement to a preliminary injunction, and the Second Circuit Opinion holds that "JLM has not yet made . . . a showing" of ownership of the Accounts sufficient to entitle it to exclusive access to them (Second Circuit Opinion at 22), JLM's request for continued exclusive access is denied.

The PI Order's restrictions on Ms. Gutman's use of the Accounts were not,

however, vacated by the Second Circuit Opinion and remain in place notwithstanding the elimination of JLM's exclusive control of the Accounts.  (See Second Circuit Opinion at 15, 22.)  The Second Circuit did not disturb this Court's determinations regarding "JLM's likelihood of success in showing ownership of particular content posted on the Disputed Accounts or compilations of posted content."  (Second Circuit Opinion at 19 n.9.)  These restrictions—which protect the content on the Account, the contacts and information built during use of the Accounts for promotion of Hayley Paige goods and trademarks, associated goodwill, and the value of those assets, which were created and built with JLM's resources, by JLM's employees, around trademarks that Ms. Gutman sold to JLM—facilitate a return to the "status quo," as it is defined in the Second Circuit Opinion.  The Second Circuit explicitly defined the "status quo" in this case—or "the last peaceable uncontested status preceding the present controversy" (Mastrio v. Sebelius, 768 F.3d 116, 121 (2d Cir. 2014))—as "a moment when both JLM and Gutman had access to the Disputed Accounts."  (See Second Circuit Opinion at 22.)  As the Court has previously found, at this critical moment, the "Accounts served as critical advertising platforms for JLM's products affiliated with the Hayley Paige brands" and the content thereon included "Ms. Gutman's blending of her personality with the promotional efforts on the Accounts."  (PI Order at 9, 16.)  "The record also demonstrates amply that JLM exercised a degree of control over Ms. Gutman's social media activity" at that "status quo" moment, consistent with the PI Order's restrictions on Ms. Gutman's use of the Accounts.  (Id. at 13.)

    Ms. Gutman thus will remain prohibited from "changing the name of the handles on the accounts, deleting or altering any content located therein, transferring any such accounts or the right to use any such accounts from Defendant to any person or entity other than JLM, communicating with third parties through the same for non-JLM promotional purposes,

and posting content or communicating with third parties in connection with any non-JLM commercial venture, without the express written permission of Plaintiff's chief executive officer, Joseph L. Murphy." (PI Order at 53.)  Ms. Gutman may access the Accounts and post "personal" content "for noncommercial purposes" that does not disparage JLM and is not otherwise inconsistent with the JLM-promotional nature of the dominant content of the Accounts.  (See Second Circuit Opinion at 17 n.5.)[4]

Enforceability of Paragraph 10(e)

Ms. Gutman argues that, "if the Court allows any further submissions," Ms. Gutman "must have the full ability to work in the meantime." (Joint Letter at 10.)  In contrast, JLM "requests that the Court issue an interim order prohibiting [Ms.] Gutman from violating Paragraph 10(e) pending the Court's decision on Remand." (Id. at 6.)  Again, because the Second Circuit vacated the portion of the preliminary injunction "restricting [Ms. Gutman] from identifying herself as a designer of certain products based on Paragraph 10(e) of the Contract" (Second Circuit Opinion at 22), the Court treats JLM's request for an interim order as a request for a preliminary injunction restoring the vacated aspect of the PI Order pending resolution of the question of the reasonableness of the scope of the injunction.

JLM notes that "the Court's finding of irreparable harm absent the injunction" was "not modified [or] vacated by the Second Circuit[,]" and that "the Second Circuit's primary

---

[4] Ms. Gutman's request that the Court "order[] JLM to promptly take all steps necessary transfer sole access and control of the Accounts back to Ms. Gutman" (Joint Letter at 7 (emphasis added)), is denied as inconsistent with the Second Circuit Opinion.  (See Second Circuit Opinion at 22 (defining the relevant "status quo" as "a return to shared access" to the Accounts).)  Moreover, Ms. Gutman has not demonstrated that she is entitled to such injunctive relief.  While her analysis of the Second Circuit Opinion could be construed as an argument that she is likely to succeed on the merits of her claim (Joint Letter at 7-9), she does not address irreparable harm, balance of the equities, or the public interest.

issue was the duration of the 5-year restriction." (Id.) The Court agrees that the Second Circuit's concern regarding the reasonableness of Paragraph 10(e) only concerns the Court's analysis of whether "JLM was likely to succeed on its breach of contract claim under Paragraph 10(e) of the Contract." (Second Circuit Opinion at 23.) Because the Second Circuit did not disturb the Court's conclusions regarding JLM's sufficient showing of irreparable harm in the absence of an injunction enforcing the provision, balance of the hardships, or public interest (see PI Order at 49-51), the Court need not reanalyze those issues here.

Analyzing JLM's likelihood of success on the merits requires the Court to assess whether the breadth and temporal scope of the restrictions imposed by Paragraph 10(e) of the Contract are reasonable and therefore enforceable under New York law. Determining the reasonableness of a covenant not to compete requires the Court to "apply a three prong test" and assess whether a "restraint . . . (1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public." BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 388-89 (1999). The Second Circuit Opinion instructed the Court to consider, in evaluating JLM's likelihood of succeeding on its claim for enforcement of the covenant pending a final judgment, "(1) whether Paragraph 10(e)'s five-year term is reasonable in duration; (2) whether JLM has made a sufficient showing that it has a legitimate interest warranting enforcement of a restrictive covenant; and (3) whether its interpretation of the prohibition in Paragraph 10(e) is reasonable in scope and not overly burdensome on Gutman." (See Second Circuit Opinion at 24-25.)

While further briefing is required to determine whether the five-year duration is reasonable, for the following reasons, JLM has made a sufficient showing of likelihood of success on the merits on its claim that the restrictions in Paragraph 10(e) are properly

enforceable pending the Court's consideration of further submissions and determination of whether and to what extent a further extension of the temporal scope of the provision would be reasonable.  Based on the extensive record currently, the Court finds that JLM has shown the requisite a likelihood of success on the merits regarding (1) its interest warranting enforcement of the restrictive covenant and (2) the reasonableness of the scope of its interpretation of the prohibition in Paragraph 10(e).  As the Court found in granting the modified PI:

> JLM's business model is to work with designers to "build and promote namesake collections" . . ., and JLM adopted this approach to build multiple product lines featuring Ms. Gutman as the "lead designer and face" of the Hayley Paige brand. . . In support of this strategy, JLM worked "to build and promote [Ms. Gutman's] designer persona" including by obtaining placement for Ms. Gutman on television programming and "magazine covers" and by "sen[ding] her as a brand representative to industry summits, events, [and] trunk shows[.]" . . . In order to permit JLM time to rebuild its brand, develop a new strategy and distance its products from Ms. Gutman, whose persona was intimately tied to the eponymous brand, the Contract restricts Ms. Gutman's public activity as a designer for a significant period of time.

(PI Order at 49 (citations omitted).)   For these reasons, the Court concluded that failure to enforce the prohibition in Paragraph 10(e) would "[i]njur[e] JLM's goodwill. . . ."  (Id.) Therefore, JLM is likely to be able to establish that it has a strong cognizable interest in enforcing the restrictive covenant because "the employer has a legitimate interest in preventing former employees from exploiting or appropriating the goodwill of a client or customer, which had been created and maintained at the employer's expense, to the employer's competitive detriment."  BDO Seidman, 93 N.Y.2d at 392.  In addition, JLM is likely to be able to establish that Ms. Gutman, whose creative talents, trademarked name and personal appeal were parlayed during the term of the Contract into a successful and recognizable brand, intimately intertwined with her image, that was JLM's leading product line, was a unique and extraordinary employee who, unlike anonymous designers or ordinary marketing personnel, could have an unfair competitive advantage over JLM should she appeal to customers and prospective customers to

abandon JLM for another manufacturer in the immediate wake of the termination of her employment relationship with JLM.  Likewise, JLM has made a showing that the restrictive covenant, which, inter alia, prohibits identification of Ms. Gutman as a designer in connection with competing goods, is not unreasonable, overbroad or unduly burdensome, because it permits "Ms. Gutman the ability to continue to use her talents as an uncredited designer of competitive goods or the (new) name and face of non-competing goods during the restricted period."  (PI Order at 50.)

Regarding the reasonableness of the five-year duration of Paragraph 10(e), the Court's analysis is informed by the fact that, in New York, "[c]ourts have the power to 'blue pencil'—shorten or amend—restrictive covenants to make them enforceable." Frantic, LLC v. Konfino, No. 13-CV-4516-AT, 2013 WL 5870211, *2 (S.D.N.Y. Oct. 30, 2013); see also Estee Lauder Co., Inc. v. Batra, 430 F. Supp. 2d 158, 181-82 (S.D.N.Y. 2006) (shortening the term of a non-compete from twelve to five months in order to render the clause reasonable under New York law).  Here, Paragraph 10(e) has been enforced as a post-employment non-compete since August 1, 2022, i.e., for less than two years.  (Joint Letter at 6.)  New York courts routinely enforce reasonable non-competes for a period of two years or shorter.  See, e.g., Payment All. Int'l, Inc. v. Ferreira, 530 F. Supp. 2d 477, 485 (S.D.N.Y. 2007).[5]  Therefore, even if the Court ultimately determines that the five-year duration of Paragraph 10(e) of the Contract is unreasonably long under New York law, the record demonstrates that JLM is likely to succeed in showing that the temporal provision of the covenant is reasonable for at least its first two years,

---

[5]   While the Second Circuit Opinion cited a case "holding a one-year noncompete reasonable in duration" (Second Circuit Opinion at 24 n. 14), contrary to Ms. Gutman's characterization, it did not "set[] forth that only non-competes of one year in duration will be enforceable" (Joint Letter at 9).

which is sufficient time for the Court to consider any additional submissions by the parties. See Estee Lauder, 430 F. Supp. 2d at 182 (finding that likelihood of success on the merits "in accordance with the authority to grant partial enforcement" of a non-compete is sufficient to grant a preliminary injunction).

Accordingly, the Court hereby modifies the Preliminary Injunction to enjoin Ms. Gutman from violating Paragraph 10(e) of the Contract pending consideration and resolution of the question of the reasonableness of the breadth and temporal scope of paragraph 10(e).

## CONCLUSION

For the foregoing reasons, and those set forth in the Court's earlier decisions and the Second Circuit Opinion regarding the Preliminary Injunction in this action, effective immediately, JLM is directed to provide the current username and password for each of the Accounts, as well as any other assistance necessary to access the Accounts, to Ms. Gutman, through her counsel, by 5:00 p.m. Eastern Standard Time, on March 5, 2024, and the Preliminary Injunction Order is modified to read in its entirety as follows:

During the pendency of this action (or such lesser time frame as may be specified below), Ms. Gutman, along with her officers, agents, servants, employees, and attorneys and all other persons who are in active concert or participation with her and them, are enjoined pursuant to Federal Rule of Civil Procedure 65 from taking any of the following actions:

1. Making any changes to the Instagram Account or Pinterest Account identified in **Addendum 1**, including but not limited to changing the name of the handles on the accounts, deleting or altering any content located therein, transferring any such accounts or the right to use any such accounts from Defendant to any person or entity other than JLM, communicating with third

parties through the same for non-JLM promotional purposes, and posting content or communicating with third parties in connection with any non-JLM commercial venture, without the express written permission of Plaintiff's chief executive officer, Joseph L. Murphy;

2. Posting non-commercial personal content that disparages JLM or is otherwise inconsistent with the JLM-promotional nature of the dominant content of the Account;

3. ~~Taking any action, other than a properly noticed application to the Court, to gain control over the Instagram Account or Pinterest Account;~~ [6]

4. Breaching the employment Contract, dated July 13, 2011, together with the amendments and extensions thereto, by:

    a. using, or authorizing others to use, "Hayley", "Paige", "Hayley Paige Gutman", "Hayley Gutman", "Hayley Paige" or any derivative thereof, including misshayleypaige (collectively the "Designer's Name"), trademarks in the Designer's Name, including but not limited to the trademarks identified at **Addendum 2 hereto** (collectively, the "Trademarks"), or any confusingly similar marks or names in trade or commerce, without the express written permission of Plaintiff's chief executive officer, Joseph L. Murphy;

---

[6] This Provision of the Preliminary Injunction has been stricken in accordance with the Second Circuit Opinion.

  b. using or authorizing others to use any Designs,[7] or any of the Trademarks or any variations, versions, representations or confusingly similar facsimiles thereof, in trade or commerce without the express written permission of Plaintiff's chief executive officer; and

  c. pending resolution of the issues remanded to the Court for determination by the Second Circuit Mandate entered on this Court's docket on February 9, 2024,[8] (i) being identified to the trade or consuming public as the designer of any goods in competition with goods manufactured and sold by JLM; or (ii) using, or authorizing others to use, Gutman's role as designer, to promote the sale, or any goods in competition with goods manufactured and sold by JLM;

5. Using, or authorizing others to use, any of the Designer's Names, Trademarks or any confusingly similar term, name, symbol or device, or any combination thereof, in commerce in connection with any goods or services, including to endorse, advertise or promote the products and/or services of herself or others directly or indirectly, including but not limited to on social media or in

---

[7]   "Designs", as used here, means designs, drawings, notes, patterns, sketches, prototypes, samples, improvements to existing works, and any other works conceived of or developed by Employee in connection with her employment with Plaintiff involving bridal clothing, bridal accessories and related bridal or wedding items, either alone or with others, from the commencement of her employment by Plaintiff through the Term of the Contract. The term includes but is not limited to content created or compiled for the JLM HP Social Media Accounts.

[8]   This Provision of the Preliminary Injunction has been modified in accordance with the briefing schedule regarding issues on remand from the Second Circuit Opinion.

television or media appearances, without the express written permission of Plaintiff's chief executive officer, Joseph L. Murphy.

~~It is further ordered pursuant to Federal Rule of Civil Procedure 65 that, during the pendency of this action, Gutman shall take any action necessary to enable JLM to maintain access to and control of the Instagram Account and Pinterest Account.~~[9]

. The issues specified above for additional submissions shall be briefed by the parties simultaneously. The parties' opening briefs shall be filed by **March 29, 2024**. Opposition briefs shall be filed by **April 12, 2024**, and any reply briefs shall be filed by **April 19, 2024**.

SO ORDERED.

Dated: New York, New York
March 1, 2024

       /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

---

[9] This Provision of the Preliminary Injunction has been stricken in accordance with the Second Circuit Opinion.

## Addendum 1

| Brand | Platform | Handle | Account Link |
|---|---|---|---|
| Hayley Paige | Instagram | misshayleypaige | https://www.instagram.com/misshayleypaige/ |
| Hayley Paige | Pinterest | misshayleypaige | https://www.pinterest.com/misshayleypaige/_saved/ |

# Addendum 2

| Trademark | Country | Registration No. | Registration Date | Classes |
|---|---|---|---|---|
| BLUSH BY HAYLEY PAIGE | USA | 6141381 | 09/01/2020 | 25 Int. |
| HAYLEY PAIGE | USA | 5858534 | 09/10/2019 | 14 Int. |
| HAYLEY PAIGE | USA | 4161091 | 06/19/2012 | 25 Int. |
| HAYLEY PAIGE + DESIGN | USA | 5368112 | 01/02/2018 | 25 Int. |
| HAYLEY PAIGE + DESIGN | USA | 5858703 | 09/10/2019 | 14 Int. |
| HAYLEY PAIGE OCCASIONS | USA | 5276982 | 08/29/2017 | 25 Int. |
| JUST GOT PAIGED | USA | 5728141 | 04/16/2019 | 41 Int. |
| LA PETITE HAYLEY PAIGE | USA | 5698436 | 03/19/2019 | 25 Int. |
| LA PETITE HAYLEY PAIGE + DESIGN | USA | 5698444 | 03/12/2019 | 25 Int. |
| OCCASSIONS BY HAYLEY PAIGE | USA | 4914471 | 03/08/2016 | 25 Int. |